Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
apersinger@tzlegal.com

Scott Edelsberg*
**EDELSBERG LAW, PA**
2875 NE 191st Street, Suite 703
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

Edmand A. Normand*
Jacob L. Phillips*
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

* *Pro Hac Vice to follow*

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTISHA ANN MUNOZ and CINDY VENTRICE-PEARSON, on behalf of themselves and all others similarly situated, | Case No.: _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| GEICO GENERAL INSURANCE COMPANY, a foreign insurance company, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiffs Martisha Ann Munoz ("Ms. Munoz") and Cindy Ventrice-Pearson ("Ms. Ventrice-Pearson") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against GEICO General Insurance Company ("GEICO"), and in support thereof state the following:

### INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiffs, the named insured under their respective GEICO automobile policies issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"). Defendant's Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle. Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax and State-mandated regulatory fees. GEICO acknowledges that its Policy includes these taxes and fees: as part of its ACV payment to insureds who *own* vehicles that have sustained a total loss, GEICO pays sales tax; and as part of its ACV payment to *all* insureds, GEICO pays mandatory fees albeit in an insufficient amount. However, in violation of its Policy, GEICO refuses to pay sales tax (or, in rare cases, underpays sales tax) when it purports to pay ACV to insureds who have suffered a total loss of their *leased* (as opposed to owned or financed) insured vehicle. Further, and also in violation of its Policy, GEICO underpays mandatory regulatory fees to all insureds, whether the vehicle was owned/financed or leased.

2.     Defendant GEICO is one of the largest passenger auto insurance carriers operating in the State of California. One of the coverages GEICO sells to consumers is comprehensive and collision coverage. GEICO systematically and uniformly underpaid Plaintiffs and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3.     Pursuant to its standard Policy form language, GEICO is obligated to pay insureds sales tax in making payment to insureds who suffer the total loss of an insured vehicle. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total loss vehicle, nor on the amount, if any, paid by the insured to replace the total loss vehicle.

Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total loss vehicle, nor on the amount paid, if any, to replace the total loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle *at the time of loss* ("ACV sales tax").

4.      Pursuant to its standard Policy form language, GEICO is also obligated to pay the full title, registration and regulatory fees imposed by the State of California on the purchase and registration of automobiles in the state ("ACV regulatory fees"). Nevertheless, GEICO, in violation of its contract, pays only a portion of such fees to all insureds, thus breaching its contract with every insured who suffered a total-loss to their insured vehicle.

5.      This lawsuit is brought by Plaintiffs individually and on behalf of all other similarly situated insureds who have suffered damages due to GEICO's practice of refusing to pay full ACV sales tax and regulatory fees to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

6.      The failure to pay ACV sales tax and regulatory fees on first-party total losses owed to GEICO insureds pursuant to GEICO's uniform policy language constitutes a breach of the policy.

**THE PARTIES**

7.      Plaintiff Martisha Ann Munoz is domiciled and resides in San Francisco County, California, and is a citizen of the State of California.

8.      Plaintiff Cindy Ventrice-Pearson is domiciled and resides in Los Angeles County, California, and is a citizen of the State of California.

9.      At all times material hereto, GEICO is and was a foreign corporation located in the State of Maryland, incorporated in Maryland and with its principal place of business in Maryland, and authorized to transact insurance in the State of California.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiffs are members of the putative class, which consists of at least 100 members, and Plaintiffs

and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

11.     Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

12.     Assignment to the San Francisco Division is proper under Civil Local Rules 3-2(c) and 3-2(d) because a substantial part of the events giving rise to Plaintiff Munoz's claims occurred in San Francisco.

## AMOUNT IN CONTROVERSY

13.     GEICO paid out approximately $450 million dollars in auto private passenger physical damage claims in 2018.

14.     Upon information and belief and the investigation of their attorneys, including total loss rates per physical damage premiums written by Defendant (and other insurers), during the relevant time period, Defendant adjusted, at minimum, approximately 115,000 total loss claims. Upon information and belief, approximately 10% of such total loss claims were not paid sales tax owed under a given Policy. Assuming an average vehicle value of $15,000 and a sales tax rate of 8.5%, the amount-in-controversy easily exceeds $10,000,000, exclusive of interest, costs, and attorney's fees. Such amount does not include amounts owed for ACV regulatory fees, which, upon information and belief, were underpaid to every total-loss insured, and averages approximately $100.00 per insured.

## FACTUAL ALLEGATIONS

### A.     The GEICO Policy

15.     Defendant GEICO's policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in GEICO auto policies issued by Defendant in California. Indeed, Plaintiffs and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiffs were insured, which

is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as Exhibit A.[1]

16.     In Section III of the Policy, entitled "PHYSICAL DAMAGES COVERAGES", GEICO states that it: "will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each loss less the applicable deductible." Policy at 8 (emphasis in original).[2]

17.     The Policy also states that GEICO "will pay for each **loss**, less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**." *Id*.

18.     "Collision" is defined as "**loss** caused by the upset of the covered auto or its collision with another object[.]" *Id*. at 7.

19.     "Owned auto" is defined as, *inter alia*, any vehicle "for which a specific premium charge indicates there is coverage." *Id*. at 8.

20.     "Loss" is defined as "direct and accidental loss of or damage to" the insured auto. *Id*. at 7.

21.     The limit of liability is established as, *inter alia*, "the **actual cash value** of the property at the time of the **loss**." *Id*. at 9.

22.     "Actual cash value" is defined as "the replacement cost of the auto or property less **depreciation** or **betterment**." *Id*. at 7. The ACV of the vehicle, the Policy continues, "will be determined at the time of **loss**[.]" *Id*. at 9.

23.     There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id*.

24.     There is no difference and no distinction in the Policy between owned, financed, and leased vehicles. In fact, the Policy specifically asserts not only that "owned auto" includes *any* auto for

---

[1] GEICO uses two Policy Forms in the State of California – Form A-30CA and A-70CA. Plaintiffs were insured under the A-30CA, which is affixed as Exhibit A. The A-70CA Form is materially identical as it pertains to the Physical Damages Coverages relevant herein and all relevant definitions.

[2] Unless otherwise indicated, the emphasis within the quotations of Plaintiffs' Complaint are in the Policy.

which a premium is paid—even if financed or leased—but also that owned autos *include* autos leased for a period of over six months. *Id*. at 8.

25.     Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding sales tax or mandatory regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax or regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; or (4) any provision linking the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss vehicle. Instead, the Policy establishes ACV as a *predictable amount* upon which both GEICO and the insured can rely.

26.     The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

27.     The policy language applies to all covered autos irrespective of ownership interests— whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

**B.     Sales Tax and Regulatory Fees Are Replacement Costs**

28.     Sales tax is a mandatory cost imposed by the State of California on every vehicle purchase. There is no exception to the imposition of sales tax for insureds replacing a total loss vehicle. It is impossible to replace a total loss vehicle—or to purchase any vehicle under any circumstances— without payment for sales tax.

29.     As set forth above, GEICO promises to pay the ACV of an insured vehicle in the event of, *inter alia,* a total loss; and defines ACV as the replacement cost of the insured vehicle, less depreciation. Sales tax is incontrovertibly an element of the replacement cost of the vehicle, and is therefore incontrovertibly an element of the ACV of the insured vehicle.

30.     Furthermore, the State of California imposes mandatory regulatory fees on the purchase and registration of all vehicles. Vehicles are required to be legally titled and registered in order to be used and operated in the State of California. California imposes fees on such transactions, including a title transfer fee of $15.00, a registration fee of $60.00, county fees of up to $19.00, a California Highway Patrol ("CHP") fee of $26.00, a Transportation Improvement Fee ("TIF") of $25.00-$175.00, and a Vehicle License Fee ("VLF") of 0.65% of the adjusted vehicle value. These fee amounts and categories – title transfer fee, registration fee, county fee, CHP fee, TIF, and VLF – are "ACV regulatory fees."  As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total-loss vehicle.

31.     Thus, sales tax and the aforementioned regulatory fees are inherently part of the costs to replace an insured property, including a vehicle. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *8 (N.D. Cal. May 22, 2017) (citing *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs, including . . . sales tax"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]he cost to repair and replace property with new materials would necessarily include the state and local taxes on the materials purchased to make the repairs.")).

**C.     GEICO Systematically Fails to Pay Sales Tax if the Total Loss Vehicle Was Leased and GEICO Underpays Regulatory Fees for All Total-Loss Vehicles**

32.     GEICO's uniform procedure is to use a third-party vendor, Certified Collateral Corporation ("CCC"), to determine the "base" and "adjusted" value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss. The base value takes into account depreciation (age, mileage, etc.), while the adjusted value takes into account the actual condition of the total loss vehicle relative to comparable vehicles.

33.     The adjusted vehicle value is otherwise known as the "appraised" value of the vehicle, and it is the amount on which the sales tax owed is based – otherwise, it is irrelevant to this lawsuit and Plaintiffs do not challenge the determination of the adjusted vehicle value.

34.    In addition to the appraised value (which takes into account depreciation and condition), other mandatory replacement costs—title fees, registration fees, and sales tax—are a component of the ACV, and, therefore, should be included in Defendant's calculation of the ACV. *See Johnson*, 2017 WL 2224828, at *8.

35.    GEICO's Policy permits deductions for depreciation and subtraction of any applicable deductible and salvage retention value from the ACV owed to insureds.

36.    Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus sales tax* calculated as a percentage of the adjusted vehicle value, *plus* mandatory regulatory fees (title and registration fees). Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees), less any applicable deductible and salvage retention value.

37.    Indeed, in California, GEICO pays full sales tax—the applicable percentage of the adjusted vehicle value—as part of the ACV replacement costs if the total loss vehicle was owned or financed.

38.    Such payments constitute an acknowledgement from GEICO that in the event of a total loss, its Policy promises payment of sales tax as part of the ACV of the insured vehicle.

39.    Nevertheless, in California, GEICO uniformly does *not* pay the sales tax owed as a part of the ACV replacement costs if the total loss vehicle was leased.[3]

40.    Further, in California, GEICO underpays regulatory fees by paying only a *prorated* amount of regulatory fees to all total-loss insureds, irrespective of whether the vehicle was owned, financed or leased. But insureds do not pay a prorated amount of such fees in replacing the total-loss vehicle—instead, insureds are responsible for paying the *full* amount of such fees to the State.[4]

---

[3]  Upon information and belief, GEICO may purport to sometimes partially pay sales tax under some limited factual circumstances. Even in that scenario, however, GEICO would still owe the difference between the partial sales tax payment and the full ACV sales tax owed on the total-loss adjusted vehicle vehicle.

[4]  One exception is the VLF fee, for which insureds are permitted to seek a reimbursement and/or credit from the State of California in the event of a total loss. Plaintiffs and the Class do not seek from GEICO

41.     GEICO's Policy does contain any provision or clause stating GEICO will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, GEICO simply promises to pay the costs to replace the vehicle. Moreover, by excluding depreciation and actual condition from the costs of replacement, GEICO further indicates that replacement costs *not* excluded would be paid. If GEICO had wanted to exclude all or part of the replacement costs (like depreciation and condition), it could have done so.

42.     GEICO's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount—replacement costs of the insured vehicle minus depreciation—to every policyholder.[5]

43.     GEICO's Policy promises payment of full sales tax and regulatory fees as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax or regulatory fees at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured *does not replace the total loss vehicle at all*, the ACV of the vehicle is unaffected. GEICO's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

---

the amount available as a credit or reimbursement from the State of California. However, to procure such a credit or reimbursement, insureds must pay a $21.00 service fee. In other words, if $30.00 is available for credit, insureds must pay the service fee of $21.00 and are "credited" the remaining $9.00. GEICO, however, deducts the full $30.00 from the ACV payment.

[5] These allegations should come as no surprise to Defendant, given that at least one court has already found that similar conduct by GEICO constitutes a breach of contract.  Specifically, in *Roth v. Geico General*, the Court cogently held that GEICO's procedure breached its (materially identical) contract by failing to include in an ACV payment taxes and fees: "[A]s sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased." *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2018 WL 3412852, at *4 (S.D. Fla. June 14, 2018), attached as Exhibit G (Order on Summary Judgment).  Further, the Court found, "the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and provides no notice to GEICO's insureds that their leased vehicles will be valued differently." *Id.* at *3.

### D. **Plaintiffs' Total Loss Claims**

44. At all times material hereto, Plaintiff Munoz leased and insured a 2016 Honda Sedan LX, VIN # 19XFC2F55GE245085.

45. Plaintiff insured the 2016 Honda Sedan LX (the "insured vehicle") under an insurance policy issued by Defendant. Exhibit A (Munoz Policy); Exhibit C (Munoz Decl. Sheet). Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

46. On or about February 24, 2017, Plaintiff was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 057734788-0101-017.

47. Following the filing of said claim, GEICO, through its third-party vendor, CCC, determined that the vehicle was a total loss with a base value of $17,369.00, with no applicable condition adjustments, and therefore an adjusted vehicle value of $17,369.00. Exhibit D (Market Valuation Report) (the "Report").

48. The base value and adjusted vehicle value are calculated by CCC based on the "sticker price" of comparable vehicles listed for sale in the local market.

49. GEICO initially included sales tax in the Report at a rate of 8.5%; but, later, it removed the sales tax after determining that the vehicle was a leased vehicle. *Id*. at 12.

50. GEICO added state and local regulatory fees of $159.00 and subtracted the deductible of $1,000, for a total payment of $16,528.00. Exhibit E (Total Loss Settlement Letter).

51. The applicable sales tax based on Plaintiff's residency was 8.5%. Specifically, Plaintiff was owed sales tax in the amount of 7.25% state sales tax, plus local surtax of 1.25%, of the adjusted vehicle value of her insured vehicle. Thus, the ACV sales tax owed as a part of the ACV of the insured vehicle was $1,436.37.

52. GEICO did not include sales tax in making its (purported) ACV payment to Plaintiff, thereby breaching the terms of Plaintiff's Policy.

53. Sales tax is a mandatory applicable cost that must be paid to replace or purchase any vehicle in the State of California.

54.     In breach of its contract with Plaintiff, GEICO did not include any sales tax in making the ACV payment for Plaintiff's total loss.

55.     Furthermore, GEICO paid only $159.00 for state and regulatory fees constituted only a portion of the state and regulatory fees owed under the Policy.  However, the state and regulatory fees owed pursuant to the Policy's terms regarding payment of the ACV of the insured vehicle were, at a minimum, approximately $250.00.

56.     GEICO's underpayment of the ACV regulatory fees also constituted a breach of contract.

57.     Plaintiff Munoz paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—GEICO acknowledged that Plaintiff satisfied all conditions precedent required under the Policy.

58.     At all times material hereto, Plaintiff Ventrice-Pearson owned/financed and insured a 2010 Mini Cooper, VIN # WMWML3C54ATX36762.

59.     On or about November 14, 2018, Plaintiff was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 052044349-0101-048.

60.     Plaintiff insured the 2010 Mini Cooper (the "insured vehicle") under an insurance policy issued by Defendant. Exhibit B (Ventrice-Pearson Policy); Exhibit I (Ventrice-Pearson Decl. Sheet). Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

61.     Following the filing of said claim, GEICO, through CCC, determined that the vehicle was a total loss with a base value of $7,408.00, with no applicable condition adjustments, and therefore an adjusted vehicle value of $7,408.00.

62.     The base value and adjusted vehicle value are calculated by CCC based on the "sticker price" of comparable vehicles listed for sale in the local market.

63.     GEICO added sales tax of $703.76 and state and local regulatory fees of $97.00 and a post-tax adjustment of $300.00, for a total payment of $8,508.76. Exhibit F (Total Loss Settlement Letter).

64.     However, the $97.00 paid for state and regulatory fees constitute only a portion of the state and regulatory fees owed under the Policy. The state and regulatory fees owed pursuant to Policy's terms regarding ACV payment of the insured vehicle were, at a minimum, approximately $215.00.

65.     GEICO's underpayment of the ACV regulatory fees constituted a breach of contract.

66.     Plaintiff Ventrice-Pearson paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—GEICO acknowledged that Plaintiff satisfied all conditions precedent required under the Policy.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

68.     Plaintiff Munoz brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

**Leased-Vehicle Class**

All individuals insureds under a California policy issued by GEICO General Insurance Company with the same operative policy language covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment did not include sales tax  calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV Sales Tax") and/or where the total loss payment included a prorated amount (or no amount) for state and local regulatory fees and not the full applicable registration, CHP, TIF, VLF and county registration fees imposed by the State of California ("ACV regulatory fees"), within four years prior to the date on which this lawsuit was filed through the date of any certification order.

69.     Plaintiff Ventrice-Pearson brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

**Owned/Financed-Vehicle Class**

> All individuals insured under a California policy issued by GEICO General Insurance Company with the same operative policy language covering an owned or financed vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment included a prorated amount (or no amount) for state and local regulatory fees and not the full applicable registration, CHP, TIF, VLF and county registration fees imposed by the State of California ("ACV regulatory fees") within four years prior to the date on which this lawsuit was filed through the date of any certification order.

70.     Certification of the above classes is supported by the following considerations:

   a.   The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

   b.   Counsel in this class action are not aware of any previously filed litigation against GEICO in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and

   c.   No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

71.     Although the precise number of members of the Classes are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs understand Defendant to be one of the largest motor vehicle insurers in the State of California—one that writes hundreds of millions of dollars of physical damage coverage premiums.  Thus, the classes of persons affected by Defendant's unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendant in violation of standardized and uniform insurance policy language, which results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiffs and the Class members.

72.     The precise number of members of the Classes can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiffs believe the Owned/Financed-Vehicle Class is comprised of approximately 100,000 members, while the Leased-Vehicle Class is comprised of approximately 8,000 members. Numerosity under Rule 23(a)(1) is established.

73.     Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all members of both Classes, including Plaintiffs, are bound by materially identical policy terms.

74.     As to the Leased-Vehicle Class, common questions include (but are not limited to): (1) whether, under the Defendant's standardized policy language, leased-vehicle insureds are owed sales tax upon the total loss of an insured vehicle; (2) whether the Policy defines and treats leased, financed and owned vehicles in a materially-similar manner; (3) whether GEICO makes the same promise as to leased, financed, and owned vehicles; and (4) whether the ACV of a vehicle depends on whether it is owned, leased or financed.

75.      As to both Classes, common questions include (but are not limited to): (1) whether Defendant's Policy promised to pay only a prorated amount in regulatory fees in making payment following a total loss; (2) whether Defendant excluded any portion of regulatory fees in its Policy; (3) whether Defendant is permitted to pay only a partial or prorated amount of regulatory fees.

76.     Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs and members of the Classes were injured by Defendant's uniform misconduct.  Further, Plaintiffs and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the members of the Classes. Plaintiff Munoz suffered the same harm as all other members of the Leased-Vehicle Class: the coverage for sales tax and regulatory fees that Defendant failed to pay or underpaid

its leased-vehicle insureds.  Plaintiff Ventrice-Pearson suffered the same harm as all other members of the Owned/Financed-Vehicle Class: the coverage for regulatory fees that Defendant underpaid its insureds. Plaintiffs are not subject to any unique defenses nor do Plaintiffs bring any unique claims.

77.     The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

78.     Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members. As to the Leased-Vehicle Class, the critical common question—does Defendant's promise to pay the ACV of the total loss vehicle obligate it to include ACV sales tax to leased-vehicle insureds—is identical for every member of the Class. Other critical common questions, such as whether Defendant's Policy excluded portions of regulatory fees or whether the Policy treats or defines leased vehicles differently than owned or financed vehicles, are also identical for every member of the Leased-Vehicle Class.

79.     As to the Owned/Financed-Vehicle Class, the critical common question—does Defendant's promise to pay the ACV of the total loss vehicle obligated it to include ACV regulatory fees—is identical for every member of the Class.

80.     Further, the measure of damages, if any, is the same for every member of both Classes, and any variances in damages will reflect only variances in underlying vehicle values (some vehicles are more expensive than others, and thus the applicable ACV sales tax owed will be different) or variances in the prorated amount paid in ACV regulatory fees, the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

81.     Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of both Classes is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual

-14-

CLASS ACTION COMPLAINT

redress for the wrongs done to them. Even if some members of the Classes could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiffs assert here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

82.     As to the Leased-Vehicle Class, class treatment is superior because every claim—all based on uniform conduct and a form contract—will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of sales tax. As to both Classes, class treatment is superior because every claim will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of ACV Regulatory Fees. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers (including Defendant in a different state) were successfully treated as class actions. *See, e.g.*, *Roth v. Geico General*, Exhibit H.

83.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the respective Classes. Plaintiffs possess no conflict with members of the Classes. Plaintiffs' claim does not conflict with that of any member of the Classes, and Plaintiffs have no financial or any other interest conflicting with those of the Class. Plaintiffs fully intend to vigorously protect the interests of Class members in prosecuting these claims.

84.     Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiffs' counsel have successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Sales Tax and/or ACV Regulatory Fees after total losses.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT FOR FAILURE TO PAY ACV SALES TAX**
**(By Plaintiff Munoz on Behalf of Herself and the Leased-Vehicle Class)**

85.     Plaintiff Munoz incorporates by reference paragraphs 1-7, 9-57, 66-67, 69-77, and 79-83 as though fully set forth herein.

86.     Plaintiff was party to an insurance contract with Defendant as described herein.  All Leased-Vehicle Class members were parties to insurance contracts with Defendant containing materially identical terms.

87.     The interpretation of Plaintiff's and all Leased-Vehicle Class members' Policies is governed by California law.

88.     Plaintiff and all Leased-Vehicle Class members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

89.     Defendant, by paying the total loss claim, determined that Plaintiff and each Leased-Vehicle Class members complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

90.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Leased-Vehicle Class member were owed the ACV of the vehicle, which, per the terms of the Policies, includes sales tax calculated as a percentage of the adjusted vehicle value.

91.     Defendant refused or otherwise failed to pay ACV Sales Tax as part of its purported ACV payment to Plaintiff and every Leased-Vehicle Class member, following Defendant's determination that a vehicle was a total loss.

92.     Defendant's failure to provide payment for the ACV sales tax constitutes a material breach of contract with Plaintiff and every Leased-Vehicle Class member.

93.     As a result of said breaches, Plaintiff and the Leased-Vehicle Class members are entitled, under Defendant's insurance Policies, to sums representing the benefits owed for ACV sales

tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Breach of Contract For Failure to Pay ACV Regulatory Fees**
**(by both Plaintiffs on behalf of both Classes)**

94.     Plaintiffs incorporate by reference paragraphs 1-27, 30-38, 40-72, and 74-83 as if fully set forth herein.

95.     Plaintiffs were respectively party to an insurance contract with Defendant as described herein.  All members of the Classes were parties to insurance contracts with Defendant containing materially-identical terms.

96.     The interpretation of Plaintiffs' and all Class members' Policies is governed by California law.

97.     Plaintiffs and all members of the Classes made a claim determined by Defendant to be a first-party total loss under the insurance policy, and determined by Defendant to be a covered claim.

98.     Defendant, by paying the total loss claim, determined that Plaintiff and each member of the Classes complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

99.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every member of the Classes were owed the ACV of the vehicle, which, per the terms of the Policies, includes the ACV Regulatory Fees in the amounts set by California law.

100.     Defendant, however, paid only a *prorated* amount in regulatory fees, rather than the full amount actually owed as the necessary cost to replace a vehicle in California, to Plaintiffs and every member of the Classes.

101.     Such underpayment constitutes a material breach of contract with Plaintiffs and every member of the Classes.

102.     As a result of said breaches, Plaintiffs and the members of the Classes are entitled under Defendant's insurance policies to sums representing the benefits owed for ACV Regulatory Fees

(minus the prorated amount already paid), as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Munoz and Plaintiff Ventrice-Pearson, individually and on behalf of the Classes, demand a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

a.   For an Order certifying this action as a Class Action on behalf of the Classes described above;

b.   For an award of compensatory damages for Plaintiffs and members of the Classes in amounts owed under the Policies;

c.   For all other damages according to proof;

d.   For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

e.   For pre- and post- judgment interests on any amounts awarded; and

g.   For other and further forms of relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.


DATED: June 27, 2019.

**TYCKO & ZAVAREEI LLP**


By:   s/ *Annick M. Persinger*

Annick Persinger (CA Bar No. 272996)
apersinger@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

*For Plaintiffs and the Putative Classes*

# EXHIBIT A

# GEICO

**ONE GEICO PLAZA**
**Washington, D. C.  20076-0001**
**Telephone: 1-800-841-3000**

# Your
# California
# Family
# Automobile
# Insurance
# Policy

A-30CA (10-98)

## POLICY INDEX

Page                                                                Page

**SECTION I - LIABILITY COVERAGES**
**Your Protection Against Claims From Others**
Definitions............................................................. 3
Losses We Will Pay For You ...................................... 3
Additional Payment We Will Make Under The
   Liability Coverages ................................................. 3
     Legal Expenses And Court Costs
     Bail And Appeal Bonds
     First Aid Expenses
Exclusions.............................................................. 4
Persons Insured....................................................... 4
Financial Responsibility Laws ..................................... 5
Out of State Insurance.............................................. 5
Limits Of Liability ................................................... 5
Other Insurance ...................................................... 5
Conditions.............................................................. 5
     Notice
     Two Or More Autos
     Assistance And Cooperation Of The Insured
     Action Against Us
     Subrogation

**SECTION II - AUTO MEDICAL PAYMENTS COVERAGE**
**Protection For You And Your Passenger For Medical**
**Expenses**
Definitions.............................................................. 6
Payments We Will Make ........................................... 6
Exclusions.............................................................. 6
Limit Of Liability ................................................... 6
Other Insurance ...................................................... 7
Conditions.............................................................. 7
     Notice
     Two Or More Autos
     Action Against Us
     Medical Reports - Proof And Payment Of Claims
     Subrogation

**SECTION III - PHYSICAL DAMAGE COVERAGES**
**Your Protection For Loss Of Or Damage To Your Car**
Definitions.............................................................. 7
Losses We Will Pay For You
   Comprehensive (Excluding Collision) Coverage.....8
   Collision Coverage............................................... 8
Additional Payments We Will Make Under
   The Physical Damage Coverages.......................... 8
Exclusions.............................................................. 9
Limit Of Liability ................................................... 9
Other Insurance ...................................................... 9

Conditions ............................................................. 10
     Notice
     Two Or More Autos
     Assistance And Cooperation Of The Insured
     Action Against Us
     Insured's Duties In Event Of Loss
     Appraisal
     Payment Of Loss
     No Benefit To Bailee
     Subrogation

**SECTION IV - UNINSURED MOTORISTS AND**
**UNDERINSURED MOTORISTS COVERAGE**
**Your Protection For Injuries Caused By Uninsured**
**And Hit-and-Run Motorists**
Definitions.............................................................. 11
Losses We Pay......................................................... 12
Exclusions.............................................................. 12
Limits Of Liability ................................................... 12
Other Insurance...................................................... 13
Disputes Between Us And Insured.............................. 13
Trust Agreement..................................................... 13
Conditions.............................................................. 13
     Notice
     Assistance And Cooperation Of The Insured
     Claims Not Settled Within One Year of Date of
       Accident
     Proof Of Claim - Medical Reports
     Payment Of Loss

**SECTION V - GENERAL CONDITIONS**
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period ........................................... 14
Premium................................................................. 14
Changes................................................................. 14
Assignment ............................................................ 14
Cancellation By The Insured...................................... 14
Cancellation By Us................................................... 14
Cancellation By Us Is Limited.................................... 14
Renewal................................................................. 15
Other Insurance...................................................... 15
Disposal Of Vehicle ................................................. 15
Dividend Provision .................................................. 15
Declarations........................................................... 15
Fraud and Misrepresentation..................................... 15
Examination Under Oath........................................... 16
Terms Of Policy Conformed To Statutes.................... 16

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**
Special Endorsement - United States Government
    Employees............................................................ 16

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers "or "herself."

## AGREEMENT

**We, the Company named in the declarations attached to this policy, make this agreement with** *you,* **the policyholder. Relying on the information** *you* **have furnished and the declarations attached to this policy and if** *you* **pay** *your* **premium when due, we will do the following:**

**SECTION I - LIABILITY COVERAGES**

**BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY COVERAGES**
**Your Protection Against Claims From Others**

**DEFINITIONS**

The words italicized in Section I of this policy are defined below.

**1.** *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

**2.** *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

**3.** *"Farm auto"* means a truck type vehicle with a load capacity of 2,000 pounds or less, not used for commercial purposes other than farming.

**4.** *"Insured"* means a person or organization described under **"PERSONS INSURED"**.

**5.** **"Non-owned auto"** means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**6.** *"Owned auto"* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
    (b) a *trailer* owned by *you*;
    (c) a *private passenger*, *farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for six months or more, if:

        (i) it replaces an *owned auto* as defined in (a) above; or
        (ii) we insure all *private passenger, farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) a *temporary substitute auto*.

**7.** *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto.

**8.** *"Relative"* means a person related to *you* who resides in *your* household.

**9.** *"Temporary substitute auto"* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

**10.** *"Trailer"* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto*.

**11.** **"Utility auto"** means a vehicle, other than a *farm auto*, with a load capacity of 2,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

**12.** *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

**13.** *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

**LOSSES WE WILL PAY FOR** *YOU*

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

**1.** *bodily injury*, sustained by a person, and
**2.** damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**

**1.** All investigative and legal costs incurred by us.

**2.** All court costs charged to an *insured* in a covered lawsuit.

**3.** All interest accruing on that amount of a judgment which represents our limit of liability, until we have paid, offered or deposited in court that part of the judg ment not exceeding the limit of our liability.

**4.** Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

**5.** Premiums for bail bonds paid for an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

**6.** Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

**8.** All reasonable costs, incurred by an *insured* at our request.

**EXCLUSIONS**
**When Section I Does Not Apply**

We will not pay damages if any one of the following exclusions 1. through 13. applies.

We will neither pay damages nor defend any suit for damages if one or more of exclusions 1., 2., 3., 4., 5., 6., or 10. applies.

**1.** *Bodily injury* to any *insured* is not covered nor is *bodily injury* to any *insured* covered whenever the ultimate benefits of indemnification accrue directly or indirectly to an *insured*. This exclusion also applies to any designated excluded driver who would have otherwise been included in the policy definition of an *insured*.

**2.** Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**3.** *Bodily injury* or property damage caused intentionally by or at the direction of any *insured* is not covered.

**4.** We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

**5.** *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

**6.** *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by any *insured* is not covered.

However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' compensation law.

**7.** We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if a suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

**8.** We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.

**9.** A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.

**10.** We do not cover damage to property owned, rented to, transported by, or in the charge of, an *insured*, including motor vehicles operated by an *insured*.

**11.** We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

**12** We do not cover:

(a) the United States of America, or any of its agencies;
(b) any person, including *you,* if protection is afforded under the provisions of the Federal Tort Claims Act.

**13.** Section I does not apply to any vehicle while being used in the business of delivering food or food products from a restaurant or retail business to a consumer.

**PERSONS INSURED**
**Who Is Covered**

Section I applies to the following as *insureds* with regard to an *owned auto*:

**1.** *you* and *your relatives*;

**2.** any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of any *insured* under 1. or 2. above.

Section I applies to the following with regard to a **non-owned auto:**

1.  a) **you**;
    b) **your relatives** when using a **private passenger**, **farm** or **utility auto** or **trailer**.

Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2.  a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an **insured** under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of **insureds** involved in the occurrence.

### FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The **insured** agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

### OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of **your** state, we agree to increase **your** coverages to the extent required of out-of-state motorists by local law.  This additional coverage will be reduced to the extent that **you** are protected by another insurance policy.  No person can be paid more than once for any item of loss.

### LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

1.  The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one person as the result of one occurrence.

2.  The limit of bodily injury liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one occurrence.

3.  The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons

or organizations, including the loss of use of the property as the result of any one occurrence.

### OTHER INSURANCE

If the **insured** has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS

The following conditions apply to Section I:

1.  NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

(a) the identity of the **insured**;
(b) the time, place and details of the occurrence;
(c) the names and addresses of the injured, and of any witnesses; and
(d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an **insured**, he must promptly send us each demand, notice, summons or other process received.

2.  TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each.  An auto and an attached **trailer** are considered to be one auto.

3.  ASSISTANCE AND COOPERATION OF THE **INSURED**

The **insured** will cooperate and assist us, if requested:

(a) in the investigation of the occurrence;
(b) in making settlements;
(c) in the conduct of suits;
(d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of **bodily injury** or property damage;
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.

Only at his own cost will the **insured** make a payment, assume any obligation or incur any cost other than for first aid to others.

4.  ACTION AGAINST US

No suit will lie against us:

(a) unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) until the amount of the *insured's* obligation to pay has been finally determined, either

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured,* the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured,* has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

**5.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

**SECTION II - AUTO MEDICAL PAYMENTS**
**Protection For *You* And *Your* Passengers For Medical Expenses**

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

**1.** *you* and each *relative* who sustains *bodily injury* caused by accident:

(a) while *occupying* the *owned auto*; or

(b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or

(c) when struck as a pedestrian by an auto or *trailer*.

**2.** any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**
**When Section II Does Not Apply**

**1.** There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2** There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

**3.** *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

(a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

(b) vehicle operated on rails or crawler-treads.

**4.** There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

**5.** There is no coverage for *bodily injury* sustained due to *war*.

**6.** The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

**7.** There is no coverage for any person who sustains *bodily injury* while *occupying* an auto being used in the business of delivering food or food products from a restaurant or retail business to a consumer.

**LIMIT OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

**OTHER INSURANCE**

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to this Coverage:

**1.** NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

   (a) the identity of the *insured*;
   (b) the time, place and details of the accident; and
   (c) the names and addresses of the injured, and of any witnesses.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ACTION AGAINST US

Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

**4.** MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

**5.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

**SECTION III - PHYSICAL DAMAGE COVERAGES**
*Your* Protection For *Loss* Or Damage To *Your* Car

**DEFINITIONS**

The definitions of terms **"auto business," "farm auto," "private passenger auto," "relative", "temporary substitute auto", "utility auto," "you,"** and **"war"** under Section I apply to Section III also. Under this Section, the following special definitions apply:

**1.** **"Actual cash value"** is the replacement cost of the auto or property less **depreciation** or **betterment**.

**2.** **"Betterment"** is improvement of the auto or property to a value greater than its pre-loss condition.

**3.** **"Collision"** means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

**4.** **"Depreciation"** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

**5.** **"Insured"** means:

   (a) regarding the **owned auto**:

      (i) **you** and **your relatives**;
      (ii) a person or organization maintaining, using or having custody of the auto with **your** permission, if his use is within the scope of that permission.

   (b) regarding a **non-owned auto**:

      **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

**6.** **"Loss"** means direct and accidental loss of or damage to:

   (a) an insured auto, including its equipment; or
   (b) other property insured under this Section.

**7.**   *"Non-owned auto"* means a *private passenger*, *farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner.  An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**8.** *"Owned auto"* means:

(a)   any vehicle described in this policy for which a specific premium charge indicates there is coverage;

(b)   a *private passenger*, *farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease during the policy period for six months or more; if

(i)   it replaces an *owned auto* as described in (a) above, or

(ii)   we insure all *private passenger*, *farm*, *utility autos* and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;

(c)   a *temporary substitute auto*.

**9.**   *"Trailer"* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

*LOSSES* WE WILL PAY FOR *YOU*

**Comprehensive (Excluding *Collision*)**

**1.**   We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage and *loss* caused by:

(a)  missiles;
(b)  falling objects;
(c)  fire;
(d)  lightning;
(e)  theft;
(f)  larceny;
(g)  explosion;
(h)  earthquake;
(i)  windstorm;

(j)   hail;
(k)  water;
(l)  flood;
(m) malicious mischief;
(n)  vandalism;
(o)  riot;
(p)  civil commotion; or
(q)  colliding with a bird or animal.

No deductible will apply to *loss* caused by fire, lightning, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

**2.**   We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects, due to:

(a)  fire;
(b)  lightning;
(c)  flood;
(d)  theft of the entire automobile;

(e)  earthquake;
(f)  explosion; or
(g)  falling objects.

No deductible will apply to *loss* from fire or lightning.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

**3.**   *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

*Collision*

**1.**   We will pay for *collision loss* to the *owned auto* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

**2.**   We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*.  The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

**3.**   *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

**1.**   We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police.  Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $25.00 per day nor $750.00 per *loss*.

**2.**   We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

**3.**   We will pay for *loss* of the following equipment (including *loss* to accessories and antennas):

(a)  car phone;
(b)  citizen's band radio;
(c)  two-way mobile radio;
(d)  device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of a *loss*:

(a)   is permanently installed in or upon an *owned auto*; and

(b)  that vehicle is insured under the appropriate
coverage.

## EXCLUSIONS
### When The Physical Damage Coverages Do Not Apply

**1.**  An auto used to carry passengers or goods for hire is
not covered.  However, a vehicle used in an ordinary car
pool on a ride sharing or cost sharing basis is covered.

**2.**  *Loss* due to *war* is not covered.

**3.**  We do not cover *loss* to a *non-owned auto* when
used by the *insured* in the *auto business*.

**4.**  There is no coverage for *loss* caused by and limited
to wear and tear, freezing, mechanical or electrical
breakdown or failure, unless that damage results from a
covered theft.

**5.**  Tires, when they alone are damaged by *collision*,
are not covered.

**6.**  *Loss* due to radioactivity is not covered.

**7.**  *Loss* to any tape, wire, record disc or other medium
for use with a device designed for the recording and/or
reproduction of sound is not covered.

**8.**  We do not cover *loss* to any radar detector.

**9.**  We do not cover *trailers* when used for business
or commercial purposes with vehicles other than
*private passenger*, *farm* or *utility autos*.

**10.** There is no coverage for a *loss* to an auto while being
used in the business of delivering food or food products
from a restaurant or retail business to a consumer.

### LIMIT OF LIABILITY

The limit of our liability for  *loss*:

**1.**  is the *actual cash value* of the property at the time
of the *loss*;

**2.**  will not exceed the cost to repair or replace the
property, or any of its parts, with other of like kind and
quality and will not include compensation for any
diminution in the property's value that is claimed to result
from the *loss*;

**3.**  to personal effects arising out of one occurrence is
$200;

**4.**  to a *trailer* not owned by *you* is $500;

**5.**  for custom options is limited to the *actual cash
value* of equipment, furnishings or finishings (including
paint) installed in or upon the vehicle only by the auto
factory or an authorized auto dealer and included in the
purchase price of the vehicle.

*Actual cash value* of property will be determined at
the time of the *loss* and will include an adjustment for
*depreciation/betterment* of the property.

### OTHER INSURANCE

If the *insured* has other insurance against a *loss*
covered by Section III, we will not owe more than our
pro-rata share of the total coverage available.

Any insurance we provide for a vehicle  *you* do not
own shall be excess over any other valid and collectible
insurance.

### CONDITIONS

The following conditions apply only to the Physical
Damage Coverages:

**1.**  NOTICE

As soon as possible after a *loss,* written notice must
be given us or our authorized agent stating:

    (a)  the identity of the *insured*;
    (b)  a description of the auto or *trailer*;
    (c)  the time, place and details of the *loss*; and
    (d)  the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify
the police.

**2.**  TWO OR MORE AUTOS

If this policy covers two or more autos or  *trailers*,
the limit of coverage and any deductibles apply
separately to each.

**3.**  ASSISTANCE AND COOPERATION OF THE
*INSURED*

The *insured* will cooperate and assist us, if
requested:

    (a)  in the investigation of the  *loss*;
    (b)  in making settlements;
    (c)  in the conduct of suits;
    (d)  in enforcing any right of subrogation against any
        legally responsible person or organization;
    (e)  at trials and hearings;
    (f)  in securing and giving evidence; and
    (g)  by obtaining the attendance of witnesses.

**4.**  ACTION AGAINST US

Suit will not lie against us unless the policy terms
have been complied with and until 30 days after proof of
loss is filed and until the amount of *loss* is determined.

**5.** *INSURED'S* DUTIES IN EVENT OF *LOSS*

In event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
(c) At our request, the *insured* will exhibit the damaged property.

**6.** APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**7.** PAYMENT OF *LOSS*

We may at our option:

(a) pay for the *loss;* or
(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**8.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

**9.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

A-30CA (10-98)  Page 10 of 16

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE**

**Protection for *You* and *Your* Passengers For Injuries Caused by Uninsured/Underinsured and Hit-and-Run Motorists.**

**This Section applies only if a premium amount is shown on the Policy Declarations for "UM & Underinsured Motorist" Coverage.**

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1.** *"Hit-and-run motor vehicle"* is a motor vehicle causing *bodily injury* to an *insured* through physical contact with him or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(a) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
(b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
(c) makes available for inspection, at our request, the auto occupied by the *insured* at the time of the accident.

**2.** *"Insured"* means:

(a) the individual named in the declarations and his or her spouse;
(b) *relatives* of (a) above if residents of his household;
(c) any other person while *occupying* an *owned auto*;
(d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured*, our limits of liability will not be increased.

**3.** *"Insured auto"* is an auto:

(a) described in the declarations and covered by the bodily injury liability coverage of this policy.
(b) temporarily substituted for an insured auto when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c)  operated by *you* or *your* spouse if a resident of the same household.

But the term *"insured auto"* does not include:

(i)  an auto used to carry passengers or goods for hire except in a car pool;
(ii)  an auto being used without the owner's permission; or
(iii)  under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of any *insured*.

**4.  *"Occupying"*** means in, upon, entering into or alighting from.

**5.  *"State"*** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

**6.  *"Underinsured motor vehicle"*** is a motor vehicle that is insured under a motor vehicle liability policy, or automobile liability insurance policy, self-insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law, but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person.

The term *"underinsured motor vehicle"* does not include:

(a)  an *insured auto*;
(b)  a motor vehicle owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
(c)  a motor vehicle owned by the United States of America, and other national government, a *state,* or a political sub-division of any such government or its agencies;
(d)  a land motor vehicle or *trailer* while located for use as a residence or premises and not as a vehicle; or
(e)  any equipment or vehicle designed or modified for use primarily off public roads, except while actually upon public roads;
(f)  any motor vehicle owned or operated by the named insured or any resident of *your* household.

**7.  *"Uninsured motor vehicle"*** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the *state* in which the *insured motor vehicle* is principally garaged at the time of an accident.  This term also includes a motor vehicle whose insurer is or becomes insolvent or denies coverage or an *underinsured motor vehicle*.

The term *"uninsured motor vehicle"* does not include:

(a)  an *insured auto*;

(b)  a motor vehicle owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
(c)  a motor vehicle owned by the United States of America, any other national government, a *state*, or a political sub-division of any such government or its agencies;
(d)  a land motor vehicle or *trailer* while located for use as a residence or premises and not as a vehicle;
(e)  any equipment or vehicle designed or modified for use upon public roads, except while actually upon public roads; or
(f)  any motor vehicle owned or operated by the named insured or any resident of *your* household.

**LOSSES WE PAY**

Under this coverage, we will pay damages for *bodily injury* to an *insured*, caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle, underinsured motor vehicle* or a *hit-and-run motor vehicle* arising out of the ownership, maintenance or use of that motor vehicle.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us.  The dispute will be arbitrated if an agreement cannot be reached.

**EXCLUSIONS**
**When Section IV Does Not Apply**

**1.**  This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

**2.**  *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured* or *underinsured motor vehicle* owned or operated by an *insured* or a *relative* is not covered.

**3.**  This coverage will not benefit directly or indirectly any workers' compensation insurer, self insurer or disability benefits insurer or directly benefit the United States, or any *state* or political subdivision thereof.

**4.**  We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

**5.**  We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured/Underinsured Motorists Coverage is not carried.

**6.**  Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of liability for Uninsured and Underinsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as the result of one accident.

**2.** The limit of liability for Uninsured and Underinsured Motorists Coverage stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of one accident.

**3.** When **bodily injury** is caused by one or more motor vehicles under this coverage, our maximum liability for providing underinsured motorists coverage shall not exceed the **insured's** Underinsured Motorists Coverage limits, less the amount paid to the **insured** by or for any person or organization that may be held legally liable for the injury.

**4.** Underinsured Motorists Coverage does not apply to any **bodily injury** until the limits of bodily injury liability policies applicable to all **insured autos** causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

**5.** When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss.

The amount payable under this Coverage will be reduced by all amounts:

  (a) paid by or for all persons or organizations liable for the injury;
  (b) paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or
  (c) paid or payable under any workers' compensation law, disability benefits law or any similar law, exclusive of non-occupational disability benefits.

## OTHER INSURANCE

When an **insured occupies** a motor vehicle other than an **owned auto**, this Coverage shall not apply if the owner of that vehicle has insurance similar to that provided under this Coverage.

A-30CA (10-98)  Page 12 of 16

Except as provided above, if the **insured** has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the **insured** has other insurance against a loss covered by the Uninsured Motorists provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

## DISPUTES BETWEEN US AND AN *INSURED*

If any **insured** making claim under this policy and we do not agree that he is legally entitled to recover damages under this Coverage from the owner or operator of an **uninsured/underinsured motor vehicle** because of **bodily injury** to the **insured**, or do not agree as to the amount payable, either party will have the right to demand arbitration.

The matter(s) in dispute shall then be settled according to American Arbitration Association rules. One neutral arbitrator will conduct the arbitration.

Judgment on the arbitrator's award may be entered in a court having jurisdiction. The award or judgment confirming the award shall not be conclusive on any party in any action between:

  (a) any **insured**, his insurer, his legal representative or his heirs, and
  (b) the uninsured/underinsured motorist,

to recover damages arising out of the accident upon which the award is based. The parties may agree to be bound by the arbitrators award.

If any **insured** has or may have a right to benefits under any workers' compensation law (except for non-occupational disability benefits), the arbitration will be stopped until the **insured's** physical condition is stationary and ratable. If the **insured** claims a permanent disability, that claim shall, unless good cause is shown, be settled by judicial award or compromise and release before arbitration may go on.

Any demand for arbitration shall contain a statement, under penalty of perjury, stating whether:

  (a) the **insured** has a workers' compensation claim;
  (b) that there has been an award or settlement on the case on all issues reasonably contemplated to arise in that claim; and
  (c) if not, what good cause reasons exist for the arbitration to go on immediately.

## TRUST AGREEMENT

When we make a payment under this Coverage:

**1.** We will be entitled to repayment of that amount out of any settlement or judgment any **insured** recovers

from any person or organization legally responsible for the **bodily injury** or the insurer of such person or organization.

**2.** Any **insured** claiming benefits will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

**3.** At our written request, any **insured** claiming benefits, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. That **insured** will pay us out of the recovery for our expenses, costs and attorneys' fees.

**4.** Any **insured** claiming benefits will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following Conditions apply only to the Uninsured Motorists Coverage:

**1.** NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a) the identity of the **insured**;
   (b) the time, place and details of the accident; and
   (c) the names and addresses of the injured, and of any witnesses.

If any **insured** or his legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

If the **insured** brings an action against the owner or operator of an **underinsured motor vehicle**, he shall give to us a copy of the complaint by personal service or certified mail. All pleadings and depositions shall be made available for copying or copies furnished to us, at our expense, within a reasonable time.

**2.** ASSISTANCE AND COOPERATION OF THE **INSURED**

After we receive notice of a claim, we may require any **insured** to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require that **insured** to make that person or organization a defendant in any action against us.

**3.** CLAIMS NOT SETTLED WITHIN ONE YEAR OF DATE OF ACCIDENT

California law provides that any claim for uninsured/underinsured benefits provided by this policy expires one year after the accident unless one of the following actions is taken within one year from the date of the accident:

   a) suit is filed for **bodily injury** against the uninsured motorist in a court of competent jurisdiction,
   b) agreement is reached with us as to the amount due under the policy, or
   c) we are notified in writing, by certified mail, return receipt requested, that formal arbitration is demanded.

If one of these events does not occur within one year following the date of the accident, we will not be liable for any further uninsured/underinsured benefits or claims based upon injuries sustained in the accident.

**4.** PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, any **insured** or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of any **insured's** incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS

Any amount due is payable:

   (a) to any **insured** claiming benefits or his authorized representative;
   (b) if any **insured** claiming benefits is a minor, to his parent or guardian; or
   (c) if any **insured** having a claim for benefits is deceased, to his surviving spouse; otherwise
   (d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

**SECTION V - GENERAL CONDITIONS These Conditions Apply To All Coverages In This Policy.**

**1.** TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

**2.** PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3.** CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

    (a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

    (b) that *you* will cooperate with us in determining if this information is correct and complete.

    (c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

**4.** ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse if covered under the policy prior to *your* death. Until the expiration of the policy term, we will also cover:

    (a) the executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of his duties;

    (b) any person having proper custody of and operating an *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

**5.** POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. standard time at *your* address stated in the declarations.

**6.** CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

**7.** CANCELLATION BY US

We may cancel this policy by mailing to *you,* at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

    (a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

    (b) 10 days in advance if the policy has been in effect less than 60 days at the time notice is mailed and is not a renewal;

    (c) 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

**8.** CANCELLATION BY US IS LIMITED

We will not cancel this policy except for any of the following reasons:

    (a) *You* do not pay the initial or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.

    (b) Fraud or material misrepresentation made by an *insured* in obtaining the policy, continuing the policy or in presenting a claim under the policy.

    (c) A substantial increase in the hazard insured against.

**9.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 30 days prior to the expiration date.  The mailing or delivery of this notice by us will be sufficient proof of notice.  This policy will expire without notice if any of the following exist:

a)  **You** do not pay any premium as we require to renew this policy.
b)  **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.
c)  **You** do not accept our offer to renew.

We will only nonrenew this policy if one of the reasons listed in Condition 8., "Cancellation By Us Is Limited", exists.

If we fail to send **you** notice of refusal to renew at the appropriate time, **your** policy will remain in effect for 30 days from the date that the proper notice is mailed.

**10.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**11.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy will terminate on the date **you** do so.

**12.** DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

**13.** DECLARATIONS

By accepting this policy, **you** agree that:

(a)  the statements in **your** application and in the declarations are **your** agreements and representations;
(b)  this policy is issued in reliance upon the truth of these representations; and
(c)  this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**14.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a)  at the time application is made; or
(b)  at any time during the policy period; or
(c)  in connection with the presentation or settlement of a claim.

**15.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**16.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of California are amended to conform to those statutes.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

**1.   Special Endorsement - United States Government Employees**

**A.**   Under the Property Damage Coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

   1.   motor vehicles owned or leased by the United States Government or any of its agencies, or
   2.   rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government.   Subject to the limits described in paragraph B below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.**   The following limits apply to this Coverage:

   1.   A $100 deductible applies to each occurrence.
   2.   For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

   a.   The *actual cash value* of the property at the time of the occurrence; or
   b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c.   Two months basic pay of the *insured*; or
   d.   The limit of Property Damage liability coverage stated in the declarations.

   3.   For vehicles described in A.2.  above, our liability shall not exceed the lesser of the following:

   a.   The *actual cash value* of the property at the time of the occurrence; or
   b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c.   The limit of Property Damage liability coverage stated in the declarations.

   This insurance is excess over other valid and collectible insurance.

W.C.E. Robinson
Secretary

O. M. Nicely
President

HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799



**Automobile Policy Amendment**
California

Policy Number:

***Your*** policy is amended as follows:

**SECTION I - LIABILITY COVERAGES**

**DEFINITIONS**

The following definitions are revised as follows:

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 10,000 pounds or less, not used for commercial purposes other than farming.

5. ***Non-owned auto*** means an automobile or ***trailer*** not owned by or furnished for the regular use of either ***you*** or a ***relative***, other than a ***temporary substitute auto***. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

   A ***non-owned auto*** does not include:

   a) any automobile rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. An automobile is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the automobile to be used for ***ride-sharing*** with a ***transportation network company***; or

   b) any automobile rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or

   c) any automobile rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** by a ***transportation network company***; or

   d) any automobile rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the automobile as a vehicle for hire.

9. ***Temporary substitute auto*** means an automobile or ***trailer***, not owned by ***you***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

   A ***temporary substitute auto*** does not include:

   a) any automobile rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. An automobile is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the automobile to be used for ***ride-sharing*** with a ***transportation network company***; or

   b) any automobile rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or

   c) any automobile rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** by a ***transportation network company***; or

   d) any automobile rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the automobile as a vehicle for hire.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 10,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

13. ***You*** and ***your*** means the named insured shown in the declarations or his or her spouse or registered domestic partner if a resident of the same household.

The following definitions are added:

14. ***Personal vehicle sharing program*** means a business, organization, network or group facilitating the sharing of private passenger vehicles for use by individuals or businesses.

15. ***Ride-sharing*** means the use of any vehicle by any driver in connection with a ***transportation network company*** from the time a driver logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time a driver logs out of or signs off of any  such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. ***Transportation network company*** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

A54CA (01-16)  Page 1 of 7

ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item 3 is revised as follows:

3.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:
    (a)  Before the judgment, where owed by law, and until we pay, offer to pay or deposit in court the amount due under this coverage;
    (b)  After the judgment, and until we pay, offer to pay or deposit in court, the amount due under this coverage.

After Item 5 the following sentence is added:

6.  We will upon request by an *insured*, provide reimbursement for the following items:

Items 6, 7, and 8 are renumbered and revised as follows:
    (a)  Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto.*
    (b)  Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
    (c)  All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

The first two paragraphs are revised as follows:

We will not pay damages if any one of the following exclusions 1 through 19 applies.

We will neither pay damages nor defend any suit for damages if one or more of exclusions **1** through **6**, **10**, or **14** through **22** applies.

The following exclusion is revised:

2.  Section I does not apply to any vehicle:
    (a)  used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
    (b)  while being used for *ride-sharing*.
    However, a vehicle used in an ordinary car pool is covered.

The following exclusions are added:

14. *Bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

15. *Bodily injury* or property damage that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism is not covered.

16. We do not cover any liability assumed under any contract or agreement.

17. We do not cover *bodily injury* or property damage that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

18. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

19. There is no coverage for *bodily injury* or property damage caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

20. There is no coverage for *bodily injury* or property damage arising or resulting from the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

21. Section I does not apply to any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

22. Section I does not apply to any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## SECTION II - AUTO MEDICAL PAYMENTS

### EXCLUSIONS

### When Section II Does Not Apply

The following exclusion is revised:

1.  Section II does not apply to *bodily injury* sustained by any occupant of an *owned auto* or *non-owned auto*:
    (a)  used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
    (b)  while being used for *ride-sharing*.
    However, a vehicle used in an ordinary car pool is covered. This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

The following exclusions are added:

8. There is no coverage for **bodily injury** that results from nuclear exposure or explosion including resulting fire radiation or contamination.
9. There is no coverage for **bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.
10. There is no coverage for **bodily injury** that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.
11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.
12. There is no coverage for **bodily injury** caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
13. There is no coverage for **bodily injury** caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
14. There is no coverage for **bodily injury** sustained by any **insured** while operating, **occupying,** or when struck as a pedestrian by any vehicle leased by **you** or a **relative** for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.
15. There is no coverage for **bodily injury** sustained by any **insured** while operating, **occupying,** or when struck as a pedestrian by any vehicle regularly rented by **you** or a **relative** on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.
16. There is no coverage for **bodily injury** to any **insured** arising out of:
    a) any automobile rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. An automobile is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the automobile to be used for **ride-sharing** with a **transportation network company**; or
    b) any automobile rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or
    c) any automobile rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or
    d) any automobile rented or leased by **you** or a **relative** which displays an exterior marking that identifies the automobile as a vehicle for hire.
    This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**CONDITIONS**

Condition **5** SUBROGATION is replaced with the following:

5. REIMBURSEMENT AGREEMENT AND OFFSET PROVISION. OUR RIGHT TO RECOVER PAYMENT.
    When any **insured** has been paid by us under this policy provision and also recovers from another person, entity, or organization, we shall be entitled to reimbursement of the amount of our payment, as provided in this Section. We will seek reimbursement regardless of whether the **insured** (or his or her estate, parent or legal guardian) was paid for all damages arising from the loss or whether or not the **insured** was made whole.
    Our right to reimbursement applies to any payments received by the **insured** and to payments to be received by the **insured** that arise from but are not limited to any one or more of the following:
    (a) Any award, judgment or settlement that may result from the exercise of any rights of recovery of the **insured** against any person, entity, or organization that the **insured** claims is responsible for **bodily injury** to the **insured** for which payment under Auto Medical Payments coverage has been made.
    (b) Any payment received, or to be received, by or on behalf of an **insured** under the provisions of any:
        (i) Automobile, premises or other insurance coverage affording benefits for medical coverage;
        (ii) Individual blanket or group accident, disability or hospitalization insurance;
        (iii) Medical, surgical, hospital or funeral service benefits or reimbursement plan; or
        (iv) Workers' compensation or disability benefits law or any similar law.
    Prior to payment being made under this coverage, each party, including the representative and/or insurer of that party, whose act allegedly caused the **bodily injury** may be notified of this reimbursement agreement. If an award or judgment against, or settlement with, any party that the **insured** claimed was responsible for the **bodily injury** has been concluded, then the amounts we owe under this coverage shall be reduced by the amount of that award, judgment or settlement.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The definitions of *personal vehicle sharing program, ride-sharing* and *transportation network company* under Section I apply to Section III also.

Definition 7. *Non-owned auto* is replaced with the following:

7.  *Non-owned auto* means a *private passenger*, *farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relative*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

A *non-owned auto* does not include:

a)  any automobile rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. An automobile is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the automobile to be used for *ride-sharing* with a *transportation network company*; or

b)  any automobile rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

c)  any automobile rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

d)  any automobile rented or leased by *you* or a *relative* which displays an exterior marking that identifies the automobile as a vehicle for hire.

Definition 9 *Trailer* is revised as follows:

9.  *Trailer* means a trailer of the flatbed variety designed for use with a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

The following definitions are added:

10.  *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

(a)  Are permanently installed or attached; or

(b)  Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

11.  *Child Passenger Restraint System* means a child passenger restraint system that meets Federal Motor Vehicle Safety Standards as required under the Vehicle Code of California Division 12, Chapter 5, Article 3.3 §27360.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

The following paragraph is added:

4.  We will pay for the replacement of any *child passenger restraint system* that is damaged in a covered *loss*.

### EXCLUSIONS

#### When The Physical Damage Coverages Do Not Apply

The following exclusion is revised:

1.  There is no coverage for *loss* to an auto:

(a)  used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b)  while being used for *ride-sharing*.

However, a vehicle used in an ordinary car pool is covered.

The following exclusions are added:

11.  There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

12.  There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.

13.  We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

14.  There is no coverage for any liability assumed under any contract or agreement.

15.  There is no coverage for *loss* resulting from:

(a)  The acquisition of a stolen vehicle;

(b)  Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;

(c)  Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or

(d) The sale of an *owned auto*.

16. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

17. We do not cover *loss* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

18. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

19. There is no coverage for any *loss* caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.

20. There is no coverage for any *loss* caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

21. Section III does not apply to any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

22. Section III does not apply to any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**LIMIT OF LIABILITY**

Paragraph 2 is replaced with the following:

2. will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailin competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price.

Paragraph 5 is replaced with the following:

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

**CONDITIONS**

4. ACTION AGAINST US
   The following paragraph is added:
   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

Condition **10** Assignment is added:

10. ASSIGNMENT
    With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE**

**EXCLUSIONS**

**When Section IV Does Not Apply**

Exclusion 2 is replaced as follows:

2. *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured motor vehicle* or *underinsured motor vehicle* owned or operated by an *insured* or a *relative* is not covered, except when the injured *insured's* vehicle is being operated, or caused to be operated, by a person without the injured *insured's* consent in connection with criminal activity that has been documented in a police report and that the injured *insured* is not a party to.

The following exclusions are added:

7. *Bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

8. *Bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents released as an act of terrorism is not covered.

9. This coverage does not apply to any liability assumed under any contract or agreement.

10. There is no coverage for *bodily injury* or property damage sustained by an *insured* while operating or *occupying* a motor vehicle owned by or available for the regular use of *you* or any *relative* and which is not insured under the liability coverage of this policy.

A54CA (01-16)  Page 5 of 7          Policy Number:

11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

12. There is no coverage for *bodily injury* or property damage caused by an *insured's* participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.

13. There is no coverage for *bodily injury* or property damage caused by an *insured's* operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

14. There is no coverage for *bodily injury* or property damage under this Section for any person or organization while an *owned auto* or *non-owned auto*:
    (a)  is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
    (b)  is being used for *ride-sharing*.
    However, a vehicle used in an ordinary car pool is covered.

15. There is no coverage for *bodily injury* sustained by any *insured* while operating or *occupying* any vehicle leased by *you* or a *relative* for less than six months and which is not insured under the liability coverage of this policy.

16. There is no coverage for *bodily injury* sustained by any *insured* while operating or *occupying* any vehicle regularly rented by *you* or a *relative* on a daily, weekly or monthly basis and which is not insured under the liability coverage of this policy.

17. There is no coverage for *bodily injury* to any *insured* arising out of:
    a)  any automobile rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. An automobile is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the automobile to be used for *ride-sharing* with a *transportation network company*; or
    b)  any automobile rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or
    c)  any automobile rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or
    d)  any automobile rented or leased by *you* or a *relative* which displays an exterior marking that identifies the automobile as a vehicle for hire.
    This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**LIMITS OF LIABILITY**
Paragraph **4** is replaced as follows:

4. Underinsured Motorists Coverage does not apply to any *bodily injury* until the limits of bodily injury liability policies applicable to all insured autos causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

**CONDITIONS**
Condition **3** is replaced as follows:

3. CLAIMS NOT SETTLED WITHIN TWO YEARS OF DATE OF ACCIDENT
    California law provides that any *bodily injury* claim for uninsured/underinsured benefits provided by this policy expires two years after the accident unless one of the following actions is taken within two years from the date of the accident:
    (a)  Suit is filed for *bodily injury* against the uninsured motorist in a court of competent jurisdiction.
    (b)  Agreement is reached with us as to the amount due under the policy, or
    (c)  We are notified in writing, by certified mail, return receipt requested, that formal arbitration is demanded.
    If one of these events does not occur within two years following the date of the accident, we will not be liable for any further uninsured/underinsured benefits or claims based upon injuries sustained in the accident.

**SECTION V - GENERAL CONDITIONS**
The following conditions are revised as follows:

4. ASSIGNMENT
    *Your* rights and duties under this policy may not be assigned without our written consent. If *you* die, this policy will cover *your* surviving spouse or registered domestic partner if covered under the policy prior to *your* death. Until the expiration of the policy term, we will also cover:
    (a)  The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties; and
    (b)  Any person having proper custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

5. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

7. CANCELLATION BY US, item (b) is deleted.

8. CANCELLATION BY US IS LIMITED

We will not cancel except for any of the following reasons:

(a) Nonpayment of premium;

(b) Fraud or material misrepresentation affecting the policy or **insured**;

(c) A substantial increase in the hazard insured against.

The following conditions are added:

17. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of California.

18. UNDERWRITING CRITERIA

Coverage is not provided for any person for any vehicle which does not meet our underwriting criteria for the types and uses of vehicles insurable under our **FAMILY AUTOMOBILE INSURANCE POLICY** in the state of California.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

## ADDITIONAL INSURED ENDORSEMENT

Named Insured and Address:                          Effective Date of Endorsement:

                                                    Policy Number:

                                                    Policy Effective Date:
                                                                        (12:01 A.M. Standard Time)

                                                    Policy Expiration Date:
                                                                        (12:01 A.M. Standard Time)

**This policy includes coverages for which limits are shown below.**

Description of Car #1:

Description of Car #2:

Description of Car #3:

| <u>COVERAGE</u> | <u>LIMITS OF COVERAGE</u> | | |
|---|---|---|---|
| | CAR #1 | CAR #2 | CAR #3 |
| **Bodily Injury Liability** | $　　M and $　　M<br>(each person)  (each occurrence) | $　　M  and $　　M<br>(each person)  (each occurrence) | $　　M  and $　　M<br>(each person)  (each occurrence) |
| **Property Damage Liability** | $<br>(each occurrence) | $<br>(each occurrence) | $<br>(each occurrence) |
| **Uninsured Motorist<br>(Bodily Injury)** | $　　M and $　　M<br>(each person)  (each occurrence) | $　　M  and $　　M<br>(each person)  (each occurrence) | $　　M  and $　　M<br>(each person)  (each occurrence) |

### ADDITIONAL INSURED

These coverages also apply to the Additional Insured; but, the limit of our liability is not increased by the inclusion of the Additional Insured.

    days written notice will be given the Additional Insured in the event of any:

1. Cancellation; or
2. Material change

in the liability coverages during the policy year.

Name and Address of Additional Insured:

                                                         _____
                                          Countersigned by Authorized Representative

UE30 (M-84)



**Automobile Policy Amendment**
**Emergency Road Service Coverage**

Policy Number:

***Your*** policy provisions are amended as follows:

SECTION III

PHYSICAL DAMAGE COVERAGES

**Emergency Road Service**

We will pay reasonable expenses an ***insured*** incurs for the ***owned*** or ***non-owned auto***, for:

1.  mechanical labor up to one hour at the place of breakdown;
2.  lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3.  if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4.  towing it out if it is stuck on or immediately next to a public highway;
5.  delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

***You*** may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the ***insured*** calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor.  The ***insured*** need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the ***insured's*** expense.

**HIRED SERVICES**

The second method occurs when the ***insured*** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A-115 (04-08)

# GEICO

Policy Number:

We agree with **you** as follows:

SECTION III
PHYSICAL DAMAGE COVERAGES

Section III is amended to provide Multi-Risk Physical Damage Coverages. This includes:

1. comprehensive;
2. collision; and
3. mechanical breakdown protection

This amendment is subject to all policy conditions and definitions except as specifically modified below.

The amount of applicable deductible shown in the policy declarations shall apply to each **loss** under the Multi-Risk Coverage. A $50 deductible shall apply to glass breakage without any other damage to the auto, unless you carry full comprehensive coverage.

Mechanical Breakdown

We will pay for **loss** caused other than by **collision** or under the comprehensive coverage due to the mechanical breakdown of the **owned auto**. **Losses** from mechanical breakdown shall not be accumulated to reach the deductible.

Definitions

For the purposes of this amendment, the following special definitions apply with respect to mechanical breakdown only:

3. "Loss" means all risk of physical damage to the **owned auto** or its equipment.

5. "Owned auto" means any vehicle described in this policy for which a specific premium charge indicates there is coverage. "Owned auto" does not mean:

    a) a newly acquired vehicle; or
    b) a replacement vehicle; or
    c) a **temporary substitute auto.**

Exclusions

For the purposes of this amendment only, with respect to mechanical breakdown, exclusion 4 is deleted. The following exclusions are added:

11. Oxidation and rust damage are not covered.

12. Damage caused intentionally by **you** or any other person using an **owned auto** with your permission is not covered.

## Family Automobile Policy Amendment
## Multi-Risk Physical Damage Coverage

13. **Loss** due to misuse, alteration, or **lack of proper maintenance** is not covered. **Proper maintenance** is the recommended vehicle maintenance as outlined in the owner's manual provided by the manufac- turer.

14. Tire wear or other tire damage is not covered.

15. Normal wear and tear is not covered.

16. Routine maintenance services and parts are not cov- ered. This includes; but is not limited to:

    a) engine tune up;
    b) suspension alignment;
    c) wheel balancing;
    d) filters;
    e) lubrication;
    f) engine coolant;
    g) fluids;
    h) spark or glow plugs;
    i) brake pads;
    j) brake linings; and
    k) brake shoes.

17. Any **loss** to the extent covered by warranty, recall or voluntary repair programs is not covered.

18. Any **loss** to a **non-owned auto** or to a **temporary substitute auto** is not covered.

19. Any **loss** to a newly acquired or replacement auto is not covered.

20. Any pre-existing **loss** or damage to any insured auto is not covered.

21. Multi-Risk coverage will terminate either when the Odometer reading exceeds 100,000 miles or when the age of the vehicle is 7 years old, whichever oc- curs earlier. The 7 year stipulation will only apply to vehicles that are 1996 model year and later.

Other Insurance

For the purposes of this amendment only, if **you** have other insurance against a **loss** covered by mechanical breakdown protection, this policy will apply as excess insurance over such other valid and collectible insur- ance.

A-180 (2-96)

Conditions

For the purposes of this amendment only, the following conditions are added with respect to mechanical break-down coverage:

1. Notice

   e)  the location of the **owned auto**.

   For this coverage to be applicable, repairs may not be undertaken prior to obtaining authorization from us.

We affirm this amendment.


J. C. Stewart
Secretary

GOVERNMENT EMPLOYEES INSURANCE COMPANY
AND GEICO GENERAL INSURANCE COMPANY

O. M. Nicely
President

A-180 (2-96)                    Policy Number:                              Page 2 of 2



Policy Number:

**AUTOMOBILE POLICY AMENDMENT**

**COLLISION DEDUCTIBLE WAIVER**

Under Section III Physical Damage Coverages:

We agree with *you* that under Collision Coverage, item 1 is amended by adding the following sentence:

No deductible applies to *Collision* loss caused by actual direct physical contact with an *uninsured motor vehicle* as defined in your policy provided:

a.   the owner or operator of the *uninsured motor vehicle* is identified; or

THE COMPANY affirms this amendment.

b.   the *uninsured motor vehicle* is identified by license number; and

c.   the *insured* or someone on his behalf reports the accident to us within ten business days; and

d.   the *insured* is legally entitled to recover from the uninsured motorist.

J. C. Stewart
Secretary

O. M. Nicely
President

A-428 (8-97)

# GEICO

**AUTOMOBILE POLICY AMENDMENT**

**RENTAL REIMBURSEMENT AMENDMENT**

Policy Number:

We agree with you that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

### Coverage-Rental Reimbursement

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1. The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2. The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you*;
2. Repaired;
3. Replaced; or
4. If the *owned auto* is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A-431 (08-06)

## ENDORSEMENT

### LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days. The policy provisions on time of payment, appraisal and the right to sue us applies both to the Lienholder and the *insured*. We may settle a claim at our option by separate payment to the insured and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.

This endorsement forms a part of your policy. It is effective at 12:01 A.M. standard time at your address on the effective date shown above.

**RETAIN THIS COPY FOR YOUR RECORDS**

------------------------------------------------

Countersigned by Authorized Representative

UE-316-C (4-92)

# EXHIBIT B

**GEICO**

**ONE GEICO PLAZA**
**Washington, D. C.  20076-0001**
**Telephone: 1-800-841-3000**

# Your
# California
# Family
# Automobile
# Insurance
# Policy

# POLICY INDEX

**Page**
**Page**

**SECTION I - LIABILITY COVERAGES**
**Your Protection Against Claims From Others**
Definitions.................................................  3
Losses We Will Pay For You.......................  3
Additional Payment We Will Make Under The
   Liability Coverages ................................  3
     Legal Expenses And Court Costs
     Bail And Appeal Bonds
     First Aid Expenses
Exclusions...............................................  4
Persons Insured........................................  4
Financial Responsibility Laws ....................  5
Out of State Insurance...............................  5
Limits Of Liability  ...................................  5
Other Insurance.......................................  5
Conditions...............................................  5
     Notice
     Two Or More Autos
     Assistance And Cooperation Of The Insured
     Action Against Us
     Subrogation

**SECTION II - AUTO MEDICAL PAYMENTS COVERAGE**
**Protection For You And Your Passenger For Medical**
**Expenses**
Definitions...............................................  6
Payments We Will Make............................  6
Exclusions...............................................  6
Limit Of Liability  ....................................  6
Other Insurance.......................................  7
Conditions...............................................  7
     Notice
     Two Or More Autos
     Action Against Us
     Medical Reports -  Proof And Payment Of Claims
     Subrogation

**SECTION III - PHYSICAL DAMAGE COVERAGES**
**Your Protection For Loss Of Or Damage To Your Car**
Definitions...............................................  7
Losses We Will Pay For You
     Comprehensive (Excluding Collision) Coverage.....8
     Collision Coverage.................................  8
Additional Payments We Will Make Under
     The Physical Damage Coverages.......................  8
Exclusions...............................................  9
Limit Of Liability  ....................................  9
Other Insurance.......................................  9

Conditions.................................................  10
     Notice
     Two Or More Autos
     Assistance And Cooperation Of The Insured
     Action Against Us
     Insured's Duties In Event Of Loss
     Appraisal
     Payment Of Loss
     No Benefit To Bailee
     Subrogation

**SECTION IV - UNINSURED MOTORISTS AND**
**UNDERINSURED MOTORISTS COVERAGE**
**Your Protection For Injuries Caused By Uninsured**
**And Hit-and-Run Motorists**
Definitions  .............................................  11
Losses We Pay..........................................  12
Exclusions...............................................  12
Limits Of Liability  ...................................  12
Other Insurance.......................................  13
Disputes Between Us And Insured........................  13
Trust Agreement......................................  13
Conditions...............................................  13
     Notice
     Assistance And Cooperation Of The Insured
     Claims Not Settled Within One Year of Date of
      Accident
     Proof Of Claim - Medical Reports
     Payment Of Loss

**SECTION V - GENERAL CONDITIONS**
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period ...........................  14
Premium.................................................  14
Changes..................................................  14
Assignment..............................................  14
Cancellation By The Insured.....................  14
Cancellation By Us....................................  14
Cancellation By Us Is Limited....................  14
Renewal..................................................  15
Other Insurance.......................................  15
Disposal Of Vehicle...................................  15
Dividend Provision  .................................  15
Declarations............................................  15
Fraud and Misrepresentation....................  15
Examination Under Oath...........................  16
Terms Of Policy Conformed To Statutes...................  16

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**
Special Endorsement - United States Government
     Employees.........................................  16

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers "or "herself."

# AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you,* the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I - LIABILITY COVERAGES

### BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY COVERAGES
Your Protection Against Claims From Others

### DEFINITIONS

The words italicized in Section I of this policy are defined below.

1.   **"Auto business"** means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2.   **"Bodily injury"** means bodily injury to a person, including resulting sickness, disease or death.

3.   **"Farm auto"** means a truck type vehicle with a load capacity of 2,000 pounds or less, not used for commercial purposes other than farming.

4.   **"Insured"** means a person or organization described under **"PERSONS INSURED"**.

5.   **"Non-owned auto"** means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

6.   **"Owned auto"** means:

   (a)  a vehicle described in this policy for which a premium charge is shown for these coverages;

   (b)  a *trailer* owned by *you*;

   (c)  a *private passenger*, *farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for six months or more, if:

     (i)  it replaces an *owned auto* as defined in (a) above; or

     (ii)  we insure all *private passenger, farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

   (d)  a *temporary substitute auto*.

7.   **"Private passenger auto"** means a four-wheel private passenger, station wagon or jeep-type auto.

8.   **"Relative"** means a person related to *you* who resides in *your* household.

9.   **"Temporary substitute auto"** means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner.  This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10.  **"Trailer"** means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto*.

11.  **"Utility auto"** means a vehicle, other than a *farm auto*, with a load capacity of 2,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12.  **"War"** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13.  **"You"** means the policyholder named in the declarations and his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR *YOU*

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1.   *bodily injury*, sustained by a person, and
2.   damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1.   All investigative and legal costs incurred by us.

2.   All court costs charged to an *insured* in a covered lawsuit.

**3.**   All interest accruing on that amount of a judgment which represents our limit of liability, until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

**4.**   Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

**5.**   Premiums for bail bonds paid for an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

**6.**   Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

**7.**   Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

**8.**   All reasonable costs, incurred by an *insured* at our request.

## EXCLUSIONS
### When Section I Does Not Apply

We will not pay damages if any one of the following exclusions 1. through 13. applies.

We will neither pay damages nor defend any suit for damages if one or more of exclusions 1., 2., 3., 4., 5., 6., or 10. applies.

**1.**   *Bodily injury* to any *insured* is not covered nor is *bodily injury* to any *insured* covered whenever the ultimate benefits of indemnification accrue directly or indirectly to an *insured*. This exclusion also applies to any designated excluded driver who would have otherwise been included in the policy definition of an *insured*.

**2.**   Section I does not apply to any vehicle used to carry passengers or goods for hire.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**3.**   *Bodily injury* or property damage caused intentionally by or at the direction of any *insured* is not covered.

**4.**   We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

**5.**   *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

**6.**   *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by any *insured* is not covered.

However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' compensation law.

**7.**   We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available.  We will defend *you* if a suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

**8.**   We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.

**9.**   A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant  while engaged in such other business.

**10.**  We do not cover damage to property owned, rented to, transported by, or in the charge of, an *insured*, including motor vehicles operated by an *insured*.

**11.**  We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

**12**  We do not cover:

   (a)  the United States of America, or any of its agencies;
   (b)  any person, including *you,* if protection is afforded under the provisions of the Federal Tort Claims Act.

**13.**  Section I does not apply to any vehicle while being used in the business of delivering food or food products from a restaurant or retail business to a consumer.

## PERSONS INSURED
### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

**1.**   *you* and *your relatives*;

**2.**   any other person using the auto with *your* permission.  The actual use must be within the scope of that permission;

**3.**   any other person or organization for his or its liability because of acts or omissions of any *insured* under 1. or 2. above.

Section I applies to the following with regard to a **non-owned auto:**

1.  a) **you**;
    b) **your relatives** when using a **private passenger**, **farm** or **utility auto** or **trailer**.

Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2.  a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an **insured** under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of **insureds** involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The **insured** agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of **your** state, we agree to increase **your** coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that **you** are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

1.  The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one person as the result of one occurrence.

2.  The limit of bodily injury liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one occurrence.

3.  The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons

or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the **insured** has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to Section I:

1.  NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

(a) the identity of the **insured**;
(b) the time, place and details of the occurrence;
(c) the names and addresses of the injured, and of any witnesses; and
(d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an **insured**, he must promptly send us each demand, notice, summons or other process received.

2.  TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

3.  ASSISTANCE AND COOPERATION OF THE **INSURED**

The **insured** will cooperate and assist us, if requested:

(a) in the investigation of the occurrence;
(b) in making settlements;
(c) in the conduct of suits;
(d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of **bodily injury** or property damage;
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.

Only at his own cost will the **insured** make a payment, assume any obligation or incur any cost other than for first aid to others.

4.  ACTION AGAINST US

No suit will lie against us:

(a) unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) until the amount of the *insured's* obligation to pay has been finally determined, either

    (i) by a final judgment against the *insured* after actual trial; or

    (ii) by written agreement of the *insured,* the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured,* has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5.  SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

**SECTION II - AUTO MEDICAL PAYMENTS Protection For *You* And *Your* Passengers For Medical Expenses**

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1.  *you* and each *relative* who sustains *bodily injury* caused by accident:

    (a) while *occupying* the *owned auto*; or

(b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or

(c) when struck as a pedestrian by an auto or *trailer*.

2.  any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**
**When Section II Does Not Apply**

1.  There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2.  There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3.  *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

(a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

(b) vehicle operated on rails or crawler-treads.

4.  There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

5.  There is no coverage for *bodily injury* sustained due to *war*.

6.  The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

7.  There is no coverage for any person who sustains *bodily injury* while *occupying* an auto being used in the business of delivering food or food products from a restaurant or retail business to a consumer.

**LIMIT OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

## OTHER INSURANCE

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to this Coverage:

1.  NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

(a) the identity of the *insured*;
(b) the time, place and details of the accident; and
(c) the names and addresses of the injured, and of any witnesses.

2.  TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each.  An auto and an attached *trailer* are considered to be one auto.

3.  ACTION AGAINST US

Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

4.  MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required.  After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services.  These payments are made without regard to fault or legal liability of the *insured*.

5.  SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others.  The *insured* will help us to enforce these rights.  The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION III - PHYSICAL DAMAGE COVERAGES
*Your* Protection For *Loss* Or Damage To *Your* Car

## DEFINITIONS

The definitions of terms *"auto business," "farm auto," "private passenger auto," "relative", "temporary substitute auto", "utility auto," "you,"* and *"war"* under Section I apply to Section III also.  Under this Section, the following special definitions apply:

1.  *"Actual cash value"* is the replacement cost of the auto or property less *depreciation* or *betterment*.

2.  *"Betterment"* is improvement of the auto or property to a value greater than its pre-loss condition.

3.  *"Collision"* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4.  *"Depreciation"* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

5.  *"Insured"* means:

(a) regarding the *owned auto*:

(i) *you* and *your relatives*;
(ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

(b) regarding a *non-owned auto*:

*you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

6.  *"Loss"* means direct and accidental loss of or damage to:

(a) an insured auto, including its equipment; or
(b) other property insured under this Section.

7.   **"Non-owned auto"** means a **private passenger**, **farm** or **utility auto** or **trailer** not owned by or furnished for the regular use of either **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner.  An auto rented or leased for more than 30 days will be considered as furnished for regular use.

8. **"Owned auto"** means:

(a)   any vehicle described in this policy for which a specific premium charge indicates there is coverage;

(b)   a **private passenger**, **farm** or **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for six months or more; if

(i)   it replaces an **owned auto** as described in (a) above, or

(ii)   we insure all **private passenger**, **farm, utility autos** and **trailers** owned or leased by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;

(c)   a **temporary substitute auto**.

9.   **"Trailer"** means a trailer designed for use with a **private passenger auto** and not used as a home, office, store, display or passenger trailer.

### *LOSSES* WE WILL PAY FOR *YOU*

#### Comprehensive (Excluding *Collision*)

1.   We will pay for each **loss**, less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**. This includes glass breakage and **loss** caused by:

(a)  missiles;          (j)   hail;
(b)  falling objects;   (k)  water;
(c)  fire;              (l)   flood;
(d)  lightning;        (m) malicious mischief;
(e)  theft;            (n)  vandalism;
(f)   larceny;         (o)  riot;
(g)  explosion;        (p)  civil commotion; or
(h)  earthquake;       (q)  colliding with a bird or
(i)   windstorm;             animal.

No deductible will apply to **loss** caused by fire, lightning, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the **insured,** breakage of glass caused by **collision** may be paid under the Collision Coverage, if included in the policy.

2.   We will pay, up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects, due to:

(a)  fire;              (e) earthquake;
(b)  lightning;         (f)  explosion; or
(c)  flood;             (g) falling objects.
(d)  theft of the entire automobile;

No deductible will apply to **loss** from fire or lightning.

The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3.   **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

#### *Collision*

1.   We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2.   We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision.**  The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3.   **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1.   We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police.  Reimbursement ends when the auto is returned to use or we pay for the **loss**.

Reimbursement will not exceed $25.00 per day nor $750.00 per **loss**.

2.   We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

3.   We will pay for **loss** of the following equipment (including **loss** to accessories and antennas):

(a)  car phone;
(b)  citizen's band radio;
(c)  two-way mobile radio;
(d)  device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of a **loss**:

(a)   is permanently installed in or upon an **owned auto**; and

(b)   that vehicle is insured under the appropriate coverage.

## EXCLUSIONS
### When The Physical Damage Coverages Do Not Apply

**1.**   An auto used to carry passengers or goods for hire is not covered.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.**   *Loss* due to *war* is not covered.

**3.**   We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

**4.**   There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

**5.**   Tires, when they alone are damaged by *collision*, are not covered.

**6.**   *Loss* due to radioactivity is not covered.

**7.**   *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

**8.**   We do not cover *loss* to any radar detector.

**9.**   We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.

**10.** There is no coverage for a *loss* to an auto while being used in the business of delivering food or food products from a restaurant or retail business to a consumer.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

**1.**   is the *actual cash value* of the property at the time of the *loss*;

**2.**   will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*;

**3.**   to personal effects arising out of one occurrence is $200;

**4.**   to a *trailer* not owned by *you* is $500;

**5.**   for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation*/*betterment* of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

**1.**   NOTICE

As soon as possible after a *loss,* written notice must be given us or our authorized agent stating:

(a)   the identity of the *insured*;
(b)   a description of the auto or *trailer*;
(c)   the time, place and details of the *loss*; and
(d)   the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

**2.**   TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

**3.**   ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

(a)   in the investigation of the *loss*;
(b)   in making settlements;
(c)   in the conduct of suits;
(d)   in enforcing any right of subrogation against any legally responsible person or organization;
(e)   at trials and hearings;
(f)   in securing and giving evidence; and
(g)   by obtaining the attendance of witnesses.

**4.**   ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and until the amount of  *loss* is determined.

**5.** ***INSURED'S*** DUTIES IN EVENT OF ***LOSS***

In event of ***loss*** the ***insured*** will:

(a) Protect the auto, whether or not the ***loss*** is covered by this policy.  Further ***loss*** due to the ***insured's*** failure to protect the auto will not be covered.  Reasonable expenses incurred for this protection will be paid by us.

(b) File with us, within 91 days after ***loss***, his sworn proof of loss including all information we may reasonably require.

(c) At our request, the ***insured*** will exhibit the damaged property.

**6.** APPRAISAL

If we and the ***insured*** do not agree on the amount of ***loss,*** either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss.***  In that event, we and the ***insured*** will each select a competent appraiser.  The appraisers will select a competent and disinterested umpire.  The appraisers will state separately the ***actual cash value*** and the amount of the ***loss.***  If they fail to agree, they will submit the dispute to the umpire.  An award in writing of any two will determine the amount of ***loss.***  We and the ***insured*** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**7.** PAYMENT OF ***LOSS***

We may at our option:

(a) pay for the ***loss;*** or
(b) repair or replace the damaged or stolen property.

At any time before the ***loss*** is paid or the property replaced, we may return any stolen property to ***you*** or to the address shown in the declarations at our expense with payment for covered damage.  We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us.  We may settle claims for ***loss*** either with the ***insured*** or the owner of the property.

**8.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the ***loss*** of the auto.

**9.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the ***insured's*** rights of recovery against others.  The ***insured*** will help us to enforce these rights.  The ***insured*** will do nothing after ***loss*** to prejudice these rights.

This means we will have the right to sue for or otherwise recover the ***loss*** from anyone else who may be held responsible.

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE**

**Protection for *You* and *Your* Passengers For Injuries Caused by Uninsured/Underinsured and Hit-and-Run Motorists.**

**This Section applies only if a premium amount is shown on the Policy Declarations for "UM & Underinsured Motorist" Coverage.**

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1.**   **"Hit-and-run motor vehicle"** is a motor vehicle causing ***bodily injury*** to an ***insured*** through physical contact with him or with an auto he is ***occupying*** at the time of the accident and whose operator or owner cannot be identified, provided the ***insured*** or someone on his behalf:

(a) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

(b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

(c) makes available for inspection, at our request, the auto occupied by the ***insured*** at the time of the accident.

**2.**   **"Insured"** means:

(a) the individual named in the declarations and his or her spouse;

(b) ***relatives*** of (a) above if residents of his household;

(c) any other person while ***occupying*** an ***owned auto***;

(d) any person who is entitled to recover damages because of ***bodily injury*** sustained by an ***insured*** under (a), (b), and (c) above.

If there is more than one ***insured***, our limits of liability will not be increased.

**3.**   **"Insured auto"** is an auto:

(a) described in the declarations and covered by the bodily injury liability coverage of this policy.

(b) temporarily substituted for an insured auto when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c)   operated by **you** or **your** spouse if a resident of the same household.

But the term **"insured auto"** does not include:

(i)   an auto used to carry passengers or goods for hire except in a car pool;

(ii)   an auto being used without the owner's permission; or

(iii)   under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of any **insured**.

**4.**   **"Occupying"** means in, upon, entering into or alighting from.

**5.**   **"State"** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

**6.**   **"Underinsured motor vehicle"** is a motor vehicle that is insured under a motor vehicle liability policy, or automobile liability insurance policy, self-insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law, but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person.

The term **"underinsured motor vehicle"** does not include:

(a)   an **insured auto**;

(b)   a motor vehicle owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c)   a motor vehicle owned by the United States of America, and other national government, a **state**, or a political sub-division of any such government or its agencies;

(d)   a land motor vehicle or **trailer** while located for use as a residence or premises and not as a vehicle; or

(e)   any equipment or vehicle designed or modified for use primarily off public roads, except while actually upon public roads;

(f)   any motor vehicle owned or operated by the named insured or any resident of **your** household.

**7.**   **"Uninsured motor vehicle"** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the **state** in which the **insured motor vehicle** is principally garaged at the time of an accident.  This term also includes a motor vehicle whose insurer is or becomes insolvent or denies coverage or an **underinsured motor vehicle**.

The term **"uninsured motor vehicle"** does not include:

(a)   an **insured auto**;

(b)   a motor vehicle owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c)   a motor vehicle owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;

(d)   a land motor vehicle or **trailer** while located for use as a residence or premises and not as a vehicle;

(e)   any equipment or vehicle designed or modified for use primarily off public roads, except while actually upon public roads; or

(f)   any motor vehicle owned or operated by the named insured or any resident of **your** household.

**LOSSES WE PAY**

Under this coverage, we will pay damages for **bodily injury** to an **insured**, caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle, underinsured motor vehicle** or a **hit-and-run motor vehicle** arising out of the ownership, maintenance or use of that motor vehicle.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or his representative and us.  The dispute will be arbitrated if an agreement cannot be reached.

**EXCLUSIONS**
**When Section IV Does Not Apply**

**1.**   This Coverage does not apply to **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

**2.**   **Bodily injury** to an **insured** while **occupying** or through being struck by an **uninsured** or **underinsured motor vehicle** owned or operated by an **insured** or a **relative** is not covered.

**3.**   This coverage will not benefit directly or indirectly any workers' compensation insurer, self insurer or disability benefits insurer or directly benefit the United States, or any **state** or political subdivision thereof.

**4.**   We do not cover the United States of America or any of its agencies as an **insured**, a third party beneficiary or otherwise.

**5.**   We do not cover any person while **occupying** a vehicle described in the declarations on which Uninsured/Underinsured Motorists Coverage is not carried.

**6.**   Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of liability for Uninsured and Underinsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

**2.** The limit of liability for Uninsured and Underinsured Motorists Coverage stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

**3.** When *bodily injury* is caused by one or more motor vehicles under this coverage, our maximum liability for providing underinsured motorists coverage shall not exceed the *insured's* Underinsured Motorists Coverage limits, less the amount paid to the *insured* by or for any person or organization that may be held legally liable for the injury.

**4.** Underinsured Motorists Coverage does not apply to any *bodily injury* until the limits of bodily injury liability policies applicable to all *insured autos* causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

**5.** When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

The amount payable under this Coverage will be reduced by all amounts:

(a) paid by or for all persons or organizations liable for the injury;
(b) paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or
(c) paid or payable under any workers' compensation law, disability benefits law or any similar law, exclusive of non-occupational disability benefits.

## OTHER INSURANCE

When an *insured occupies* a motor vehicle other than an *owned auto*, this Coverage shall not apply if the owner of that vehicle has insurance similar to that provided under this Coverage.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss covered by the Uninsured Motorists provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

## DISPUTES BETWEEN US AND AN *INSURED*

If any *insured* making claim under this policy and we do not agree that he is legally entitled to recover damages under this Coverage from the owner or operator of an *uninsured/underinsured motor vehicle* because of *bodily injury* to the *insured*, or do not agree as to the amount payable, either party will have the right to demand arbitration.

The matter(s) in dispute shall then be settled according to American Arbitration Association rules. One neutral arbitrator will conduct the arbitration.

Judgment on the arbitrator's award may be entered in a court having jurisdiction. The award or judgment confirming the award shall not be conclusive on any party in any action between:

(a) any *insured*, his insurer, his legal representative or his heirs, and
(b) the uninsured/underinsured motorist,

to recover damages arising out of the accident upon which the award is based. The parties may agree to be bound by the arbitrators award.

If any *insured* has or may have a right to benefits under any workers' compensation law (except for non-occupational disability benefits), the arbitration will be stopped until the *insured's* physical condition is stationary and ratable. If the *insured* claims a permanent disability, that claim shall, unless good cause is shown, be settled by judicial award or compromise and release before arbitration may go on.

Any demand for arbitration shall contain a statement, under penalty of perjury, stating whether:

(a) the *insured* has a workers' compensation claim;
(b) that there has been an award or settlement on the case on all issues reasonably contemplated to arise in that claim; and
(c) if not, what good cause reasons exist for the arbitration to go on immediately.

## TRUST AGREEMENT

When we make a payment under this Coverage:

**1.** We will be entitled to repayment of that amount out of any settlement or judgment any *insured* recovers

from any person or organization legally responsible for the **bodily injury** or the insurer of such person or organization.

**2.**   Any **insured** claiming benefits will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages.  He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

**3.**   At our written request, any **insured** claiming benefits, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization.  That **insured** will pay us out of the recovery for our expenses, costs and attorneys' fees.

**4.**   Any **insured** claiming benefits will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following Conditions apply only to the Uninsured Motorists Coverage:

**1.**   NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a)  the identity of the **insured**;
   (b)  the time, place and details of the accident; and
   (c)  the names and addresses of the injured, and of any witnesses.

If any **insured** or his legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

If the **insured** brings an action against the owner or operator of an **underinsured motor vehicle**, he shall give to us a copy of the complaint by personal service or certified mail.  All pleadings and depositions shall be made available for copying or copies furnished to us, at our expense, within a reasonable time.

**2.**   ASSISTANCE AND COOPERATION OF THE **INSURED**

After we receive notice of a claim, we may require any **insured** to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization.  We may require that **insured** to make that person or organization a defendant in any action against us.

**3.**   CLAIMS NOT SETTLED WITHIN ONE YEAR OF DATE OF ACCIDENT

California law provides that any claim for uninsured/underinsured benefits provided by this policy expires one year after the accident unless one of the following actions is taken within one year from the date of the accident:

   a)  suit is filed for **bodily injury** against the uninsured motorist in a court of competent jurisdiction,
   b)  agreement is reached with us as to the amount due under the policy, or
   c)  we are notified in writing, by certified mail, return receipt requested, that formal arbitration is demanded.

If one of these events does not occur within one year following the date of the accident, we will not be liable for any further uninsured/underinsured benefits or claims based upon injuries sustained in the accident.

**4.**   PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, any **insured** or other person making claim must give us written proof of claim, under oath if required.  This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require.  In the event of any **insured's** incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**5.**   PAYMENT OF LOSS

Any amount due is payable:

   (a)  to any **insured** claiming benefits or his authorized representative;
   (b)  if any **insured** claiming benefits is a minor, to his parent or guardian; or
   (c)  if any **insured** having a claim for benefits is deceased, to his surviving spouse; otherwise
   (d)  to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

**SECTION V - GENERAL CONDITIONS These Conditions Apply To All Coverages In This Policy.**

**1.** TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

**2.** PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3.** CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium.  If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file.  *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) that *you* will cooperate with us in determining if this information is correct and complete.
(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

**4.** ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse if covered under the policy prior to *your* death.  Until the expiration of the policy term, we will also  cover:

(a) the executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of his duties;
(b) any person having proper custody of and operating an *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

**5.** POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date.  Each period will begin and expire at 12:01 A.M. standard time at *your* address stated in the declarations.

**6.** CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled,  *you* may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.

**7.** CANCELLATION BY US

We may cancel this policy by mailing to  *you,* at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;
(b) 10 days in advance if the policy has been in effect less than 60 days at the time notice is mailed and is not a renewal;
(c) 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice.  The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled,  *you* may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

**8.** CANCELLATION BY US IS LIMITED

We will not cancel this policy except for any of the following reasons:

(a) *You* do not pay the initial or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.
(b) Fraud or material misrepresentation made by an *insured* in obtaining the policy, continuing the policy or in presenting a claim under the policy.
(c) A substantial increase in the hazard insured against.

**9.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following exist:

a) **You** do not pay any premium as we require to renew this policy.
b) **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.
c) **You** do not accept our offer to renew.

We will only nonrenew this policy if one of the reasons listed in Condition 8., "Cancellation By Us Is Limited", exists.

If we fail to send **you** notice of refusal to renew at the appropriate time, **your** policy will remain in effect for 30 days from the date that the proper notice is mailed.

**10.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**11.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy will terminate on the date **you** do so.

**12.** DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

**13.** DECLARATIONS

By accepting this policy, **you** agree that:

(a) the statements in **your** application and in the declarations are **your** agreements and representations;
(b) this policy is issued in reliance upon the truth of these representations; and
(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**14.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) at the time application is made; or
(b) at any time during the policy period; or
(c) in connection with the presentation or settlement of a claim.

**15.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**16.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of California are amended to conform to those statutes.

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**

1.   **Special Endorsement - United States Government Employees**

**A.**   Under the Property Damage Coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1.   motor vehicles owned or leased by the United States Government or any of its agencies, or
2.   rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government.  Subject to the limits described in paragraph B below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

**B.**   The following limits apply to this Coverage:

1.   A $100 deductible applies to each occurrence.
2.   For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

a.   The ***actual cash value*** of the property at the time of the occurrence; or
b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
c.   Two months basic pay of the ***insured***; or
d.   The limit of Property Damage liability coverage stated in the declarations.

3.   For vehicles described in A.2.  above, our liability shall not exceed the lesser of the following:

a.   The ***actual cash value*** of the property at the time of the occurrence; or
b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
c.   The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W.C.E. Robinson
Secretary

O. M. Nicely
President

HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799



Policy Number:

# AUTOMOBILE POLICY AMENDMENT

## COLLISION DEDUCTIBLE WAIVER

Under Section III Physical Damage Coverages:

We agree with *you* that under Collision Coverage, item **1** is amended by adding the following sentence:

No deductible applies to *Collision* loss caused by actual direct physical contact with an *uninsured motor vehicle* as defined in your policy provided:

a.   the owner or operator of the *uninsured motor vehicle* is identified; or

THE COMPANY affirms this amendment.

b.   the *uninsured motor vehicle* is identified by license number; and

c.   the *insured* or someone on his behalf reports the accident to us within ten business days; and

d.   the *insured* is legally entitled to recover from the uninsured motorist.

J. C. Stewart
Secretary

O. M. Nicely
President

A-428 (8-97)

ENDORSEMENT

**LOSS PAYABLE CLAUSE**

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within **91** days after the loss, the Lienholder must do so within the following **60** days. The policy provisions on time of payment, appraisal and the right to sue us applies both to the Lienholder and the *insured*. We may settle a claim at our option by separate payment to the insured and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least **10** days before we cancel his interest in the policy.

This endorsement forms a part of your policy. It is effective at **12:01 A.M.** standard time at your address on the effective date shown above.

RETAIN THIS COPY FOR YOUR RECORDS

_____

Countersigned by Authorized Representative

UE-316-C (4-92)



# Automobile Policy Amendment
## California

Policy Number:

*Your* policy is amended as follows:

**SECTION I - LIABILITY COVERAGES**

**DEFINITIONS**

The following definitions are revised as follows:

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 10,000 pounds or less, not used for commercial purposes other than farming.

5. ***Non-owned auto*** means an automobile or ***trailer*** not owned by or furnished for the regular use of either ***you*** or a ***relative***, other than a ***temporary substitute auto***. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

   A ***non-owned auto*** does not include:

   a) any automobile rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. An automobile is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the automobile to be used for ***ride-sharing*** with a ***transportation network company***; or

   b) any automobile rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or

   c) any automobile rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** by a ***transportation network company***; or

   d) any automobile rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the automobile as a vehicle for hire.

9. ***Temporary substitute auto*** means an automobile or ***trailer***, not owned by ***you***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

   A ***temporary substitute auto*** does not include:

   a) any automobile rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. An automobile is considered to have been rented or leased for the purpose of providing ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the automobile to be used for ***ride-sharing*** with a ***transportation network company***; or

   b) any automobile rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or

   c) any automobile rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** by a ***transportation network company***; or

   d) any automobile rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the automobile as a vehicle for hire.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 10,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

13. ***You*** and ***your*** means the named insured shown in the declarations or his or her spouse or registered domestic partner if a resident of the same household.

The following definitions are added:

14. ***Personal vehicle sharing program*** means a business, organization, network or group facilitating the sharing of private passenger vehicles for use by individuals or businesses.

15. ***Ride-sharing*** means the use of any vehicle by any driver in connection with a ***transportation network company*** from the time a driver logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time a driver logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. ***Transportation network company*** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item **3** is revised as follows:

3.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:
    (a) Before the judgment, where owed by law, and until we pay, offer to pay or deposit in court the amount due under this coverage;
    (b) After the judgment, and until we pay, offer to pay or deposit in court, the amount due under this coverage.

After Item **5** the following sentence is added:

6.  We will upon request by an *insured*, provide reimbursement for the following items:

Items **6**, **7**, and **8** are renumbered and revised as follows:

    (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto.*
    (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
    (c) All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

The first two paragraphs are revised as follows:

We will not pay damages if any one of the following exclusions 1 through 19 applies.

We will neither pay damages nor defend any suit for damages if one or more of exclusions **1** through **6**, **10**, or **14** through **22** applies.

The following exclusion is revised:

2.  Section I does not apply to any vehicle:
    (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
    (b) while being used for *ride-sharing*.
    However, a vehicle used in an ordinary car pool is covered.
    An ordinary car pool is one where:
    (i) An *insured* receives no payment for using a vehicle for a car pool ride; or
    (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

The following exclusions are added:

14. *Bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
15. *Bodily injury* or property damage that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism is not covered.
16. We do not cover any liability assumed under any contract or agreement.
17. We do not cover *bodily injury* or property damage that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.
18. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.
19. There is no coverage for *bodily injury* or property damage caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
20. There is no coverage for *bodily injury* or property damage arising or resulting from the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
21. Section I does not apply to any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.
22. Section I does not apply to any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## SECTION II - AUTO MEDICAL PAYMENTS

## EXCLUSIONS

### When Section II Does Not Apply

The following exclusion is revised:

1.  Section II does not apply to *bodily injury* sustained by any occupant of an *owned auto* or *non-owned auto*:
    (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b)  while being used for *ride-sharing*.

However, a vehicle used in an ordinary car pool is covered.

An ordinary car pool is one where:

    (i)  An *insured* receives no payment for using a vehicle for a car pool ride; or

    (ii)  An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

The following exclusions are added:

8.  There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire radiation or contamination.

9.  There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.

10.  There is no coverage for *bodily injury* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

11.  There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

12.  There is no coverage for *bodily injury* caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

13.  There is no coverage for *bodily injury* caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

14.  There is no coverage for *bodily injury* sustained by any *insured* while operating, *occupying,* or when struck as a pedestrian by any vehicle leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

15.  There is no coverage for *bodily injury* sustained by any *insured* while operating, *occupying,* or when struck as a pedestrian by any vehicle regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

16.  There is no coverage for *bodily injury* to any *insured* arising out of:

    a)  any automobile rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. An automobile is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the automobile to be used for *ride-sharing* with a *transportation network company*; or

    b)  any automobile rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

    c)  any automobile rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* by a *transportation network company*; or

    d)  any automobile rented or leased by *you* or a *relative* which displays an exterior marking that identifies the automobile as a vehicle for hire.

This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**CONDITIONS**

Condition **5** SUBROGATION is replaced with the following:

5.  REIMBURSEMENT AGREEMENT AND OFFSET PROVISION. OUR RIGHT TO RECOVER PAYMENT.

When any *insured* has been paid by us under this policy provision and also recovers from another person, entity, or organization, we shall be entitled to reimbursement of the amount of our payment, as provided in this Section. We will seek reimbursement regardless of whether the *insured* (or his or her estate, parent or legal guardian) was paid for all damages arising from the loss or whether or not the *insured* was made whole.

Our right to reimbursement applies to any payments received by the *insured* and to payments to be received by the *insured* that arise from but are not limited to any one or more of the following:

    (a)  Any award, judgment or settlement that may result from the exercise of any rights of recovery of the *insured* against any person, entity, or organization that the *insured* claims is responsible for *bodily injury* to the *insured* for which payment under Auto Medical Payments coverage has been made.

    (b)  Any payment received, or to be received, by or on behalf of an *insured* under the provisions of any:

        (i)  Automobile, premises or other insurance coverage affording benefits for medical coverage;

        (ii)  Individual blanket or group accident, disability or hospitalization insurance;

          Policy Number:

(iii) Medical, surgical, hospital or funeral service benefits or reimbursement plan; or

(iv) Workers' compensation or disability benefits law or any similar law.

Prior to payment being made under this coverage, each party, including the representative and/or insurer of that party, whose act allegedly caused the **bodily injury** may be notified of this reimbursement agreement. If an award or judgment against, or settlement with, any party that the **insured** claimed was responsible for the **bodily injury** has been concluded, then the amounts we owe under this coverage shall be reduced by the amount of that award, judgment or settlement.

## SECTION III - PHYSICAL DAMAGE COVERAGES

## DEFINITIONS

The definitions of **personal vehicle sharing program, ride-sharing** and **transportation network company** under Section I apply to Section III also.

Definition **7. Non-owned auto** is replaced with the following:

7.   **Non-owned auto** means a **private passenger auto**, **farm auto** or **utility auto** or **trailer** not owned by or furnished for the regular use of either **you** or **your relative**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

A **non-owned auto** does not include:

a)   any automobile rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. An automobile is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the automobile to be used for **ride-sharing** with a **transportation network company**; or

b)   any automobile rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or

c)   any automobile rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or

d)   any automobile rented or leased by **you** or a **relative** which displays an exterior marking that identifies the automobile as a vehicle for hire.

Definition **9 Trailer** is revised as follows:

9.   **Trailer** means a trailer of the flatbed variety designed for use with a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

The following definitions are added:

10.  **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

(a) Are permanently installed or attached; or

(b) Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

11.  **Child Passenger Restraint System** means a child passenger restraint system that meets Federal Motor Vehicle Safety Standards as required under the Vehicle Code of California Division 12, Chapter 5, Article 3.3 §27360.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

The following paragraph is added:

4.   We will pay for the replacement of any **child passenger restraint system** that is damaged in a covered **loss**.

## EXCLUSIONS

## When The Physical Damage Coverages Do Not Apply

The following exclusion is revised:

1.   There is no coverage for **loss** to an auto:

(a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b) while being used for **ride-sharing**.

However, a vehicle used in an ordinary car pool is covered.

An ordinary car pool is one where:

(i)  An **insured** receives no payment for using a vehicle for a car pool ride; or

(ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

Policy Number:

The following exclusions are added:

**11.** There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

**12.** There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents released as a result of an act of terrorism.

**13.** We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

**14.** There is no coverage for any liability assumed under any contract or agreement.

**15.** There is no coverage for *loss* resulting from:

    (a)  The acquisition of a stolen vehicle;

    (b)  Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;

    (c)  Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or

    (d)  The sale of an *owned auto*.

**16.** There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

**17.** We do not cover *loss* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

**18.** There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**19.** There is no coverage for any *loss* caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.

**20.** There is no coverage for any *loss* caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

**21.** Section III does not apply to any vehicle, or series of vehicles, leased by *you* or a *relative* for less than six months unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

**22.** Section III does not apply to any vehicle, or series of vehicles, regularly rented by *you* or a *relative* on a daily, weekly or monthly basis unless the vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMIT OF LIABILITY

Paragraph **2** is replaced with the following:

**2.**  will not exceed the prevailing competitive price to repair or replace the property at the time of *loss,* or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price.

Paragraph **5** is replaced with the following:

**5.**  For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

## CONDITIONS

**4.**  ACTION AGAINST US

The following paragraph is added:

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

Condition **10** Assignment is added:

**10.**  ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

Policy Number:

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGE**

**EXCLUSIONS**

**When Section IV Does Not Apply**

Exclusion **2** is replaced as follows:

2.  **Bodily injury** to an **insured** while **occupying** or through being struck by an **uninsured motor vehicle** or **underinsured motor vehicle** owned or operated by an **insured** or a **relative** is not covered, except when the injured **insured's** vehicle is being operated, or caused to be operated, by a person without the injured **insured's** consent in connection with criminal activity that has been documented in a police report and that the injured **insured** is not a party to.

The following exclusions are added:

7.  **Bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

8.  **Bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents released as an act of terrorism is not covered.

9.  This coverage does not apply to any liability assumed under any contract or agreement.

10. There is no coverage for **bodily injury** or property damage sustained by an **insured** while operating or **occupying** a motor vehicle owned by or available for the regular use of **you** or any **relative** and which is not insured under the liability coverage of this policy.

11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.

12. There is no coverage for **bodily injury** or property damage caused by an **insured's** participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.

13. There is no coverage for **bodily injury** or property damage caused by an **insured's** operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the motor vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

14. There is no coverage for **bodily injury** or property damage under this Section for any person or organization while an **owned auto** or **non-owned auto**:

    (a) is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) is being used for **ride-sharing**.

    However, a vehicle used in an ordinary car pool is covered.

    An ordinary car pool is one where:

    (i) An **insured** receives no payment for using a vehicle for a car pool ride; or

    (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

15. There is no coverage for **bodily injury** sustained by any **insured** while operating or **occupying** any vehicle leased by **you** or a **relative** for less than six months and which is not insured under the liability coverage of this policy.

16. There is no coverage for **bodily injury** sustained by any **insured** while operating or **occupying** any vehicle regularly rented by **you** or a **relative** on a daily, weekly or monthly basis and which is not insured under the liability coverage of this policy.

17. There is no coverage for **bodily injury** to any **insured** arising out of:

    a) any automobile rented or leased by **you** or a **relative** for the purpose of providing **ride-sharing** services. An automobile is considered to have been rented or leased for the purpose of providing **ride-sharing** services, whether actually used for **ride-sharing** or not, if the rental or lease agreement specifically allows the automobile to be used for **ride-sharing** with a **transportation network company**; or

    b) any automobile rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or

    c) any automobile rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or

    d) any automobile rented or leased by **you** or a **relative** which displays an exterior marking that identifies the automobile as a vehicle for hire.

    This exclusion does not apply if the rented or leased vehicle is described, and a premium charge is shown for the vehicle for this coverage, in the declarations of this policy.

## LIMITS OF LIABILITY

Paragraph **4** is replaced as follows:

4.   Underinsured Motorists Coverage does not apply to any *bodily injury* until the limits of bodily injury liability policies applicable to all insured autos causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to us.

## CONDITIONS

Condition **3** is replaced as follows:

3.   CLAIMS NOT SETTLED WITHIN TWO YEARS OF DATE OF ACCIDENT
California law provides that any *bodily injury* claim for uninsured/underinsured benefits provided by this policy expires two years after the accident unless one of the following actions is taken within two years from the date of the accident:
(a)  Suit is filed for *bodily injury* against the uninsured motorist in a court of competent jurisdiction,
(b)  Agreement is reached with us as to the amount due under the policy, or
(c)  We are notified in writing, by certified mail, return receipt requested, that formal arbitration is demanded.
If one of these events does not occur within two years following the date of the accident, we will not be liable for any further uninsured/underinsured benefits or claims based upon injuries sustained in the accident.

## SECTION V - GENERAL CONDITIONS

The following conditions are revised as follows:

4.   ASSIGNMENT
*Your* rights and duties under this policy may not be assigned without our written consent. If *you* die, this policy will cover *your* surviving spouse or registered domestic partner if covered under the policy prior to *your* death. Until the expiration of the policy term, we will also cover:
(a)  The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties; and
(b)  Any person having proper custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

5.   POLICY PERIOD
Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

7.   CANCELLATION BY US, item (b) is deleted.

8.   CANCELLATION BY US IS LIMITED
We will not cancel except for any of the following reasons:
(a)  Nonpayment of premium;
(b)  Fraud or material misrepresentation affecting the policy or *insured*;
(c)  A substantial increase in the hazard insured against.

The following conditions are added:

17.  CHOICE OF LAW
The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of California.

18.  UNDERWRITING CRITERIA
Coverage is not provided for any person for any vehicle which does not meet our underwriting criteria for the types and uses of vehicles insurable under our **FAMILY AUTOMOBILE INSURANCE POLICY** in the state of California.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President



AUTOMOBILE POLICY AMENDMENT

RENTAL REIMBURSEMENT AMENDMENT

Policy Number:

We agree with you that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the **insured** toward costs the **insured** incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the **owned auto** has been:

1. Returned to **you**;
2. Repaired;
3. Replaced; or
4. If the **owned auto** is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President



# Automobile Policy Amendment
## Emergency Road Service Coverage

Policy Number:

**Your** policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an **insured** incurs for the **owned** or **non-owned auto**, for:

1.  mechanical labor up to one hour at the place of breakdown;
2.  lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3.  if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4.  towing it out if it is stuck on or immediately next to a public highway;
5.  delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

**You** may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the **insured** calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor.  The **insured** need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the **insured's** expense.

**HIRED SERVICES**

The second method occurs when the **insured** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President



**GEICO.**
geico.com

**Tel:** 1-800-841-3000

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO GENERAL INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

**Policy Number: 4374-28-19-49**
**Coverage Period:**
10-26-18 through 04-26-19
12:01 a.m. standard time at the address of the named insured.

Date Issued: September 22, 2018

CINDY B VENTRICEPEARSON
30473 MULHOLLAND HWY SPC 135
AGOURA HILLS CA  91301-6165

Email Address: cventrice@yahoo.com

| **Named Insured** | **Additional Driver** |
|---|---|
| Cindy B Ventricepearson | Hunter Pearson |

| **Vehicles** | | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|---|
| 1 2010  MINI | Cooper | WMWML3C54ATX36762 | Agoura Hills CA 91301 | |
| 2 2013  MINI | Cooper | WMWZF3C50DT491590 | Agoura Hills CA 91301 | |

| **Coverages\*** | **Limits and/or Deductibles** | **Vehicle 1** | **Vehicle 2** |
|---|---|---|---|
| Bodily Injury Liability | | | |
|   Each Person/Each Occurrence | $300,000/$300,000 | $308.30 | $112.70 |
|   State Minimum $15,000/$30,0000 | | | |
| Property Damage Liability | $100,000 | $208.50 | $78.60 |
|   State Minimum $5,000 | | | |
| Uninsured & Underinsured Motorists | | | |
|   Each Person/Each Occurrence | $100,000/$300,000 | $147.10 | $60.20 |
| Comprehensive | $500 Ded | $57.20 | $27.80 |
| Collision | $500 Ded/Waiver | $440.20 | $182.80 |
| Emergency Road Service | Full | $16.40 | $10.50 |
| Rental Reimbursement | $50 Per Day | $40.70 | $32.60 |
| | $1,500 Max | - | - |

| **Six Month Premium Per Vehicle** | | **$1,218.40** | **$505.20** |
|---|---|---|---|
| **Total Six Month Premium** | | | **$1,723.60** |

\*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

*2000014374281949040320118866*

**Discounts**

Multi-Car (All Vehicles)
Good Student (Veh 1)
Subclass Factor (Veh 2)
Anti-Theft Device (All Vehicles)
Multi Line - Umbrella (All Vehicles)
California Good Driver (Veh 2)
California Persistency (All Vehicles)

**Group Insurance Plan:**
**Standard Group Insurance Plan**

**Contract Type:** A30CA
**Contract Amendments:** ALL VEHICLES - A30CA A54CA

**Unit Endorsements:**   A115 (VEH 1,2); A428 (VEH 1,2); A431 (VEH 1,2); UE316C (VEH 2)
**Class:** 0 -N -02SM  T (VEH 1); A -N -39SF  P (VEH 2)

---

### Important Policy Information

-The estimated annual mileage figures applicable to the vehicles on your policy for the current and upcoming policy periods are:

| Vehicle | Current Mileage | Upcoming Mileage |
|---|---|---|
| 2010 MINI COOPER | 12,000 | 12,000 |
| 2013 MINI COOPER | 8,000 | 8,000 |

-Please verify that the coverages you requested are accurately reflected on your Declarations Page. Visit geico.com to review additional coverages and/or limits available to you.

-No coverage is provided in Mexico.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-In California, you have the right to designate one person to receive notices from GEICO if your policy is about to cancel or expire for non-payment. Your designee will not have any rights or benefits under your policy other than the right to receive the notice or make a payment. You can change or remove the designee at any time. If you would like to add, change or remove a designee from your policy, simply log into your account at geico.com or call us at 1-800-841-3000.

-In accordance with Section 1872.87 of the California Insurance Code, in addition to your premium, a $0.88 charge per vehicle is assessed to fund auto insurance fraud reduction initiatives. This charge is applied once per policy term per vehicle.

# EXHIBIT C



**GEICO.**
geico.com

Tel: 1-800-841-3000

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO GENERAL INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

## Policy Number: 4461-21-11-55
## Coverage Period:
10-25-16 through 04-25-17
Your coverage begins and ends at 12:01am local time at the
address of the named insured.

Date Issued: October 21, 2016

MARTISHAANN PUANANI MUNOZ
852 AVENUE D
SAN FRANCISCO CA  94130-2002

Email Address: munozmartisha@yahoo.com

| **Named Insured** | **Additional Drivers** |
|---|---|
| Martishaann P Munoz | None |

| **Vehicle** | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|
| 1 2016  Honda    Civic LX | 19XFC2F55GE245085 | San Francisco CA 94130 | American Honda Fin Corp |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** |
|---|---|---|
| Bodily Injury Liability | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $123.10 |
| Property Damage Liability | $50,000 | $142.00 |
| Uninsured & Underinsured Motorists | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $38.50 |
| Comprehensive | $1,000 Ded | $61.10 |
| Collision | $1000 Ded/Waiver | $368.30 |
| Emergency Road Service | Full | $7.00 |
| Rental Reimbursement | $35 Per Day | $20.20 |
| | $1050 Max | - |
| Mechanical Breakdown | $250 Ded | $48.40 |
| **Total Six Month Premium** | | **$808.60** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**Discounts**

New Car (All Vehicles)
Subclass Factor (All Vehicles)

*20050C-4461211155040330010621*

**Discounts continued**
    Anti-Theft Device (All Vehicles)
    California Good Driver (All Vehicles)

---

**Group Insurance Plan:**
    **Standard Group Insurance Plan**

---

**Contract Type:** A30CA
**Contract Amendments:** ALL VEHICLES - A30CA A54CA

**Unit Endorsements:**    UE30 (VEH 1); A115 (VEH 1); A180 (VEH 1); A428 (VEH 1);
        A431 (VEH 1); UE316C (VEH 1)

**Class:**  A -L -11SF  N (VEH 1)

---

### Important Policy Information

-Please verify that the coverages you requested are accurately reflected on your Declarations Page. Visit geico.com to review additional coverages and/or limits available to you.

-No coverage is provided in Mexico.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-In California, you have the right to designate one person to receive notices from GEICO if your policy is about to cancel or expire for non-payment. Your designee will not have any rights or benefits under your policy other than the right to receive the notice or make a payment. You can change or remove the designee at any time. If you would like to add, change or remove a designee from your policy, simply log into your account at geico.com or call us at 1-800-841-3000.

-In accordance with Section 1872.87 of the California Insurance Code, in addition to your premium, a $0.88 charge per vehicle is assessed to fund auto insurance fraud reduction initiatives. This charge is applied once per policy term per vehicle.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

---

# EXHIBIT D

# Looking for a no-hassle pricing on New or Used Car?

The GEICO Car Buying Service is here to help.



Shop with confidence and save, discovering great deals.

# We'll get you back on the road fast!

The GEICO Car Buying Service provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience.
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most



*Visit us today at www.geico.com/replacemycar*
*or call 877-638-4126*

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.

 **MARKET VALUATION REPORT**

*Prepared for GEICO*

 # REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Munoz, Martishaann |
| | 852 Avenue D |
| | San Francisco, CA 94130 |
| Loss Vehicle | 2016 Honda Civic Sedan LX w/ |
| | Continuously Variable Transmission |
| Loss Incident Date | 02/24/2017 |
| Claim Reported | 03/01/2017 |

 ## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 83886888 |
| Claim Reference | 0577347880101017-01 |
| Adjuster | Baptista, Joe |
| Odometer | 12,104 |
| Last Updated | 03/06/2017 05:32 PM |

## VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 17,369.00** |
| **Adjusted Vehicle Value** | **$ 17,369.00** |
| DMV Fee | + $ 159.00 |
| **Value before Deductible** | **$ 17,528.00** |
| Deductible | - $ 1,000.00 |
| **Total** | **$ 16,528.00** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO.

Loss vehicle has 15% fewer than average mileage of 14,200.

**BASE VEHICLE VALUE**

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology...................................2
Vehicle Information......................................3
Vehicle Condition.......................................6
Comparable Vehicles............................. 8
Valuation Notes....................................... 12
Supplemental Information.....................13

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE** MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# VALUATION METHODOLOGY

**How was the valuation determined?**



### CLAIM INSPECTION

GEICO has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles advertised for sale by dealerships or private parties. CCC also obtains vehicle sales prices from a database of California Department of Motor Vehicles vehicle registration sold transactions. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the straight average of the adjusted values of the comparable vehicles.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** | MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# 🚘 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | SAN FRANCISCO, CA 94130 |
| VIN | 19XFC2F55GE245085 |
| Year | 2016 |
| Make | Honda |
| Model | Civic Sedan |
| Trim | LX |
| Body Style | w/Continuously Variable Transmission |
| Body Type | Sedan |
| Engine - | |
| Cylinders | 4 |
| Displacement | 2.0L |
| Fuel Type | Gasoline |
| Carburation | Sequential MPI |
| Transmission | Automatic Transmission |
| Curb Weight | 2742 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| **Odometer** | 12,104 | + 228 |
| **Options** | | |
| Heated Mirrors | Reported* | + 49 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |
| Insurance Services Organization/ National Insurance Crime Bureau | 1 Record Found |
| National Highway Traffic Safety Administration | 3 Recalls |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 CCC ONE.  MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# 🚌 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Odometer** | 12,104 | |
| **Transmission** | Automatic Transmission | ✓ |
| **Power** | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Trunk/Gate Release | ✓ |
| **Decor/Convenience** | Air Conditioning | ✓ |
| | Climate Control | ✓ |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Intermittent Wipers | ✓ |
| | Console/Storage | ✓ |
| | Keyless Entry | ✓ |
| | Telescopic Wheel | ✓ |
| | Message Center | ✓ |
| **Seating** | Cloth Seats | ✓ |
| | Bucket Seats | ✓ |
| | Reclining/Lounge Seats | ✓ |
| **Radio** | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |
| | Search/Seek | ✓ |
| | Steering Wheel Touch Controls | ✓ |
| | Auxiliary Audio Connection | ✓ |
| **Wheels** | Wheel Covers | ✓ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✓ |
| | Passenger Air Bag | ✓ |
| | Anti-lock Brakes (4) | ✓ |
| | 4-wheel Disc Brakes | ✓ |

To the left is the equipment of the loss vehicle that GEICO provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

📋 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# 🚗 VEHICLE INFORMATION

**VEHICLE EQUIPMENT**

| | | |
|---|---|---|
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| | Backup Camera W/ Parking Sensors | ✔ |
| | Hands Free | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | 🗒 |
| | Tinted Glass | ✔ |
| | Clearcoat Paint | ✔ |
| **Other - Cars** | California Emissions | 🗒 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE.**  MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# 🚐 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Typical Vehicle Description | Value Impact |
|---|---|---|---|
| Mechanical | AVERAGE | **Notes:** minor seepage<br>**Typical Vehicle Desc:**<br>**Transmission:** Fluid slightly discolored. A few areas to no seepage.<br>**Engine:** Minor to no seepage. Belts and hoses firm, and may show minimal wear. Minimal to zero dirt and grease in engine compartment. | $ 0 |
| Tires | AVERAGE | **Notes:** all 4 measure 7/32<br>**Typical Vehicle Desc:**<br>**Rear Tires:** 41% to 90% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11)<br>**Front Tires:** 41% to 90% of new. Example: Typical new car tires are 11/32, loss measures at 5/32 = 46% (5/11) | $ 0 |
| Paint | AVERAGE | **Notes:** none noted<br>**Typical Vehicle Desc:**<br>Minimal surface chipping and/or a few small scratches. No peeling and/or flaking. Minor to no swirl marks. Light to no fading. | $ 0 |
| Body | AVERAGE | **Notes:** rt qtr ding<br>**Typical Vehicle Desc:**<br>**Sheet Metal:** Few to no dings. No dents. All panels intact and properly aligned.<br>**Trim:** No broken and/or missing components. No dents. Few to no dings. | $ 0 |
| Glass | AVERAGE | **Notes:** pitting present, no cracks<br>**Typical Vehicle Desc:**<br>Light to no surface scratches. Light to no pitting. | $ 0 |
| Seats | AVERAGE | **Notes:** light soiling<br>**Typical Vehicle Desc:**<br>Clean to very clean with no significant tears, holes or burn marks. Light to no wear. No bare spots. | $ 0 |

GEICO uses condition inspection guidelines to rate the condition of key components of the loss vehicle on a three-point scale. A rating of average condition results in a valuation of that component that is consistent with typical vehicles for that year, make and model of vehicle. If a component is rated in exceptional condition, then a positive monetary adjustment is made to reflect the impact of that condition level on the value of the loss vehicle. Similarly, if a component is rated in below average condition, then a negative monetary adjustment is made to reflect the impact of that condition level on the value of the loss vehicle. Inspection Notes, if any, reflect additional observations from the appraiser regarding the loss vehicle's condition. Monetary adjustments are based upon market research consisting of data gathered from dealerships in California.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** | MARKET VALUATION REPORT

Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Typical Vehicle Description | Value Impact |
|---|---|---|---|
| Carpets | AVERAGE | **Notes:** light soiling<br>**Typical Vehicle Desc:**<br>Clean to very clean with no significant tears, holes or burn marks. Light to no wear. No bare spots. | $ 0 |
| Dashboard | AVERAGE | **Notes:** unable to determine with debris<br>**Typical Vehicle Desc:**<br>A few small and/or insignificant scratches or gouges. Minimal to no damage to firmly intact and functional components. Light wear. | $ 0 |
| Headliner | AVERAGE | **Notes:** light soiling<br>**Typical Vehicle Desc:**<br>Clean to very clean with no significant holes or burn marks. Light to no significant scuffing. | $ 0 |
| **Total Condition Adjustments** | | | **$ 0** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 12,104 | 9,974 | 3,944 | 9,352 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ | ✔ |
| Cloth Seats | ✔ | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✔ | ✔ | ✔ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✘ | ✔ | ✔ | ✘ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ | ✔ |
| Styled Steel Wheels | ✘ | ✘ | ✔ | ✔ |
| Wheel Covers | ✔ | ✔ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Backup Camera W/ Parking Sensors | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |

**Comp 1**  Updated Date: 01/25/2017
**2016 Honda Civic Sedan Lx W/ continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi**
**VIN** 2HGFC2F52GH522927
**Dealership** Honda Of Oakland
**Telephone** (510) 420-9200
**Source** Verified Sold DMV
**Stock #** 7RCX993
**Distance from San Francisco, CA**
7 Miles - Oakland, CA

**Comp 2**  Updated Date: 12/10/2016
**2016 Honda Civic Sedan Lx W/ continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi**
**VIN** 2HGFC2F5XGH511478
**Dealership** Honda Of El Cerrito
**Telephone** (510) 412-6100
**Source** Verified Sold DMV
**Stock #** 7PIT946
**Distance from San Francisco, CA**
7 Miles - El Cerrito, CA

**Comp 3**  Updated Date: 01/15/2017
**2016 Honda Civic Sedan Lx W/ continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi**
**VIN** 2HGFC2F56GH506956
**Dealership** Honda Of Serramonte
**Telephone** (650) 758-4800
**Source** Verified Sold DMV
**Stock #** 7PZX135
**Distance from San Francisco, CA**
9 Miles - Daly City, CA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance**  is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE**  MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✗ | ✗ | ✗ |
| Tinted Glass | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✓ | ✓ | ✓ |
| California Emissions | ✓ | ✗ | ✗ | ✗ |
| **Adjustments:** | | | | |
| Options | | - $ 101 | - $ 101 | + $ 49 |
| Mileage | | - $ 213 | - $ 726 | - $ 272 |
| **Adjusted Comparable Value** | | **$ 17,186** | **$ 18,273** | **$ 16,677** |

| Options | Loss Vehicle | Comp 4 | Comp 5 |
|---|---|---|---|
| Odometer | 12,104 | 10,354 | 32,302 |
| Automatic Transmission | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ |
| Cloth Seats | ✓ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✓ | ✓ |
| AM Radio | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ |

**Comp 4**    Updated Date: 01/01/2017
**2016 Honda Civic Sedan Lx W/ continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi**
**VIN** 2HGFC2F51GH528394
**Dealership** Avery Greene Motors
**Telephone** (800) 707-4733
**Source** Verified Sold DMV
**Stock #** 7RVU551
**Distance from San Francisco, CA**
20 Miles - Vallejo, CA

**Comp 5**    Updated Date: 01/06/2017
**2016 Honda Civic Sedan Lx W/ continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi**
**VIN** 2HGFC2F52GH501186
**Dealership** Concord Honda
**Telephone** (925) 825-8000
**Source** Verified Sold DMV
**Stock #** 7RIJ433
**Distance from San Francisco, CA**
21 Miles - Concord, CA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 |
|---|---|---|---|
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ |
| Auxiliary Audio Connection | ✔ | ✔ | ✔ |
| Styled Steel Wheels | ✘ | ✘ | ✔ |
| Wheel Covers | ✔ | ✔ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ |
| Backup Camera W/ Parking Sensors | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✘ | ✘ |
| Tinted Glass | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✔ | ✔ |
| California Emissions | ✔ | ✘ | ✘ |

**Adjustments:**

| | Comp 4 | Comp 5 |
|---|---|---|
| Options | + $ 49 | + $ 49 |
| Mileage | - $ 176 | + $ 1,786 |

| **Adjusted Comparable Value** | **$ 17,973** | **$ 16,735** |
|---|---|---|

advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT** | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# COMPARABLE VEHICLES

 **COMPARABLE VEHICLE SUMMARY**

| | Source | Comparable Vehicle | Price | Adjusted Comp Value |
|---|---|---|---|---|
| 1 | Verified Sold DMV | **2016 Honda Civic Sedan Lx W/continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi** | $ 17,500 (Sold) | $ 17,186 |
| 2 | Verified Sold DMV | **2016 Honda Civic Sedan Lx W/continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi** | $ 19,100 (Sold) | $ 18,273 |
| 3 | Verified Sold DMV | **2016 Honda Civic Sedan Lx W/continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi** | $ 16,900 (Sold) | $ 16,677 |
| 4 | Verified Sold DMV | **2016 Honda Civic Sedan Lx W/continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi** | $ 18,100 (Sold) | $ 17,973 |
| 5 | Verified Sold DMV | **2016 Honda Civic Sedan Lx W/continuously Variable Transmission 4 2.0l Gasoline Sequential Mpi** | $ 14,900 (Sold) | $ 16,735 |
| **Base Vehicle Value** | | | **$ 17,369.00** | |

The following comparable vehicle(s) were used to determine this Base Vehicle Value by computing the arithmetic average of the adjusted values of the comparable vehicles. Details on these comparable vehicles are in the Comparable Vehicles section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# VALUATION NOTES

03/06/2017 17:32 - POADJ CHANGE REQUESTED BY: BAPTISTA,JOE

03/06/2017 17:32 - Condition Ratings changed after Valuation

03/06/2017 17:32 - Sales Tax data modified after Valuation

03/06/2017 17:32 - Sales Tax Rate was: 8.5000. is: 0

03/06/2017 17:32 - Pre/Post Tax data modified after Valuation

03/01/2017 12:58 - POADJ CHANGE REQUESTED BY: BAPTISTA,JOE

03/01/2017 12:58 - Options added :[Heated Mirrors,California Emissions]

03/01/2017 12:58 - Post Valuation Adjustment entered for:

03/01/2017 12:58 - Condition Comments changed after Valuation

03/01/2017 12:58 - Condition Ratings changed after Valuation

03/01/2017 12:58 - AppraiserLastName changed, Old : BAPTISTA with New :

03/01/2017 12:58 - AppraiserFirstName changed, Old : JOEL with New :

03/01/2017 12:58 - User has changed one or more of the below mentioned items:
Appraiser, Insured, Owner, Loss Type, Coverage, Lease, Third Party

This Market Valuation Report has been prepared exclusively for use by GEICO, and no
other person or entity is entitled to or should rely upon this Market Valuation Report and/or
any of its contents. CCC is one source of vehicle valuations, and there are other valuation
sources available.

Regulations concerning vehicle value
include California Code of Regulations
10 CA ADC 2695.

 **MARKET VALUATION REPORT**

# SUPPLEMENTAL INFORMATION

## CARRIER INFORMATION

**Prepared for:**     GEICO

**Web:**           Get back on the road fast!

GEICO offers an easy-to-use service designed to help you save time and money.

Simply visit www.geico.com/replaceyourcar today or call

(877)-638-4119 to get started!!

 ## VEHICLE HISTORY INFORMATION

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

**ISO Vehicle History:**

| | |
|---|---|
| **Number of times reported to ISO:** | 1 |
| **ISO's file number:** | H0253449300 |
| Loss date: | 02/24/2017 |
| Phone: | 8585138585 |
| Claim ref: | 0577347880101017 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE**  MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | ✓ No Abandoned Record Found |
| Damaged | ✓ No Damaged Record Found |
| Fire Damage | ✓ No Fire Damage Record Found |
| Grey Market | ✓ No Grey Market Record Found |
| Hail Damage | ✓ No Hail Damage Record Found |
| Insurance Loss | ✓ No Insurance Loss Record Found |
| Junk | ✓ No Junk Record Found |
| Rebuilt | ✓ No Rebuilt Record Found |
| Salvage | ✓ No Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | ✓ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ No Frame Damage Record Found |
| Major Damage Incident | ✓ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ No Odometer Problem Record Found |
| Recycled | ✓ No Recycled Record Found |
| Water Damage | ✓ No Water Damage Record Found |
| Salvage Auction | ✓ No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | ✓ No Accident Record Found |
| Corrected Title | ✓ No Corrected Title Record Found |
| Driver Education | ✓ No Driver Education Record Found |
| Fire Damage Incident | ✓ No Fire Damage Incident Record Found |
| Lease | ✓ No Lease Record Found |
| Lien | ✓ No Lien Record Found |
| Livery Use | ✓ No Livery Use Record Found |
| Government Use | ✓ No Government Use Record Found |
| Police Use | ✓ No Police Use Record Found |
| Fleet | ✓ No Fleet Record Found |
| Rental | ✓ No Rental Record Found |
| Fleet and/or Rental | ✓ No Fleet and/or Rental Record Found |
| Repossession | ✓ No Repossessed Record Found |
| Taxi use | ✓ No Taxi use Record Found |
| Theft | ✓ No Theft Record Found |
| Fleet and/or Lease | ✓ No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ No Duplicate Title Record Found |

CCC provides GEICO information reported by Experian regarding the **2016 Honda Civic Sedan (19XFC2F55GE245085)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**

✓ No Event Found

⊖ Event Found

▤ Information Needed

**TITLE CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**

THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE** MARKET VALUATION REPORT

Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 03/06/2017**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 09/24/2016 | CA | 8 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 10/13/2016 | CA | | Motor Vehicle Dept. | TITLE (Lien Reported) (Lease Reported) |
| 10/13/2016 | SAN FRANCISCO, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC▱ONE.   MARKET VALUATION REPORT

Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 3 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 16V074000

**Mfg's Report Date :** FEB 08, 2016

**Component :** ENGINE AND ENGINE COOLING:ENGINE

**Potential Number Of Units Affected :** 42129

**Summary :** Honda (American Honda Motor Co.) is recalling certain model year 2016 Civic vehicles manufactured September 22, 2015, to February 3, 2016 and equipped with 2.0L engines. The affected vehicles have engines with piston assemblies that may have been manufactured without a piston wrist pin circlip or with an incorrectly installed piston wrist pin circlip.

**Consequence :** If a circlip is missing or incorrectly installed, the piston wrist pin may not be secure and may drift and damage the engine cylinder causing the engine to seize, and increasing the risk of a crash or a fire.

**Remedy :** Honda will notify owners, and dealers will inspect and replace the piston assemblies and damaged engine components, as necessary, free of charge. Parts are expected to be available in the Summer of 2016. Owners were mailed an interim notification beginning March 31, 2016, and will be mailed a second notice when parts are available. Owners may contact Honda customer service at 1-888-234-2138. Honda's number for this recall is JX9.

**Dates Of Manufacture :** SEP 21, 2015 to FEB 02, 2016

**Manufacturer Recall No. :** JX9

**NHTSA Campaign ID :** 16V526000

**Mfg's Report Date :** JUL 10, 2016

**Component :** EXTERIOR LIGHTING

**Potential Number Of Units Affected :** 11846

**Summary :** American Honda Motor Co. (Honda) is recalling certain model year 2016 Civic 2-Door vehicles manufactured February 23, 2016, through May 20, 2016. The affected vehicles may have a damaged LED side marker light circuit board inside the taillight assembly, making the marker light inoperable. As such, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard (FMVSS) number 108, "Lamps, Reflective Devices, and Assoc. Equipment."

**Consequence :** If a side marker light does not function, vehicle visibility can be decreased to other drivers, increasing the risk of a crash.

**Remedy :** Honda will notify owners, and dealers will inspect both the taillight assemblies, replacing them as necessary, free of charge. The recall began on August 31, 2016. Owners may contact Honda customer service at 1-888-234-2138. Honda's number for this recall is KB8.

**Dates Of Manufacture :** FEB 22, 2016 to MAY 19, 2016

**Manufacturer Recall No. :** KB8

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE** MARKET VALUATION REPORT | Owner: Munoz, Martishaann
Claim: 0577347880101017-01

# SUPPLEMENTAL INFORMATION

**NHTSA Campaign ID :** 16V725000

**Mfg's Report Date :** OCT 10, 2016

**Component :** PARKING BRAKE

**Potential Number Of Units Affected :** 350083

**Summary :** Honda (American Honda Motor Co.) is recalling certain model year 2016 Honda Civic two door and four door 1.5L turbo and 2.0L vehicles. The electric parking brake (EPB) may not engage if it is applied immediately after turning the ignition off.

**Consequence :** If the EPB is not applied, the vehicle may roll away, increasing the risk of a crash.

**Remedy :** Honda will notify owners, and dealers will update the vehicle's software to allow the EPB to engage immediately after the ignition is turned off, free of charge. The recall began on November 8, 2016. Owners may contact Honda customer service at 1-888-234-2138. Honda's number for this recall is KC6.

**Dates Of Manufacture :** MAR 16, 2015 to OCT 02, 2016

**Manufacturer Recall No. :** KC6

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# EXHIBIT E



**GEICO General Insurance Company**

_____

Attn: Salvage Department, PO BOX 13528
Macon, GA 31208-3528

3/8/2017

Martishaann Munoz
852 Avenue D
San Francisco CA 94130--2002

Dear Martishaann Munoz,

The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, plus any applicable fees and adjustments. If you have any questions, please contact me at 707-684-9814. You can also access your claim information at GEICO.com.

Sincerely,

Kimberly Chancey
707-684-9814

Encl:    SHCL30 CA

## TOTAL LOSS SETTLEMENT EXPLANATION

Date                     March 8, 2017
Accident Date            February 24, 2017
Claim Number             057734788-0101-017
Company                  GEICO General Insurance Company
Vehicle:                 2016 HONDA Civic Sedan LX w/Continuously Variable Transmissio
VIN:                     19XFC2F55GE245085

Dear:  Martishaann Munoz,

This is a brief explanation of your claim settlement:

| | |
|---|---|
| **Base Value:** | $17,369.00 |
| **Value Added:** | $0.00 |
| **Condition Adjustment:** | $0.00 |
| **Agreed Value:** | $17,369.00 |
| **Less Retention Amount:** | $0.00 |
| **Tax  0.000%** | $0.00 |
| **Total From CCC:** | $17,369.00 |
| **State and Local Regulatory Fees:** | $159.00 |
| **Post-Tax Adjustment:** | $0.00 |
| **Less Deductible:** | $1,000.00 |
| **Less % Negligence   0%** | $0.00 |
| **Net Settlement Amount:** | $16,528.00 |
| **Towing Charges:** | $0.00 |
| **Storage Charges:** | $0.00 |

State law requires that owners of total loss or salvage motor vehicles apply for a salvage certificate from the Department of Motor Vehicles within 10 days after a total loss settlement. A salvage certificate may affect the loss vehicle's future resale and/or insured value.

Does Apply                        Does Not Apply
☐                                 ■

Unused license fees may be reimbursable from the Department of Motor Vehicles.
You will receive a copy of your vehicle evaluation report.

Adjuster Kimberly Chancey                 Telephone No.  707-684-9814

Customer's  Signature  _____

Pursuant to the California State Regulation R 2695.8 of the Fair Claims Practice Act, The following applies to our policyholders:  "In first party automobile total loss claims, every insurer shall provide notice to the insured at the time the settlement payment is sent or final settlement offer is made that if notified by the insured within thirty-five (35) calendar days after the insured reviews the claim payment or final settlement offer that he or she cannot purchase a comparable automobile for the gross settlement amount, the insurer will reopen its claim file."

CL-30 CA (10-13)

# EXHIBIT F

# GEICO
## geico.com®

**GEICO General Insurance Company**

Attn: Salvage Department, PO BOX 13528
Macon, GA 31208-3528

11/14/2018

Cindy Ventricepearson
30473 Mulholland Hwy SPC 135
Agoura Hills CA 91301--6165

Dear Cindy Ventricepearson,

The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, plus any applicable fees and adjustments. If you have any questions, please contact me at 661-332-9498. You can also access your claim information at GEICO.com.

Sincerely,

Adrian Mccullum
661-332-9498

Encl:    SHCL30 CA

## TOTAL LOSS SETTLEMENT EXPLANATION

| | |
|---|---|
| Date | November 14, 2018 |
| Accident Date | November 9, 2018 |
| Claim Number | 052044349 0101 048 |
| Company | GEICO General Insurance Company |
| Vehicle: | 2010 MINI COOPER |
| VIN: | WMWML3C54ATX36762 |

Dear:  Cindy Ventricepearson,

This is a brief explanation of your claim settlement:

| | |
|---|---|
| **Base Value:** | $7,408.00 |
| **Value Added:** | $0.00 |
| **Condition Adjustment:** | $0.00 |
| **Agreed Value:** | $7,408.00 |
| **Less Retention Amount:** | $0.00 |
| **Tax  9.500%** | $703.76 |
| **Total From CCC:** | $8,111.76 |
| **State and Local Regulatory Fees:** | $97.00 |
| **Post-Tax Adjustment:** | $300.00 |
| **Less Deductible:** | $0.00 |
| **Less % Negligence   0%** | $0.00 |
| **Net Settlement Amount:** | $8,508.76 |
| **Towing Charges:** | $0.00 |
| **Storage Charges:** | $0.00 |

If you are retaining your total loss vehicle as salvage the following applies.

State law requires that owners of total loss or salvage motor vehicles apply for a salvage certificate from the Department of Motor Vehicles within 10 days after a total loss settlement. A salvage certificate may affect the loss vehicle's future resale and/or insured value.

Unused license fees may be reimbursable from the Department of Motor Vehicles.
You will receive a copy of your vehicle evaluation report.

Adjuster Adrian Mccullum                    Telephone No.  661-332-9498

Customer's  Signature  _____

Pursuant to the California State Regulation R 2695.8 of the Fair Claims Practice Act, The following applies to our policyholders:  "In first party automobile total loss claims, every insurer shall provide notice to the insured at the time the settlement payment is sent or final settlement offer is made that if notified by the insured within thirty-five (35) calendar days after the insured reviews the claim payment or final settlement offer that he or she cannot purchase a comparable automobile for the gross settlement amount, the insurer will reopen its claim file."

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-62942-Civ-DIMITROULEAS

KERRY ROTH, on behalf of herself and
all others similarly situated,

   Plaintiff,

  vs.

GEICO GENERAL INSURANCE
COMPANY,

   Defendant.

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

  THIS CAUSE is before the Court upon Plaintiff Kerry Roth ("Roth" or "Plaintiff")'s

Motion for Summary Judgment [DE 152] and Defendant GEICO General Insurance Company

("GEICO" or "Defendant")'s Motion for Summary Judgment [DE 151], both filed on April 20,

2018.  The Court has carefully considered the Motions [DE's 151, 152], the Responses [DE's

171, 172], and the Replies [DE's 188, 190], argument by counsel at the hearing on June 8, 2018,

and the record herein.  The Court is otherwise fully advised in the premises.

**I.  BACKGROUND**:

  This case arises out of GEICO's alleged failure to pay state and local sales tax and title

transfer fees in the settlement of total loss claims on leased vehicles.

  Plaintiff  Roth filed a putative state court class action against Defendant GEICO and

related entities in Florida state court on August 30, 2016, which she replaced on November 8,

1

2016 with an Amended Class Action Complaint, and which she replaced on November 16, 2016 with a Second Amended Class Action Complaint. *See* [DE 1-2] at pp. 85-115. The Second Amended Complaint alleged two counts: Count I for breach of contract, and Count II for declaratory relief. Defendants removed the case to federal court on December 14, 2016, pursuant to the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. §§ 1332(d), 1453.

On January 24, 2017, the Court entered an Order Granting Defendants' Partial Motion to Dismiss Plaintiff's Class Action Complaint. *See* [DE 14]. Therein, the Court dismissed all Defendants other than GEICO General Insurance Company for lack of standing, as Plaintiff alleged no contract with any other Defendant. *See id.* The Court also dismissed Count II for declaratory relief. *See id.*

Accordingly, Plaintiff is proceeding on her breach of contract claim, as set forth in Count I of the Second Amended Complaint, alleging that GEICO does not include sales tax or title transfer fees in its Actual Cash Value payments made to insureds in settlement of total loss claims, in violation of GEICO's policy language.

On May 4, 2018, the Court entered an Order Granting Plaintiff's Motion for Class Certification. *See* [DE 165]. On May 18, 2018, the Court approved the form and manner of class notice. *See* [DE 211]. Plaintiff provided notice to the class by before June 1, 2018, and requests to exclude must be postmarked no later than July 2, 2018. *See* [DE 234].

Both sides now move for summary judgment in this action. In conjunction with the instant summary judgment motions, the parties have provided in their respective Statements of Material Facts and responses thereto [DE 151-1; DE 183; DE 188-1; DE 153; DE 171-1; DE

2

191][1] various factual assertions that are supported by the record. In some instances, the parties have not contested their adversaries' assertions. The Court will deem any uncontested factual assertions supported by the record to be admitted. *See* S.D. Fla. L.R. 56.1(b); Fed. R. Civ. P. 56(c), (e).

## II.     **LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

---

[1] The parties' Statements of Material Facts and responses thereto [DE 151-1; DE 183; DE 188-1; DE 153; DE 171-1; DE 191] include various citations to specific portions of the record. Any citations herein to the Statements of Material and responses should be construed as incorporating those citations to the record.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.    DISCUSSION

On May 14, 2015, Plaintiff Roth entered into a lease agreement for an Audi A3. *See* [DE 152-19]. Plaintiff's leased vehicle was insured by Defendant GEICO's private passenger auto policy (the "Policy"). In June 2016, Plaintiff damaged her vehicle in an automobile accident, and she sought to recover under her GEICO Policy. Plaintiff submitted a claim for physical damage to her vehicle, and GEICO determined Plaintiff's vehicle to be a total loss.

The issue in this case is whether Plaintiff is entitled to sales tax and title transfer fees in addition to what Defendant paid her for the value of her total loss leased vehicle. Plaintiff seeks sales tax damages in the amount of tax she would incur if she were to buy her vehicle and title transfer fee damages in the minimum amount owed for the purchase of an owned vehicle ($75.25).

Defendant argues in its summary judgment motion that GEICO is entitled to summary judgment in its favor because GEICO's insurance policy and Florida law are clear that neither sales tax or title transfer fees are covered and therefore Plaintiff cannot demonstrate a breach of contract or damages. In contrast, Plaintiff argues in her summary judgment motion that she is entitled to summary judgment in her favor because GEICO violated the Policy terms and well-settled Florida law by refusing to pay all replacement costs – specifically, sales tax and title transfer fees –necessary to replace the total loss vehicle. For the reasons set forth below, the Court agrees with Plaintiff and will therefore grant Plaintiff's summary judgment motion and deny Defendant's summary judgment motion.

Under Florida law, to prevail in an action for breach of contract, the plaintiff must prove: (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992)). Additionally, Florida law requires that the Court begin with interpreting the insurance policy with the plain meaning of the policy, and that any ambiguities in the policy shall be construed against the insurer and in favor of the insured and coverage. *See, e.g., Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016);

*Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993). Keeping these legal standards in mind, the Court turns to the language of the Policy at issue.

The relevant section of the Policy is "**Section III – PHYSICAL DAMAGE COVERAGES**," subtitled "**Your Protection For Loss Or Damage To Your Car**," which protected Plaintiff against loss or damage to her Vehicle at the time of the Accident. *See* [DE 153-1] at 13. Damage to Plaintiff's Vehicle associated with the Accident was covered under the "Collision" provision of Section III. Pursuant to this provision, GEICO is responsible for paying "collision loss to the owned auto for the amount of each loss less the applicable deductible." The Policy defines a "**Loss**" as "direct and accidental loss of or damage to: (a) An **owned** or **non-owned auto**, including its equipment." *Id*. at 14. In the event of a loss, the Policy provides that the limit of GEICO's liability for the loss:

> 1. is the **actual cash value** of the property at the time of the **loss**.
>
> 2. Will not exceed the prevailing competitive price to repair or replace the property at the time of **loss**, . . . with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the **loss**.
>
> * * *
>
> **Actual cash value** or **betterment** of property will be determined at the time of the **loss** and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

*Id*. at 15.

The term "actual cash value" (hereinafter, sometimes abbreviated by the Court as "ACV") is defined in the Policy as "the replacement cost of the auto or property less depreciation or betterment." *Id*. at 13. Importantly for the Court's analysis herein, the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and provides no notice to GEICO's insureds that their leased vehicles will be valued differently

based on whether they were leased.  Rather, the Policy provides notice of just the opposite:  the Policy defines owned, financed, and leased vehicles to all be considered "owned autos" under the Policy.  There are no separate provisions in the Policy that apply to owned vehicles only, financed vehicles only, or leased vehicles only.  Additionally, GEICO charges its insureds the same premiums under the Policy for owned, financed, and leased vehicles.  Furthermore, nothing in the Policy requires a leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all.[2]

Plaintiff asserts that sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy.  The Court agrees.  Sales tax and title transfer fees are mandatory fees imposed by Florida law on the replacement of all vehicles. *See* Fla. Stat. § 212.05 (sales tax); § 319.34 (title transfer fee).[3]  Further, settled law in the Eleventh Circuit, applying Florida law, is that when an insurer provides an actual cash value insurance policy covering the cost to repair or replace damaged insured property, it must pay all of the costs that are included in the cost of replacement or repair of the property.  *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]axes are not unambiguously excluded from actual cash value coverage. . . [p]art of 'the cost' of new materials is the taxes paid to purchase those materials").

In the summary judgment decision in *Bastian v. United Services Automobile Assn.*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) in favor of the plaintiffs insureds and against defendant insurance company, the district court agreed "with the Eleventh Circuit's easily-reached

---

2 In fact, many leased vehicle insureds replaced their total loss with an owned vehicle.
3 The title transfer fee for purchasing a replacement vehicle is a minimum of $75.25.  The title transfer fee for leasing a replacement vehicle is a minimum of $54.25.

conclusion [in *Mills*] that state and local taxes are part of the cost of replacing an item."[4]  While Defendant is correct that *Bastian* is distinguishable as it involved owned vehicles being replaced with owned vehicles, whereas Plaintiff Roth's vehicle was a leased vehicle and she replaced it with a leased vehicle, the Court finds *Bastian* to be persuasive here.  In *Bastian,* USAA's insurance policy defined "[a]ctual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition."  *Bastian*, 150 F. Supp. 3d at 1289.  Here, GEICO's Policy defines actual cash value as "the replacement cost of the auto or property less depreciation or betterment." [DE 153-1] at 13.  The relevant policy language at issue in the two cases is comparable in meaning and application.

The plain language of the Policy explicitly treats all vehicles as "owned."  Moreover, for purposes of ACV and replacement cost under the Policy, the replacement costs for both owned and leased vehicles is based on the price to purchase a replacement vehicle (*i.e*, "the prevailing competitive price to repair or replace the property . . . with other of like kind and quality.").  Plaintiff submits GEICO's two Market Valuation Reports for Plaintiff Roth's vehicle.  *Compare* [DE 152-9] *with* [DE 152-11].  The first Market Valuation Report was created before GEICO realized that Plaintiff's vehicle was a lease.  The first report valued Plaintiff's vehicle at $23,947.00 and added sales tax in the amount of 6% of that valuation, an amount of $1,436.82. [DE 152-11].  After determining that Plaintiff's vehicle was a lease, Defendant created a second report, in which it kept the vehicle valuation exactly the same ($23,947.00) -- with the sole

---

4 Further, a policy's failure to address limitations on the payment of sales tax must be construed in favor of the insured.  *See Bastian*, 150 F. Supp 3d at 1295 ("At best, the Policy says nothing on the topic, which the Court should construe in favor of the insured."); *see also Mills,* 511 F.3d at 1305.

exception that it excluded the 6% sales tax. Thus, pursuant to the Policy, Defendant pays on leased vehicle total loss claim based on the market value on the date of the loss to purchase a replacement vehicle of the same make, model, and condition, not the cost to lease a replacement vehicle. As explained *supra*, the cost to purchase a replacement vehicle includes all costs necessarily included in the replacement costs of a total loss vehicle *Mills* and *Bastian*. Accordingly, as sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.[5] Therefore, GEICO's failure to pay leased vehicle total loss insureds sale tax in the amount of 6% of the value of the vehicle (plus any local taxes) and title transfer fees in the amount of $75.25 constitutes a material breach of contract.

While GEICO complies with its Policy provisions (and the mandates of *Mills* and *Bastian*) by paying sales tax of a minimum of 6% of the total loss vehicle value on vehicles that are owned outright or financed by the insured, GEICO violates its Policy provisions (and the mandates of *Mills* and *Bastian*) by refusing to pay full sales taxes on leased vehicles.[6] Further, regarding title transfer fees owed under the Policy, GEICO does not pay title transfer fees on any total loss vehicles, regardless of whether the total loss vehicle is leased, owned, or financed, in violation of the Policy provisions defining all vehicles as owned vehicles and requiring payment

---

5 GEICO's reliance on Fla. Stat § 626.9743(9) is unavailing, as that statute cannot limit coverage to less than what is provided for in the Policy. *See, e.g.*, *Bastian*, 150 F. Supp 3d at 1295.
6 GEICO's admitted practice of conditioning the payment of the sales tax component of ACV for leased vehicle total loss claims on whether the insured paid in the past, at lease inception, 100% of sales tax that would be due over the life of the lease is not supported by the Policy terms or Florida law.

of replacement costs be paid as part of ACV, as well as violating the mandates of *Mills* and *Bastian*.

Regarding damages, the third and final element of a breach of contract claim, Defendant contends that Plaintiff did not incur any damages, as she did not purchase the vehicle she totaled nor did she purchase her replacement vehicle. The Court disagrees. As noted by the Court, *supra*, nothing in the Policy requires a leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all. The damage to Plaintiff is the amount that she was underpaid by Defendant compared to the amount owed to her under the Policy.[7] Here, as to Plaintiff Roth, the amount of damages is $1,436.82 in sales tax and $75.25 in title transfer fees.

## IV. CONCLUSION

Sales tax and title transfer fees are mandatory parts of the replacement cost under the GEICO Policy for Plaintiff Roth's (and the class members') leased total loss vehicle and therefore are components of "actual cash value" under the Policy. Accordingly, GEICO's failure to pay leased vehicle total loss insureds sale tax in the amount of 6% of the value of the vehicle (plus any local taxes) and title transfer fees in the amount of $75.25 constitutes a breach of contract.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Kerry Roth's Motion for Summary Judgment [DE 152] is **GRANTED;**

2. Defendant GEICO General Insurance Company's Motion for Summary Judgment [DE 151] is **DENIED;**

---

[7] While it is not necessary to the Court's analysis of whether Plaintiff was damaged by the breach of contract, the Court notes that Plaintiff submitted record evidence that she paid sales tax and title transfer fees on the replacement of her total loss leased vehicle.

3. Plaintiff Roth is entitled to damages in the amount of $1,436.82 in sales tax, which is 6% of the value of Plaintiff's total loss vehicle; and the amount of $75.25 in title transfer fees, which is the minimum amount of title transfer fees that are due on the purchase of a replacement vehicle.

4. Class members are entitled to damages in the amount of 6% of the value of Plaintiff's total loss vehicle (plus any applicable local taxes); and the amount of $75.25 in title transfer fees.

5. Within sixty (60) days from the expiration of the July 2, 2018 deadline to opt out of the class, the parties shall jointly submit a proposed final judgment to the Court.

6. The July 13, 2018 calendar call is **CANCELLED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of June, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record

11

EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-62942-Civ-DIMITROULEAS

KERRY ROTH, on behalf of herself and
all others similarly situated,

       Plaintiff,

vs.

GEICO GENERAL INSURANCE
COMPANY; GOVERNMENT
EMPLOYEES INSURANCE COMPANY;
GEICO INDEMNITY COMPANY; and
GEICO CASUALTY COMPANY,

       Defendants.

_____

## ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court on Plaintiff Kerry Roth ("Plaintiff" or "Roth")'s

Motion for Class Certification [DE 46/47] (the "Motion"). The Court has carefully considered

the Motion, Defendant GEICO General Insurance Company ("Defendant" or "GEICO")'s

Response in Opposition [DE 77], Plaintiff's' Reply [DE 114], the exhibits submitted in the

record, and is otherwise fully advised in the premises.

## I.     BACKGROUND

Plaintiff filed a putative state court class action against GEICO in Florida state court on

August 30, 2016, which she replaced on November 8, 2016 with an Amended Class Action

Complaint, and which she replaced on November 16, 2016 with a Second Amended Class Action

Complaint. *See* [DE 1-2] at pp. 85-115. The Second Amended Complaint alleged two counts:

Count I for breach of contract, and Count II for declaratory relief.  Defendant removed the case to federal court on December 14, 2016, pursuant to the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. §§ 1332(d), 1453. *See* [DE 1].  On January 24, 2017, the Court dismissed Count II for declaratory relief. *See* [DE 14].  Accordingly, Plaintiff is proceeding solely on the breach of contract claim in Count I.

Plaintiff's breach of contract claim arises out of GEICO's alleged failure to pay state and local sales tax and title transfer fees ("title fees") in the settlement of total loss claims on leased vehicles.  Plaintiff alleges that GEICO does not include sales tax or title fees in its Actual Cash Value ("ACV") payments made to insureds in settlement of total loss claims on leased vehicles, in violation of GEICO's policy language.  Plaintiff contends that, while the GEICO policies provide that leased and owned vehicles are treated the same, and the premiums and underwriting auto policies for leased and owned vehicles are the same, GEICO arbitrarily reduces coverage to insureds with leased vehicle total loss claims compared to insureds with owned vehicle total loss claims by failing to pay the sales tax and title fees on total losses of leased vehicles.

In the instant Motion, Plaintiff seeks class certification and appointment of class counsel under Fed. R. Civ. P. 23(a), (b)(3), and (g).

## II.      <u>STANDARD OF REVIEW</u>

In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).  A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).  Although a district court is not to determine the merits of a case at the certification stage, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at

1570 n.11 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). A court "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006). Therefore, "before a district court determines the efficacy of class certification, it may be required to make an informed assessment of the parties' evidence. That a trial court does so does not mean that it has erroneously 'reached the merits' of the litigation." *Cooper v. S. Co.*, 390 F.3d 695, 712-713 (11th Cir.2004) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir. 1987)).

Parties seeking class action certification must satisfy the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Specifically, the four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party moving for class certification bears the burden of establishing each element of Rule 23(a). *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003). If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a class action. *Jones v. Roy*, 202 F.R.D. 658, 662 (M.D. Ala. 2001).

If the plaintiff satisfies the requirements of Rule 23(a), it must also satisfy one of the three subsections of Rule 23(b). *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997). Rule 23(b)(3)—the provision on which Plaintiffs rely—"permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions

affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'" *Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)) (emphasis in original).

The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011)). That is, "a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

For the reasons discussed below, the Court is satisfied that the requirements for a class action have been met.

### III.   DISCUSSION

Plaintiff seeks certification of the following class:

All persons insured by Defendant under a Florida insurance policy for private passenger auto ("PPA") physical damage who suffered a first-party total loss of a covered leased vehicle at any time during the 5 years prior to the filing of this lawsuit, whose claim was adjusted by Defendant as a total loss claim, whose claim resulted in payment by Defendant of a covered claim, and who was not paid the full total loss vehicle value ("TLVV ") sales tax or title transfer fees.

[DE 47] at p. 2.

For the following reasons, the Court finds that class certification is warranted under Rule 23(a) and Rule 23(b)(3). In addition, the Court grants the request to appoint class counsel under Rule 23(g).

A.     **Rule 23(a)**

1.     <u>**Numerosity**</u>

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Therefore, "[a] plaintiff must present some evidence that the class to be certified will satisfy the numerosity requirement of Rule 23." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 672 (S.D. Fla. 2012).  With respect to this requirement, "[t]he Eleventh Circuit has held that '[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Bacon v. Honda of Amer. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)).

Plaintiff has satisfied the numerosity requirement.  Plaintiff points to data produced by Defendant showing that there are over 3,600 class members.  Defendant's opposition does not challenge numerosity.

### 2.     <u>Commonality</u>

The next requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citation omitted).  Rather, "[c]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

 Plaintiff has identified several issues satisfying the commonality requirement.  Plaintiff identifies, *inter alia*, that there are questions of law common to the class as to whether Defendant breached the insurance policies by failing to pay sales tax and title transfer fees on Florida first-party PPA leased vehicle total loss claims, and a common answer to this question in interpreting the uniform policy language across the putative class.  Plaintiff sets forth the following issues in support of her claim that the same factors supporting Plaintiff's individual breach of contract claim for unpaid sales tax apply equally to all putative class members: (1) the Policies define leased vehicles as an "owned auto" under the Policies; (2) all Policies of the putative class have identical material terms; (3) there is no windfall that will result in Defendant paying sales tax on the leased vehicle total loss claims because the insureds of leased vehicles paid the same premiums paid by owned vehicles under the same Policies; (4) Defendant underwrites and charges the same premium for owned vs. leased vehicles; (5) the cost to replace a total loss vehicle is the same for owned vehicles and leased vehicles (i.e., an insured may replace an owned vehicle with a leased vehicle, an owned vehicle, or choose not to replace the vehicle at all); and (6) six percent state sales tax (and applicable local sales tax) apply equally to all

payments for an owned auto and all payments for a leased vehicle. Plaintiff also posits that title transfer fees likewise apply equally across the class, and likewise present a common question of contract interpretation. The Court agrees that these issues are central to Defendant's liability, and resolution of these issues will affect all members of the putative class.

The Court rejects Defendant's argument that class certification is inappropriate due to potential differences between class members regarding the amount of sales tax incurred, as it is not the incurred amount that determines the amount owed under the policies for calculating replacement costs. Moreover, Plaintiff has proffered a uniform methodology to identify total loss leased vehicles using Defendant's records[1] and for calculating damages the alleged amount of underpaid sales tax, which methodology can be applied across the entire class.

Commonality has been satisfied.

### 3. <u>Typicality</u>

The next requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality . . . does not require identical claims or defenses." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984). Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

Plaintiff has satisfied this requirement. Plaintiff's claims are typical of claims of other putative class members because they were each insured by GEICO pursuant to insurance policies with identical material terms when they had a claim determined by GEICO to be a covered

---

[1] This also supports ascertainability, *i.e.*, that Plaintiff will be able to identify the class members by reference to objective criteria in an administratively feasible way. *See Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015).

leased vehicle total loss claim.  Plaintiff and the putative class members all suffered the same injury as a result of Defendant's conduct, namely, that GEICO did not pay sales tax and title transfer fees as replacement costs.  The injury common to the Plaintiff and the class relies on the same legal and factual theories of liability.

Defendants' arguments regarding the typicality requirement are unpersuasive. "Differences in the amount of damages between the class representative and other class members does not affect typicality." *Kornberg*, 741 F.2d at 1337.  The class representative's claims "need not be identical" to those of class members; they need only "'arise from the same event or pattern or practice and [be] based on the same legal theory.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012).  Here, Plaintiff and all the class members were injured by the alleged failure to pay sales tax and title transfer fees allegedly owed under the insurance policies, resulting in monetary damages.

Therefore, Plaintiff satisfies the typicality requirement.

### 4.    **Adequacy**

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "[T]his requirement applies to both the named plaintiff and counsel," and "the requirement's purpose is to protect the legal rights of absent class members." *London*, 340 F.3d at 1253 (internal quotations omitted). Additionally, this requirement is meant "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (internal quotations omitted).

Plaintiff and her counsel satisfy this requirement.  There do not appear to be any conflicts of interest between Plaintiff and the putative class.  Further, the Court finds Plaintiff's counsel qualified pursuant to Rule 23(g)(1) to represent the putative class.  Plaintiff's counsel has

sufficient experience with class actions and complex litigation.  Defendant has not offered

evidence to negate Plaintiff or her counsel's adequacy.  Therefore, Plaintiff and counsel satisfy

the adequacy requirement.

**B.** **Rule 23(b)(3)**

In addition to meeting the requirements under Rule 23(a), parties seeking class

certification must also satisfy one of the subsections of Rule 23(b). *Rosen v. J.M. Auto, Inc.*, 270

F.R.D. 675, 678 (S.D. Fla. 2009).  Here, Plaintiff asserts that certification is appropriate under

Rule 23(b)(3).  "Class certification under Rule 23(b)(3) is appropriate when (1) 'questions of law

or fact common to the members of the class predominate over any questions affecting only

individuals members,' and when (2) 'a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The

Court will consider each requirement in turn.

**1.** **<u>Predominance</u>**

Under this factor, "[i]t is not necessary that all questions of fact or law be common, but

only that some questions are common and that they predominate over individual questions." *Klay*

*v. Humana, Inc*., 382 F.3d 1241, 1254 (11th Cir. 2004). "Issues that are subject to generalized

proof and applicable to the whole class must predominate over the issues involving

individualized proof." *Rosen*, 270 F.R.D. at 681 (citing *Kerr v. City of W. Palm Beach*, 875 F.2d

1546, 1558 (11th Cir.1989)). "Whether an issue predominates can only be determined after

considering what value the resolution of the class-wide issue will have in each class member's

underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc*., 211 F.3d 1228, 1234 (11th

Cir. 2000).  Moreover, "the presence of individualized damages issues does not prevent a finding

that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333
F.3d 1248, 1261 (11th Cir. 2003).

The Court agrees with Plaintiff that common issues of law and fact that are susceptible to
common proof, *see supra,* predominate over any issues that may be subject to individualized
proof.  Interpretation of uniform material insurance provisions that will determine liability is
particularly indicative of predominance. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224
F.R.D. 67, 80 (E.D.N.Y. 2004) ("For purposes of the litigation, the pertinent provisions of
Nationwide's policies are substantially uniform and adjudication of the putative class' breach of
contract claim would not invoke predomination of individual issues of fact."); *Burton v.
Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 611 (D. Mont. 2003) ("The most
significant aspect of this case is whether Mountain West denied stacking benefits to its insureds,
and this question is common to all.").

Defendant contends that individualized damages defeat predominance.  The Court finds
Defendant's arguments unpersuasive. "The 'black letter rule' recognized in every circuit is that
'individual damage calculations generally do not defeat a finding that common issues
predominate.' " *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016)
Neither of the exceptions to the rule apply here, as computing damages will not be "so complex,
fact-specific, and difficult that the burden on the court system would be simply intolerable," nor
are individual damages accompanied here by "significant individualized questions going to
liability." *Id.* (citations omitted).  Plaintiff has proffered a uniform methodology for calculating
damages that can be applied ministerially and formulaically across the entire class to determine
the alleged amount of underpaid sales tax.  Plaintiff has also set forth evidence to show that
Defendant did not pay title transfer fees for total losses of leased vehicles in Florida, resulting in

a minimum damage of $75.25 for each class member. The need for individual damages

calculations in this case does not defeat a finding of predominance. The common legal and

factual issues identified in this case are significantly more substantial than the individualized

damages issue emphasized by Defendant. Thus, the Court finds that the predominance factor

under Rule 23(b)(3) is satisfied.

       **2.**    **Superiority**

Rule 23(b)(3) requires that

> a class action is superior to other available methods for fairly and
> efficiently adjudicating the controversy. The matters pertinent to
> these findings include:(A) the class members' interests in
> individually controlling the prosecution or defense of separate
> actions;(B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;(C) the
> desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and(D) the likely difficulties in
> managing a class action. Fed. R. Civ. P. 23

This factor is closely linked to the predominance factor "because when common issues

predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle

for adjudicating the plaintiffs' claims." *Nelson*, 270 F.R.D. at 698 (citing *Klay*, 382 F.3d at

1269).

     Plaintiff cites several reasons why a class action is the most desirable vehicle to

adjudicate the claims, including that the average claim of each class member is approximately

$1,480.00, which is relatively small when compared to the cost of litigating a breach of contract

case against a large insurance company, and that the class action is manageable, as the uniform

policy provision in question lies at the heart of this case and damages can be determined by an

analysis of Defendant's data. The Court finds that class certification is superior to other methods

for adjudicating this controversy.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    The Motion [DE DE 46/47] is **GRANTED**;

2.    The Court hereby certifies a class (the "Class") pursuant to Fed. R. Civ. P.

23(b)(3) consisting of the following:

> All persons insured by GEICO General Insurance Company ("GEICO
>
> General") under a Florida insurance policy for private passenger auto ("PPA")
>
> physical damage who suffered a first-party total loss of a covered leased
>
> vehicle at any time during the 5 years prior to the filing of this lawsuit, whose
>
> claim was adjusted by GEICO General as a total loss claim, whose claim
>
> resulted in payment by GEICO General of a covered claim, and who was not
>
> paid the full total loss vehicle value ("TLVV ") sales tax or title transfer fees.

3.    Kerry Roth is hereby certified as representative of the Class;

4.    Edmund Normand, Esq., Normand PLLC, Christopher J. Lynch, Esq., Christopher J.

Lynch, PA, Bradley W. Pratt, Esq., Pratt Clay LLC, Tracy Markham, Esq., Avolio &

Hanlon, PC,  Andrew Lampros, Esq., and Hall & Lampros, LLP are hereby certified

as Class Counsel pursuant to Rule 23(g)(1).

5.    On or before **May 14, 2018**, the parties shall jointly file for approval by the Court a

proposed notice to Class members; alternatively, if the parties cannot agree on a

proposed notice, Plaintiff shall file a proposed notice on or before **May 14, 2018**, and

Defendant shall file any objections within three (3) days of the filing of Plaintiff's

proposed notice.

6.    Plaintiff's Motion to Postpone Determination [DE 162] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this

3rd day of May, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record

# EXHIBIT I



**Tel:** 1-800-841-3000

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO GENERAL INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

**Policy Number: 4374-28-19-49**
**Coverage Period:**
10-26-18 through 04-26-19
12:01 a.m. standard time at the address of the named insured.

Date Issued: September 22, 2018

CINDY B VENTRICEPEARSON
30473 MULHOLLAND HWY SPC 135
AGOURA HILLS CA  91301-6165

Email Address: cventrice@yahoo.com

| **Named Insured** | **Additional Driver** |
|---|---|
| Cindy B Ventricepearson | Hunter Pearson |

| **Vehicles** | | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|---|
| 1 2010 MINI | Cooper | WMWML3C54ATX36762 | Agoura Hills CA 91301 | |
| 2 2013 MINI | Cooper | WMWZF3C50DT491590 | Agoura Hills CA 91301 | |

| **Coverages\*** | **Limits and/or Deductibles** | **Vehicle 1** | **Vehicle 2** |
|---|---|---|---|
| Bodily Injury Liability | | | |
| Each Person/Each Occurrence | $300,000/$300,000 | $308.30 | $112.70 |
| State Minimum $15,000/$30,0000 | | | |
| Property Damage Liability | $100,000 | $208.50 | $78.60 |
| State Minimum $5,000 | | | |
| Uninsured & Underinsured Motorists | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $147.10 | $60.20 |
| Comprehensive | $500 Ded | $57.20 | $27.80 |
| Collision | $500 Ded/Waiver | $440.20 | $182.80 |
| Emergency Road Service | Full | $16.40 | $10.50 |
| Rental Reimbursement | $50 Per Day | $40.70 | $32.60 |
| | $1,500 Max | - | - |
| **Six Month Premium Per Vehicle** | | **$1,218.40** | **$505.20** |
| **Total Six Month Premium** | | | **$1,723.60** |

\*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**Discounts**

Multi-Car (All Vehicles)
Good Student (Veh 1)
Subclass Factor (Veh 2)
Anti-Theft Device (All Vehicles)
Multi Line - Umbrella (All Vehicles)
California Good Driver (Veh 2)
California Persistency (All Vehicles)

**Group Insurance Plan:**
**Standard Group Insurance Plan**

**Contract Type:** A30CA
**Contract Amendments:** ALL VEHICLES - A30CA A54CA

**Unit Endorsements:**     A115 (VEH 1,2); A428 (VEH 1,2); A431 (VEH 1,2); UE316C (VEH 2)

**Class:** 0 -N -02SM  T (VEH 1); A -N -39SF  P (VEH 2)

---

### Important Policy Information

-The estimated annual mileage figures applicable to the vehicles on your policy for the current and upcoming policy periods are:

| Vehicle | Current Mileage | Upcoming Mileage |
|---|---|---|
| 2010  MINI  COOPER | 12,000 | 12,000 |
| 2013  MINI  COOPER | 8,000 | 8,000 |

-Please verify that the coverages you requested are accurately reflected on your Declarations Page. Visit geico.com to review additional coverages and/or limits available to you.

-No coverage is provided in Mexico.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-In California, you have the right to designate one person to receive notices from GEICO if your policy is about to cancel or expire for non-payment. Your designee will not have any rights or benefits under your policy other than the right to receive the notice or make a payment. You can change or remove the designee at any time. If you would like to add, change or remove a designee from your policy, simply log into your account at geico.com or call us at 1-800-841-3000.

-In accordance with Section 1872.87 of the California Insurance Code, in addition to your premium, a $0.88 charge per vehicle is assessed to fund auto insurance fraud reduction initiatives. This charge is applied once per policy term per vehicle.