**TYCKO & ZAVAREEI LLP**
Annick Persinger (CA Bar No. 272996)
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
apersinger@tzlegal.com

**KIRTLAND & PACKARD LLP**
Michael Louis Kelly (State Bar No. 82063)
Behram V. Parekh (State Bar No. 180361)
Joshua A. Fields (State Bar No. 242938)
1638 South Pacific Coast Highway
Redondo Beach, California 90277
Tel: (310) 536-1000 / Fax: (310) 536-1001
mlk@kirtlandpackard.com
bvp@kirtlandpackard.com
jf@kirtlandpackard.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (admitted *pro hac vice*)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re GEICO General Insurance Company | Case No. 4:19-cv-03768-HSG<br><br>**CLASS ACTION**<br><br>**CONSOLIDATED AMENDED COMPLAINT FOR:**<br><br>1. **Breach of Contract (Failure to Pay ACV Sales Tax)**<br>2. **Breach of Contract (Failure to Pay ACV Regulatory Fees)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs POONAM SUBBAIAH ("Ms. Subbaiah") and CINDY VENTRICE-PEARSON ("Ms. Ventrice-Pearson") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1. This is a class action lawsuit brought by Plaintiffs, the named insured under their respective GEICO GENERAL INSURANCE COMPANY(hereinafter referred to as "Defendant" or "GEICO") automobile policies issued for private passenger auto physical damage requiring payment of "Actual Cash Value" ("ACV"), including State sales tax and State-mandated regulatory fees, for covered total loss insured vehicles.

2. Defendant GEICO is one of the largest passenger auto insurance carriers operating in the State of California. One of the coverages GEICO sells to consumers is comprehensive and collision coverage. GEICO systematically and uniformly underpaid Plaintiffs and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3. Pursuant to its standard Policy form language, GEICO is obligated to pay insureds sales tax equal to at least six percent[1] of the adjusted vehicle value of the insured vehicle at the time of loss to insureds who suffer the total loss of an insured vehicle. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total loss vehicle, nor on the amount, if any, paid by the insured to replace the total loss vehicle. Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total loss vehicle, nor on the amount paid, if any, to replace the total loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle at the time of loss ("ACV Sales Tax").

4. Pursuant to its standard Policy form language, GEICO is also obligated to pay the full title, registration and regulatory fees imposed by the State of California on the purchase and registration of

---

[1] California's sales tax is 6%. In addition, many counties impose a local sales tax of up to 3.5% in addition to the 6% state sales tax.

2

automobiles in the state ("ACV Regulatory Fees"). Nevertheless, GEICO, in violation of its contract, pays only a portion of such fees to all insureds, thus breaching its contract with every insured who suffered a total loss to their insured vehicle.

5. This lawsuit is brought on behalf of Plaintiffs and on behalf of all other similarly situated insureds who have suffered damages due to the Defendant's practice of refusing to pay full ACV Sales Tax and ACV Regulatory Fees, to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

6. The failure to pay ACV Sales Tax and ACV regulatory fees on first-party total losses owed to GEICO insureds pursuant to GEICO's uniform policy language constitutes a breach of the policy.

**JURISDICTION AND VENUE**

7. This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 ("CAFA") because (a) Plaintiffs are members of the putative class, which consists of at least 100 members, and Plaintiffs and Defendant are citizens of different states; (b) the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under § 1332 apply to this claim. *See* 28 U.S.C. § 1332(d)(2)(A).

8. This Court also has personal jurisdiction over Defendant because Defendant is authorized to do business, and currently does business, in this state.

9. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant has conducted business in this District and is subject to personal jurisdiction and a substantial portion of the conduct complained of herein occurred in this District.

**THE PARTIES**

10. At all times material hereto, the Plaintiff POONAM SUBBAIAH, is and was a person residing in Los Angeles County, California.

11. At all times material hereto, the Plaintiff CINDY VENTRICE-PEARSON, is and was a person residing in Los Angeles County, California

3

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

12. At all times material hereto, the Defendant GEICO is and was a foreign corporation located in the State of Maryland and with its principal place of business in Maryland, and authorized to transact insurance in the State of California, and one of the largest, if not the largest, motor vehicle insurers in California.

## AMOUNT IN CONTROVERSY

13. GEICO paid out approximately $450 million dollars in auto private passenger physical damage claims in 2018.

14. Upon information and belief and the investigation of their attorneys, including total loss rates per physical damage premiums written by Defendant (and other insurers), during the relevant time period, Defendant adjusted, at minimum, approximately 115,000 total loss claims. Upon information and belief, approximately 10% of such total loss claims were not paid sales tax owed under a given Policy. Assuming an average vehicle value of $15,000 and a sales tax rate of 8.5%, the amount-in-controversy easily exceeds $10,000,000, exclusive of interest, costs, and attorney's fees. Such amount does not include amounts owed for ACV regulatory fees, which, upon information and belief, were underpaid to every total-loss insured, and averages approximately $100.00 per insured

## FACTUAL ALLEGATIONS

**A.    Plaintiff Subbaiah's Total Loss**

15. At all times material hereto, the Plaintiff Subbaiah was a lessee of a 2017 Porsche 911 Carrera.

16. At all times material hereto, the Plaintiff Subbaiah insured the 2017 Porsche 911 Carrera under a California Family Automobile Insurance Policy with GEICO (hereinafter referred to as "GEICO policy") (a copy of said policy is attached hereto as **Exhibit A**).

17. On or about December 8, 2018, the Plaintiff Subbaiah's leased 2017 Porsche 911 Carrera was stolen. As a result of the theft, Ms. Subbaiah submitted a claim under the policy with GEICO.

18. Following the submission of said claim, GEICO determined the 2017 Porsche 911 Carrera was a total loss as a result of the theft.  GEICO then agreed to an ACV payment of $87,345, comprised of the payoff amount to the lienholder minus the $500 GEICO policy deductible and the remaining amount of $17,211.26 to Ms. Subbaiah.

19. However, in paying the aforementioned amount, GEICO indicated that because the vehicle was leased and not owned by Plaintiff Subbaiah, no ACV Sales Tax was owed under the policy, according to GEICO, and GEICO paid no such ACV Sales Tax to Plaintiff Subbaiah in response to her claim.

20. GEICO breached the terms of Plaintiff Subbaiah's Policy by not including ACV Sales Tax in making its (purported) ACV payment to Plaintiff Subbaiah.

21. Furthermore, GEICO's payment for state and regulatory fees constituted only a portion of the state and regulatory fees owed under the Policy.

22. GEICO's underpayment of the ACV Regulatory Fees also constituted a breach of contract.

23. Plaintiff Subbaiah paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—GEICO acknowledged that Plaintiff Subbaiah satisfied all conditions precedent required under the Policy

**B.     Plaintiff Ventrice-Pearson's Total Loss**

24. At all times material hereto, Plaintiff Ventrice-Pearson owned/financed and insured a 2010 Mini Cooper, VIN # WMWML3C54ATX36762.

25. On or about November 14, 2018, Plaintiff Ventrice-Pearson was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff Ventrice-Pearson filed a claim for property damage with Defendant, claim number 052044349-0101-048.

26. Plaintiff Ventrice-Pearson insured the 2010 Mini Cooper (the "insured vehicle") under an insurance policy issued by Defendant. **Exhibit B** (Ventrice-Pearson Policy); **Exhibit C** (Ventrice-Pearson Decl. Sheet). Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

27. Following the filing of said claim, GEICO, through CCC, determined that the vehicle was a total loss with a base value of $7,408.00, with no applicable condition adjustments, and therefore an adjusted vehicle value of $7,408.00.

28. The base value and adjusted vehicle value are calculated by CCC based on the "sticker price" of comparable vehicles listed for sale in the local market.

29. GEICO added sales tax of $703.76 and state and local regulatory fees of $97.00 and a post-tax adjustment of $300.00, for a total payment of $8,508.76. **Exhibit D** (Ventrice-Pearson Total Loss Settlement Letter).

30. However, the $97.00 paid for state and regulatory fees constitute only a portion of the state and regulatory fees owed under the Policy. The state and regulatory fees owed pursuant to the Policy's terms regarding ACV payment of the insured vehicle were, at a minimum, approximately $215.00.

31. GEICO's underpayment of the ACV regulatory fees constituted a breach of contract.

32. Plaintiff Ventrice-Pearson paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—GEICO acknowledged that Plaintiff Ventrice-Pearson satisfied all conditions precedent required under the Policy.

**C.     The GEICO Policy**

33. Defendant GEICO's policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in GEICO auto policies issued by Defendant in California. Indeed, Plaintiffs and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiffs were insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as Exhibits A and B.

34. The GEICO policy, under Section III, entitled PHYSICAL DAMAGE COVERAGES (page 8 on Form A-30CA (10-98)), states:

> **LOSSES WE WILL PAY**
> \*
> ***Comprehensive* (Excluding Collision)**
> 1.     We will pay for each ***loss,*** less the applicable deductible, caused other than by ***collision*** to the ***owned*** or ***non-owned auto.*** This includes [. . .] ***loss*** caused by:
>
> [. . .]
>
> (e) theft;
>
> [. . .]

6

***Collision***

1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

35. The GEICO policy, in Section III, under the provision entitled **LIMIT OF LIABILITY**, (page 9 of Form A-30CA (10-98)), states:

> The limit of liability for our **loss:**
> 1. Is the **actual cash value** of the property at the time of the **loss.**

36. Finally, the **DEFINITIONS** provision of the GEICO policy (page 7 of Form A-30CA (10-98)), states:

> 1. **Actual cash value** is the replacement cost of the auto or property less **depreciation** or **betterment.**

37. Furthermore, "Collision" is defined as "loss caused by the upset of the covered auto or its collision with another object[.]" *Id.* at 7.

38. "Owned auto" is defined as, inter alia, any vehicle "for which a specific premium charge indicates there is coverage." *Id.* at 8.

39. "Loss" is defined as "direct and accidental loss of or damage to" the insured auto. *Id.* at 7.

40. There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id.*

41. There is no difference and no distinction in the Policy between owned, financed, and leased vehicles. In fact, the Policy specifically asserts not only that "owned auto" includes any auto for which a premium is paid—even if financed or leased—but also that owned autos include autos leased for a period of over six months. *Id.* at 8.

42. Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding sales tax or mandatory regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax or regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; or (4) any provision linking the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss

7

vehicle. Instead, the Policy establishes ACV as a predictable amount upon which both GEICO and the insured can rely.

43. The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

44. The policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

### D.  Sales Tax and Regulatory Fees are Replacement Costs

45. Sales tax is a mandatory cost imposed by the State of California on every vehicle purchase. There is no exception to the imposition of sales tax for insureds replacing a total loss vehicle. It is impossible to replace a total loss vehicle—or to purchase any vehicle under any circumstances— without payment for sales tax.

46. As set forth above, GEICO promises to pay the ACV of an insured vehicle in the event of, inter alia, a total loss; and defines ACV as the replacement cost of the insured vehicle, less depreciation. Sales tax is incontrovertibly an element of the replacement cost of the vehicle, and is therefore incontrovertibly an element of the ACV of the insured vehicle.

47. Furthermore, the State of California imposes mandatory regulatory fees on the purchase and registration of all vehicles. Vehicles are required to be legally titled and registered in order to be used and operated in the State of California. California imposes fees on such transactions, including a title transfer fee of $15.00, a registration fee of $60.00, county fees of up to $19.00, a California Highway Patrol ("CHP") fee of $26.00, a Transportation Improvement Fee ("TIF") of $25.00-$175.00, and a Vehicle License Fee ("VLF") of 0.65% of the adjusted vehicle value. These fee amounts and categories – title transfer fee, registration fee, county fee, CHP fee, TIF, and VLF – are "ACV regulatory fees." As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total-loss vehicle.

48. Thus, sales tax and the aforementioned regulatory fees are inherently part of the costs to replace an insured property, including a vehicle. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *8

(N.D. Cal. May 22, 2017) (citing *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs, including . . . sales tax"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]he cost to repair and replace property with new materials would necessarily include the state and local taxes on the materials purchased to make the repairs.")).

49. Moreover, the *California Code of Regulations* specifically provides the following:
(b) In evaluating automobile total loss claims the following standards shall apply:

(1) The insurer may elect a cash settlement that shall be based upon the actual cost of a "comparable automobile" less any deductible provided in the policy. **This cash settlement amount shall include all applicable taxes and one-time fees incident to transfer of evidence of ownership of a comparable automobile. This amount shall also include the license fee and other annual fees to be computed based upon the remaining term of the loss vehicle's current registration.** This procedure shall apply whether or not a replacement vehicle is purchased.

Cal. Code Regs. tit. 10, § 2695.8 (emphasis added).

E. **GEICO Systematically Fails to Pay Sales Tax if the Total Loss Vehicle Was Leased and GEICO Underpays Regulatory Fees for All Total-Loss Vehicles**

50. GEICO's uniform procedure is to use a third-party vendor, Certified Collateral Corporation ("CCC"), to determine the "base" and "adjusted" value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss. The base value takes into account depreciation (age, mileage, etc.), while the adjusted value takes into account the actual condition of the total loss vehicle relative to comparable vehicles.

51. The adjusted vehicle value is otherwise known as the "appraised" value of the vehicle, and it is the amount on which the sales tax owed is based – otherwise, it is irrelevant to this lawsuit and Plaintiffs do not challenge the determination of the adjusted vehicle value.

52. In addition to the appraised value (which takes into account depreciation and condition), other mandatory replacement costs—title fees, registration fees, and sales tax—are a component of the ACV, and, therefore, should be included in Defendant's calculation of the ACV. *See Johnson*, 2017 WL 2224828, at *8.

53. GEICO's Policy permits deductions for depreciation and subtraction of any applicable deductible and salvage retention value from the ACV owed to insureds.

54. Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees). Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees), less any applicable deductible and salvage retention value.

55. Indeed, in California, GEICO pays full sales tax—the applicable percentage of the adjusted vehicle value—as part of the ACV replacement costs if the total loss vehicle was owned or financed.

56. Such payments constitute an acknowledgement from GEICO that in the event of a total loss, its Policy promises payment of sales tax as part of the ACV of the insured vehicle.

57. Nevertheless, in California, GEICO uniformly does not pay the sales tax owed as a part of the ACV replacement costs if the total loss vehicle was leased.[2]

58. Further, in California, GEICO underpays regulatory fees by paying only a prorated amount of regulatory fees to all total-loss insureds, irrespective of whether the vehicle was owned, financed or leased. But insureds do not pay a prorated amount of such fees in replacing the total-loss vehicle—instead, insureds are responsible for paying the full amount of such fees to the State.[3]

59. GEICO's Policy does contain any provision or clause stating GEICO will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, GEICO simply promises to pay the costs to replace the vehicle. Moreover, by excluding depreciation and actual condition from the costs of replacement, GEICO further indicates that replacement costs not excluded would be paid. If

---

[2] Upon information and belief, GEICO may purport to sometimes partially pay sales tax under some limited factual circumstances. Even in that scenario, however, GEICO would still owe the difference between the partial sales tax payment and the full ACV sales tax owed on the total-loss adjusted vehicle.
[3] One exception is the VLF fee, for which insureds are permitted to seek a reimbursement and/or credit from the State of California in the event of a total loss. Plaintiffs and the Class do not seek from GEICO the amount available as a credit or reimbursement from the State of California. However, to procure such a credit or reimbursement, insureds must pay a $21.00 service fee. In other words, if $30.00 is available for credit, insureds must pay the service fee of $21.00 and are "credited" the remaining $9.00. GEICO, however, deducts the full $30.00 from the ACV payment.

GEICO had wanted to exclude all or part of the replacement costs (like depreciation and condition), it could have done so.

60. GEICO's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount—replacement costs of the insured vehicle minus depreciation—to every policyholder.[4]

61. GEICO's Policy promises payment of full sales tax and regulatory fees as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax or regulatory fees at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured does not replace the total loss vehicle at all, the ACV of the vehicle is unaffected. GEICO's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

## CLASS DEFINITION AND CLASS ALLEGATIONS

62. Plaintiffs bring this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

63. Plaintiff Subbaiah brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

**Leased-Vehicle Class**

> All individuals insureds under a California policy issued by GEICO General Insurance Company with the same operative policy language covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and

---

[4] These allegations should come as no surprise to Defendant, given that at least one court has already found that similar conduct by GEICO constitutes a breach of contract. Specifically, in *Roth v. Geico General*, the Court cogently held that GEICO's procedure breached its (materially identical) contract by failing to include in an ACV payment taxes and fees: "[A]s sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased." *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2018 WL 3412852, at *4 (S.D. Fla. June 14, 2018), attached as **Exhibit F** (Order on Summary Judgment). Further, the Court found, "the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and provides no notice to GEICO's insureds that their leased vehicles will be valued differently." Id. at *3.

where the total loss payment did not include sales tax calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV Sales Tax") and/or where the total loss payment included a prorated amount (or no amount) for state and local regulatory fees and not the full applicable registration, CHP, TIF, VLF and county registration fees imposed by the State of California ("ACV regulatory fees"), within four years prior to the date on which this lawsuit was filed through the date of any certification order.

64.  Plaintiff Ventrice-Pearson brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

### Owned/Financed-Vehicle Class

All individuals insured under a California policy issued by GEICO General Insurance Company with the same operative policy language covering an owned or financed vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment included a prorated amount (or no amount) for state and local regulatory fees and not the full applicable registration, CHP, TIF, VLF and county registration fees imposed by the State of California ("ACV regulatory fees") within four years prior to the date on which this lawsuit was filed through the date of any certification order

65.  Certification of the above classes is supported by the following considerations:

   a.  The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;
   b.  Counsel in this class action are not aware of any previously filed litigation against GEICO in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and
   c.  No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

66.  **Numerosity:** The proposed classes are so numerous that individual joinder of all its members is impracticable. Although the precise number of members of the Classes are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs understand Defendant to be one of the largest motor vehicle insurers in the State of California—one that writes hundreds of millions of dollars of physical damage coverage premiums. Thus, the classes of persons affected by Defendant's unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are otherwise so numerous that joinder of all class members is impractical. The

unlawful practice alleged herein is a systematic and uniform practice, employed by Defendant in violation of standardized and uniform insurance policy language, which results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiffs and the Class members.

67. The precise number of members of the Classes can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiffs believe the Owned/Financed-Vehicle Class is comprised of approximately 100,000 members, while the Leased-Vehicle Class is comprised of approximately 8,000 members. Numerosity under Rule 23(a)(1) is established.

68. **Common Questions of Law and Fact Predominate:** Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all members of both Classes, including Plaintiffs, are bound by materially identical policy terms

69. There are many questions of law and fact common to the representative Plaintiffs and the Classes, and those questions substantially predominate over any questions that may affect individual Class members. The common questions of law and fact include, but are not limited to, the following:

　　i. Whether Defendant entered into valid contracts with Plaintiff and members of the putative classes;

　　ii. Whether Defendant breached the contracts when it failed to pay ACVSales Tax upon the total loss of insured vehicles;

　　iii. Whether Defendant breached the contracts when it failed to pay ACV Regulatory Fees upon the total loss of insured vehicles; and

　　iv. The nature and extent of damages and other remedies to which the conduct of Defendant entitles class members.

70. As to the Leased-Vehicle Class, common questions include (but are not limited to): (1) whether, under the Defendant's standardized policy language, leased-vehicle insureds are owed sales tax upon the total loss of an insured vehicle; (2) whether the Policy defines and treats leased, financed and owned vehicles in a materially-similar manner; (3) whether GEICO makes the same promise as to leased,

financed, and owned vehicles; and (4) whether the ACV of a vehicle depends on whether it is owned, leased or financed.

71. As to both Classes, common questions include (but are not limited to): (1) whether Defendant's Policy promised to pay only a prorated amount in regulatory fees in making payment following a total loss; (2) whether Defendant excluded any portion of regulatory fees in its Policy; (3) whether Defendant is permitted to pay only a partial or prorated amount of regulatory fees.

72. Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members. As to the Leased-Vehicle Class, the critical common question—does Defendant's promise to pay the ACV of the total loss vehicle obligate it to include ACV sales tax to leased-vehicle insureds—is identical for every member of the Class. Other critical common questions, such as whether Defendant's Policy excluded portions of regulatory fees or whether the Policy treats or defines leased vehicles differently than owned or financed vehicles, are also identical for every member of the Leased-Vehicle Class.

73. Additionally, a class action would be "superior to other methods for the fair and efficient adjudication of the controversy" because: (1) Class members have little interest in individually controlling the prosecution of separate actions because the individual damages claims of each Class member are not substantial enough to warrant individual filings; (2) Plaintiff is not aware of other lawsuits against Defendant commenced by or on behalf of members of the Class; and (3) the conduct alleged is common to all Class members and because resolution of the claims of Plaintiff will resolve the claims of the remaining Class, certification does not pose any manageability problems.

74. Further, the measure of damages, if any, is the same for every member of both Classes, and any variances in damages will reflect only variances in underlying vehicle values (some vehicles are more expensive than others, and thus the applicable ACV sales tax owed will be different) or variances in the prorated amount paid in ACV regulatory fees, the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

75. **Typicality:** Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs and members of the Classes were injured by Defendant's uniform misconduct. Further, Plaintiffs and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of

insured vehicles on first-party total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the members of the Classes. Plaintiff Subbaiah suffered the same harm as all other members of the Leased-Vehicle Class: the coverage for sales tax and regulatory fees that Defendant failed to pay or underpaid its leased-vehicle insureds. Plaintiff Ventrice-Pearson suffered the same harm as all other members of the Owned/Financed-Vehicle Class: the coverage for regulatory fees that Defendant underpaid its insureds. Plaintiffs are not subject to any unique defenses nor do Plaintiffs bring any unique claims.

76. As stated earlier, the relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

77. **Adequacy of representation:** Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the respective Classes. Plaintiffs possess no conflict with members of the Classes. Plaintiffs' claim does not conflict with that of any member of the Classes, and Plaintiffs have no financial or any other interest conflicting with those of the Class. Plaintiffs fully intend to vigorously protect the interests of Class members in prosecuting these claims. Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiffs' counsel have successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Sales Tax and/or ACV Regulatory Fees after total losses.

78. **Superiority of Class Action:** As to the Leased-Vehicle Class, class treatment is superior because every claim—all based on uniform conduct and a form contract—will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of sales tax. As to both Classes, class treatment is superior because every claim will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of ACV Regulatory Fees. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers (including Defendant in a different state) were

successfully treated as class actions. *See, e.g., Roth v. Geico General*, **Exhibit E.** In sum, for many, if not most, Class members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice.

79. Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

## FIRST CAUSE OF ACTION

**(Breach of Contract for Failure to Pay ACV Sales Tax)**

**(By Plaintiff Subbaiah on Behalf of Herself and Lease-Vehicle Class Against GEICO)**

80. Plaintiff Subbaiah restates and incorporates by reference each and every allegation contained in paragraphs 1-79 of this Complaint as though fully set forth herein.

81. Plaintiff was party to an insurance contract with Defendant as described herein. All Leased-Vehicle Class members were parties to insurance contracts with Defendant containing materially identical terms.

82. The interpretation of Plaintiff's and all Leased-Vehicle Class members' Policies is governed by California law.

83. Plaintiff and all Leased-Vehicle Class members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

84. Defendant, by paying the total loss claim, determined that Plaintiff and each Leased-Vehicle Class members complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

85. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Leased-Vehicle Class member were owed the ACV of the vehicle, which, per the terms of the Policies, includes sales tax calculated as a percentage of the adjusted vehicle value.

86. Defendant refused or otherwise failed to pay ACV Sales Tax as part of its purported ACV payment to Plaintiff and every Leased-Vehicle Class member, following Defendant's determination that a vehicle was a total loss.

87. Defendant's failure to provide payment for the ACV sales tax constitutes a material breach of contract with Plaintiff and every Leased-Vehicle Class member.

88. As a result of said breaches, Plaintiff and the Leased-Vehicle Class members are entitled, under Defendant's insurance Policies, to sums representing the benefits owed for ACV sales tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## SECOND CAUSE OF ACTION

**(Breach of Contract for Failure to Pay ACV Regulatory Fees)**

**(By both Plaintiffs on Behalf of both Classes Against GEICO)**

89. Plaintiffs restate and incorporate by reference each and every allegation contained in paragraphs 1-88 of this Complaint as though fully set forth herein.

90. Plaintiffs were respectively party to an insurance contract with Defendant as described herein. All members of the Classes were parties to insurance contracts with Defendant containing materially-identical terms.

91. The interpretation of Plaintiffs' and all Class members' Policies is governed by California law.

92. Plaintiffs and all members of the Classes made a claim determined by Defendant to be a first-party total loss under the insurance policy, and determined by Defendant to be a covered claim.

93. Defendant, by paying the total loss claim, determined that Plaintiff and each member of the Classes complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

94. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every member of the Classes were owed the ACV of the vehicle, which, per the terms of the Policies, includes the ACV Regulatory Fees in the amounts set by California law.

95. Defendant, however, paid only a prorated amount in regulatory fees, rather than the full amount actually owed as the necessary cost to replace a vehicle in California, to Plaintiffs and every member of the Classes.

96. Defendant, however, paid only a prorated amount in regulatory fees, rather than the full amount actually owed as the necessary cost to replace a vehicle in California, to Plaintiffs and every member of the Classes.

97. As a result of said breaches, Plaintiffs and the members of the Classes are entitled under Defendant's insurance policies to sums representing the benefits owed for ACV Regulatory Fees (minus the prorated amount already paid), as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1. For certification of the putative Classes;
2. An award of general damages according to proof;
3. An award of special damages according to proof;
4. For attorneys' fees and expenses pursuant to all applicable laws, including, without limitation, the common law private attorney general doctrine;
5. For costs of suit;
6. For such other and further relief as the court deems just and proper.

DATED: February 18, 2020                    By:    */s/ Annick M. Persinger*
                                                   **TYCKO & ZAVAREEI LLP**
                                                   Annick Persinger
                                                   (CA Bar No.272996)
                                                   1970 Broadway, Suite 1070
                                                   Oakland, CA 94612
                                                   Telephone: (510) 254-6808
                                                   apersinger@tzlegal.com

                                                   **KIRTLAND & PACKARD LLP**
                                                   Michael Louis Kelly (State Bar No. 82063)
                                                   Behram V. Parekh (State Bar No. 180361)
                                                   Joshua A. Fields (State Bar No. 242938)
                                                   1638 South Pacific Coast Highway
                                                   Redondo Beach, California 90277

|   |   |
|---|---|
| 1 | Tel: (310) 536-1000 / Fax: (310) 536-1001 |
| 2 | mlk@kirtlandpackard.com<br>bvp@kirtlandpackard.com<br>jf@kirtlandpackard.com |

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
(admitted *pro hac vice*)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
(admitted *pro hac vice*)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

**NORMAND PLLC**
Edmund A. Normand
(admitted *pro hac vice*)
Jacob L. Phillips
(admitted *pro hac vice*)
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

*Counsel for Plaintiffs and all others similarly situated*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial.

DATED: February 18, 2020      By:      */s/ Annick M. Persinger*
**TYCKO & ZAVAREEI LLP**
Annick Persinger
(CA Bar No.272996)
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
apersinger@tzlegal.com

**KIRTLAND & PACKARD LLP**
Michael Louis Kelly (State Bar No. 82063)
Behram V. Parekh (State Bar No. 180361)
Joshua A. Fields (State Bar No. 242938)
1638 South Pacific Coast Highway
Redondo Beach, California 90277
Tel: (310) 536-1000 / Fax: (310) 536-1001
mlk@kirtlandpackard.com
bvp@kirtlandpackard.com
jf@kirtlandpackard.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
(admitted *pro hac vice*)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
(admitted *pro hac vice*)
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

**NORMAND PLLC**
Edmund A. Normand
(admitted *pro hac vice*)
Jacob L. Phillips
(admitted *pro hac vice*)
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

*Counsel for Plaintiffs and all others similarly situated*

20

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT