1
2
3                  UNITED STATES DISTRICT COURT
4                NORTHERN DISTRICT OF CALIFORNIA
5
6                                              Case No.  19-cv-03768-HSG
7
8      *In Re* GEICO *General Insurance Company*     **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
9
                                               Re: Dkt. No. 139
10
11
12
13          Pending before the Court is the unopposed motion for preliminary approval of class action

14  settlement filed by Plaintiffs Cindy Ventrice-Pearson, Poonam Subbaiah, and Kristen Perez, on

15  behalf of themselves and as representatives of the Settlement Class.  *See* Dkt. No. 139.  The

16  parties have reached a settlement regarding Plaintiffs' claims and now seek the required court

17  approval.  *Id.*  The Court held telephonic hearings on February 10, 2022 and July 7, 2022.  *See*

18  Dkt. Nos. 147, 157.  In support of the motion for preliminary approval, Plaintiffs submitted

19  supplemental filings following each hearing.  *See* Dkt. Nos. 150, 159.  For the reasons set forth

20  below, the Court **GRANTS** Plaintiffs' motion.

21  **I.   BACKGROUND**

22          **A.   Factual Background**

23          Plaintiffs bring this consolidated class action against Defendant GEICO General Insurance

24  Company, alleging that Defendant breached private passenger auto insurance policies issued to

25  Plaintiffs and similarly situated insureds by failing to properly include or calculate sales tax (as to

26  leased vehicles) and regulatory fees (as to all vehicles).  Dkt. No. 139, at 12.[1]  Plaintiffs allege that

27  _____

28  [1] For citations to the Plaintiffs' motion for preliminary approval, Dkt. No. 139, the Court refers to the page numbers of the PDF.

United States District Court
Northern District of California

Defendant's insurance policies require payment of actual cash value ("ACV") upon the total loss of a covered auto and define ACV as the "replacement cost" of the auto, less depreciation. *Id.* Plaintiffs argue that (1) the insurance policies require Defendant to include sales tax on the cost to purchase a replacement vehicle when paying leased-vehicle claims; and (2) under Cal. Ins. Code § 2695.8(b)(1), registration fees for the "remaining term of the loss vehicle's current registration" should be calculated on an end-of-month (rather than, as Defendant contends, a beginning-of-month) basis or, alternatively, on a daily (not monthly) basis. Dkt. No. 139-3 Declaration of Jacob Phillips in Support of Motion for Preliminary Approval ("Phillips Decl.") ¶ 13.

Named Plaintiff Ventrice-Pearson owned/financed and insured a 2010 Mini Cooper which, as the result of an accident, was determined to be a total loss. Dkt. No. 75 ¶¶ 24–27. Defendant paid Plaintiff Ventrice-Pearson $8,508.76, including a base value of $7,408.00, sales tax of $703.76, state and local regulatory fees of $97.00, and a post-tax adjustment of $300.00. *Id.* ¶¶ 27, 29. However, Plaintiffs allege that Defendant underpaid the true state and local regulatory fees owed. *Id.* ¶ 30.

Named Plaintiff Subbaiah leased and insured a 2017 Porsche 911 Carrera which, as a result of theft, was determined to be a total loss. *Id.* ¶¶ 16–17. Defendant agreed to an ACV payment of $87,345, comprised of the payoff amount to the lienholder, a $500 policy deductible, and $17,211.26 paid to Plaintiff Subbaiah. *Id.* ¶ 18. Plaintiffs allege that Defendant breached its policy terms by determining that because the vehicle was leased and not owned by Plaintiff Subbaiah, no ACV Sales Tax was owed under the policy. *Id.* ¶ 19. Plaintiffs also allege Defendant's payment for state and regulatory fees constituted only a portion of the state and regulatory fees owed under the Policy. *Id.* ¶ 21.

Named Plaintiff Kristin Perez leased and insured a 2018 Honda Clarity Plug-In Touring, which, as the result of an accident, was determined to be a total loss. *Perez v. Geico Indemnity Company*, No. 20-cv-07436-HSG, Dkt. No. 1 ¶¶ 37–38. Defendant agreed to an ACV payment of $35,924.00, comprised of the payoff amount to the lienholder, added state and regulatory fees of

United States District Court
Northern District of California

$385.00, and a $1,000.00 deductible.  *Id.* ¶¶ 39–41.  Plaintiffs allege that Defendant paid none of the estimated $2,769.30 in sales tax Plaintiffs allege was owed under the insurance policy.  *Id.* ¶ 42.

### B.     Procedural History

Named Plaintiff Ventrice-Pearson filed a claim on behalf of herself and all others similarly situated on June 27, 2019.  *See* Dkt. No. 1.[2]  Named Plaintiff Subbaiah filed her claim on July 3, 2019, and Named Plaintiff Perez filed her claim on October 23, 2020.  Phillips Decl. ¶¶ 4–5.  The Perez and Subbaiah cases have since been transferred to this Court and consolidated with the Ventrice-Pearson case for purposes of settlement.  Dkt. Nos. 72, 142.

Over the course of two years, the parties engaged in motion practice, *see, e.g.*, Dkt. Nos. 30, 120; engaged in extensive production and review of documents and class-wide data, Phillips Decl. ¶ 15–16; and took multiple depositions, including the depositions of corporate representatives, class representatives, and expert witnesses.  *See id.*  After multiple mediation sessions, *see id.* ¶ 25, the parties reached a settlement, *see* Dkt. No. 135.

### C.     Settlement Agreement

The key terms of the parties' Settlement Agreement, Dkt. No. 139-4, Ex. 1 ("Settlement Agreement" or "SA"), are as follows:

Class Definition: The Settlement Class is defined as

> **Regulatory Fees Class:**
> All individual insureds under an Automobile Insurance Policy covering a vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, whose claim was adjusted under Section III of the GEICO's Automobile Insurance Policy (i.e. comprehensive or collision coverage) during the Class Period, that was determined by GEICO to be a covered claim and where GEICO determined that the vehicle was a total loss and did not pay to repair the damage to the vehicle and where the insured did not retain the salvage vehicle.

> **Sales Tax Class:**
> All individual insureds under an Automobile Insurance Policy

---

[2] Ms. Martisha Ann Munoz joined Ms. Ventrice-Pearson in bringing the original complaint on June 27, 2019, *see* Dkt. No. 1, but was not included as a named plaintiff in the Consolidated Amended Complaint, *see* Dkt. No. 75.

United States District Court
Northern District of California

covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who's claim was adjusted under Section III of the GEICO's Automobile Insurance Policy (i.e. comprehensive or collision coverage), during the Class Period, that was determined by GEICO to be a covered claim and where GEICO determined that the vehicle was a total loss and did not pay to repair the damage to the vehicle, where the insured did not retain the total-loss vehicle and where GEICO did not include ACV Sales Tax in the Total Loss Claim Payment(s).

SA ¶ ll.

The "Regulatory Fees Class" and the "Sales Tax Class" are referred to collectively as the "Settlement Class." *Id.* Excluded from the Settlement Class are (1) Defendant, all present or former officers and/or directors and/or employees of Defendant, the Neutral Evaluator, class counsel, and any Judge of this Court; (2) claims for which Defendant received a valid and executed release; and (3) individual claims for first-party property damage for which the process of appraisal or arbitration or litigation has been completed or initiated at the time this Settlement Agreement is filed. *Id.*

Settlement Benefits:

Defendant has agreed to: (1) upon submission of a valid claim by a Regulatory Fees Class member, pay $6.88, representing one-half of an average monthly payment in regulatory fees, and (2) upon submission of a valid claim by a Sales Tax Class member, pay $6.88 in regulatory fees plus the sales tax at the applicable state and county rate at the time of loss to all insureds. SA ¶¶ 27–28. Claims will be paid on a claims-made basis. SA ¶ 26. Additionally, absent a clarifying change in statutory law or a contrary opinion by the Ninth Circuit or California appellate court, in the future Defendant will, for total loss covered vehicles, (a) pay sales tax at the applicable rate to leased-vehicle insureds and (b) calculate and pay regulatory fees as a daily proration, rather than subtracting the monthly amount at the beginning of each month. *Id.* ¶ 60.

Release: Under the settlement agreement, all class members will release:

any and all known and unknown claims, rights, actions, suits or causes of action of whatever kind or nature, whether *ex contractu* or *ex delicto*, statutory, common law or equitable, including but not limited to breach of contract, bad faith or extracontractual claims, and claims for punitive or exemplary damages, or prejudgment or postjudgment interest, arising from or relating in any way to GEICO's failure to pay sufficient sales tax and/or regulatory fees to Plaintiffs and all

4

> Settlement Class Members with respect to any Covered Total Loss Claim during the Class Period under an Automobile Insurance Policy. Released Claims do not include any claims, actions, or causes of action alleging that GEICO failed to properly calculate the base or adjusted value of total loss vehicles except to the extent that such claims, actions, or causes of action relate to failure to pay sufficient sales tax and/or regulatory fees.

SA ¶ gg; *see also id.* ¶ 48.

Class Notice: KCC, a third-party settlement administrator, will mail class notices to all reasonably identifiable class members on two occasions, with pre-filled, detachable, and postage-prepaid claim forms.  SA ¶ 8; *see* Phillips Decl. ¶ 33.  For any physical addresses that Defendant does not have or that are incomplete, the Settlement Administrator will search the National Change of Address Database.  SA ¶ 10.  Notice will also be provided twice by email to Settlement Class Members for whom Defendant possesses an email address.  *Id.*  Each of the email notices will allow class members to "click through" to the settlement website, which includes an electronic claim form.  Phillips Decl. ¶ 33; *see* SA ¶¶ 11–12.

The notice will include a summary of the claims and the settlement terms, the average claim size, the released claims, and instructions on how to object to and opt out of the settlement, including relevant deadlines.  Dkt. No. 159, Exs. A and B ("Mail Notices"); Dkt. No. 139-6, Ex. 3 ("Email Notices") (together, "Notices" or "Notice").  The Mail Notices will also include the average individual claim payment for each class.  *See* Mail Notices.  Defendant will extract available information from its claim records to pre-fill information on the claim forms.  SA ¶¶ 9, 11.  To receive a Claim Payment, the Settlement Class member will need to submit a claim form, declaring that the pre-filled Claim information is correct and that they were a GEICO insured who suffered a total-loss during the Settlement Class period who did not receive ACV Sales Tax and/or full Regulatory Fees.  *See* Dkt. No. 139-7, Ex. 4; Dkt. No. 139-8, Ex. 5 (together, "Claim Form"); *see also* Phillips Decl. ¶ 33.

Service Award:  Plaintiff Subbaiah will apply for an incentive award of no more than $15,000, Plaintiff Ventrice-Pearson will apply for an incentive award of no more than $10,000, and Plaintiff Perez will apply for an incentive award of no more than $5,000.  SA ¶ 39.  Any service award payments are separate from and in addition to the payments available to Settlement

1   Class Members and will not impact the amount owed to Settlement Class Members.  *Id.* ¶ 40.

2   Defendant agrees not to oppose these requests.  *Id.* ¶ 42.

3        Attorneys' Fees and Costs: Class counsel will file an application for attorneys' fees and

4   costs not to exceed $3,900,000.  SA ¶¶ 38–42.  Defendant agrees not to oppose these requests.  *Id.*

5   **II.    PROVISIAL CLASS CERTIFICATION**

6        The plaintiff bears the burden of showing by a preponderance of the evidence that class

7   certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v.*

8   *Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  *First*, a plaintiff

9   must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,

10  typicality, and adequacy of representation.  *Id.* at 349.  *Second*, it must establish that at least one of

11  the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a

12  class under Rule 23(b)(3), it must show that "questions of law or fact common to class members

13  predominate over any questions affecting only individual members, and that a class action is

14  superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

15  R. Civ. P. 23(b)(3).

16       "The criteria for class certification are applied differently in litigation classes and

17  settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)

18  ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider

19  manageability at trial.  *Id.*  However, this concern is not present in certifying a settlement class.

20  *Id.* at 556–57.  In deciding whether to certify a settlement class, a district court "must give

21  heightened attention to the definition of the class or subclasses."  *Id.* at 557.

22       **A.  Rule 23(a) Certification**

23          **i.    Numerosity**

24       Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members

25  is impracticable."  The Court finds that the numerosity requirement is satisfied because joinder of

26  the estimated 220,000 class members would be impracticable.  *See* Dkt. No. 139, at 21; Phillips

27  Decl. ¶ 38.

28

United States District Court
Northern District of California

### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  A contention is sufficiently common where "it is capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' ― even in droves — but rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted) (emphasis in original). Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include whether Defendant's policy language is reasonably interpreted to include sales tax and/or regulatory fees, how regulatory fees should be calculated under Cal. Ins. Code § 2695.8(b)(1), and whether Defendant's alleged failure to include full sales tax on leased-vehicle total-loss claims and its methodology for prorating regulatory fees constitute a breach of contract. *See generally* Dkt. No. 139.  Although the amount of reimbursement to which each class member is entitled will differ, the issues described above are common across the proposed Settlement Class.  Accordingly, the Court finds that the commonality requirement is met.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted).  That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

The Named Plaintiffs' claims are both factually and legally similar to those of the

1    Settlement Class members.  Named Plaintiffs allege that, like other class members, they paid for

2    Defendant's insurance policy, suffered a total loss of an insured vehicle, were owed full sales

3    taxes and/or regulatory fees under the insurance policy, and were detrimentally affected by

4    Defendant's policy of not paying full sales tax and regulatory fees.  *See* Dkt. No. 139, at 12–13;

5    Dkt. No. 75, at 2–11.  Accordingly, the typicality requirement is satisfied.

6              **iv.  Adequacy of Representation**

7              Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

8    the interests of the class."  The Court must address two legal questions: (1) whether the named

9    plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether

10   the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.

11   *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  This inquiry "tend[s] to

12   merge" with the commonality and typicality criteria.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

13   147, 158 n.13 (1982).  In part, these requirements determine whether "the named plaintiff's claim

14   and the class claims are so interrelated that the interests of the class members will be fairly and

15   adequately protected in their absence."  *Id.*

16             The Court is unaware of any actual conflicts of interest in this matter and no evidence in

17   the record suggests that either the Named Plaintiffs or Plaintiffs' counsel have a conflict with other

18   class members.  Plaintiffs have secured representation by competent counsel, including counsel

19   experienced in automobile total-loss insurance litigation matters, and consulted with a mediator

20   experienced in class actions.  *See* Phillips Decl. ¶¶ 46–49, Dkt. No. 139-1 Declaration of Scott

21   Edelsberg in Support of Motion for Preliminary Approval ("Edelsberg Decl.") ¶ 1, Dkt. No. 139-2

22   Declaration of Rodney Max in Support of Motion for Preliminary Approval ("Max Decl.") ¶¶ 2–9.

23   The Court finds that Named Plaintiffs and Plaintiffs' counsel have prosecuted this action

24   vigorously on behalf of the class to date and will continue to do so.  The adequacy of

25   representation requirement, therefore, is satisfied.

26          **B.  Rule 23(b)(3) Certification**

27             To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3).  First,

28   "questions of law or fact common to class members [must] predominate over any questions

affecting only individual members." Fed. R. Civ. P. 23(b)(3).  And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted).  The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotations omitted).  A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotations omitted).

The Court concludes that, for purposes of settlement, common questions of contract interpretation and application raised by Plaintiffs' claims predominate over individualized issues. Plaintiffs allege that Defendant breached its insurance policy obligations by failing to pay sales tax (as to leased vehicles) and by failing to properly calculate and pay regulatory fees (as to all vehicles).  Dkt. No. 139, at 12.  All class members are affected by Defendant's alleged violations of the policy terms.  *Id.*  Although class members will need to rely upon individual evidence to show whether they are owed reimbursement for sales tax and regulatory fees, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations omitted).  Additionally, the methodology for measuring damages is applicable class wide.  Dkt. No. 139, at 23.

### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Here, the Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them.  Three cases with substantially similar allegations were consolidated for purposes of this class action settlement to save substantial time and effort.  *See* Dkt. Nos. 72, 142.  Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### iii.    Class Representative and Class Counsel

Because the Court finds that Named Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Named Plaintiffs as class representatives.  When a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' counsel have efficiently investigated and litigated this case.  Between them, counsel have many years of experience with class action litigation and have handled multiple automobile insurance class actions, including other cases materially similar to the one here.  *See* Phillips Decl. ¶¶ 46–68, Dkt. No. 91-1 Declaration of Annick M. Persinger in Support of Plaintiffs' Motion for Class Certification, Exs. M–Q.  Accordingly, the Court appoints Normand PLLC, Tycko & Zavareei LLP, Kirtland & Packard LLP, Shamis & Gentile, P.A., and Edelsberg Law, P.A. as class counsel.

## III.    PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

United States District Court
Northern District of California

### A.     Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (quotation and citations omitted).

### B.     Analysis

#### i.     Evidence of Conflicts and Signs of Collusion

11

1    The first factor the Court considers is whether there is evidence of collusion or other

2  conflicts of interest.  *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to

3  look for "subtle signs of collusion," which include whether counsel will receive a disproportionate

4  distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an

5  arrangement where defendant will not object to a certain fee request by class counsel)," and

6  whether the parties agree to a reverter that returns unclaimed funds to the defendant.  *Id.*

7    At this stage, class counsel's requested fee award does not appear to constitute a

8  disproportionate share of the settlement agreement.  Under the Settlement Agreement, class

9  counsel can request up to $3,900,000 in attorneys' fees, which is 19% of the total cash benefit

10  available to the class, not including prospective relief.  Dkt. No. 139, at 16. [3]  Ultimately, the

11  reasonableness of any requested fees will have to be evaluated in light of the actual benefit to the

12  class and class counsel's lodestar at the final approval stage.

13    Variations of the other two possible signs of collusion are present here.  First, Defendant

14  agreed not to oppose class counsel's requests for attorneys' fees and costs and incentive awards.

15  SA ¶¶ 38–42.  Second, although there is not a reversion in the formal sense, there is the functional

16  equivalent of a reversion because Defendant will only pay for those class members who submit

17  valid claims.  The money that would revert to Defendant in a common fund case never leaves

18  Defendant's possession given the structure of this settlement.  *See Tait v. BSH Home App. Corp.*,

19  No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, at *6 (C.D. Cal. July 27, 2015) ("Although

20  the claims-made settlement does not contain a reverter provision, '[a] claims-made settlement is . .

21  . the functional equivalent of a common fund settlement where the unclaimed funds revert to the

22  defendant." (citation omitted));  *see also Stanikzy v. Progressive Direct Ins. Co.*, Case No. 2:20-

23  cv-118 BJR, 2022 WL 1801671, at *6 (W.D. Wash. June 2, 2022).

24    That said, the Court recognizes that class counsel obtained significant results for the

25  prospective class members, as discussed below in Section III.B.iii.  Sales Tax Class members who

26  submit a valid claim will receive 100% of the car's sales tax value, and Regulatory Fees Class

27

28  ─────────────────
[3] Plaintiffs estimate that $3,900,000 in attorneys' fees represents 7.7% of the benefit value when including five years of prospective relief.  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  members who submit a valid claim will receive a flat payment of $6.88, representing half of a

2  monthly regulatory fee payment. *Id.* ¶¶ 27–28. The Court is cognizant of its obligations to ensure

3  that any class settlement is "fair, reasonable, and adequate" and to review class fee awards with

4  particular rigor. *See Briseño v. Henderson*, 998 F.3d 1014, 1023-28 (9th Cir. 2021). At the final

5  approval stage, the Court will carefully scrutinize the claim rate and other relevant data to evaluate

6  the fairness of the settlement and the request for attorneys' fees. Accordingly, the Court finds that

7  this factor does not preclude preliminary approval.

8        **ii.   Preferential Treatment**

9        The Court next considers whether the settlement agreement provides preferential treatment

10 to any class member. The Ninth Circuit has instructed that district courts must be "particularly

11 vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to

12 infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have

13 consistently stated that preliminary approval of a class action settlement is inappropriate where the

14 proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*,

15 2018 WL 6099948, at *8 (quotations omitted).

16       Although Named Plaintiffs are authorized to seek incentive awards, the Court will

17 ultimately determine whether each Plaintiff's individual award is appropriate in light of their role

18 and responsibilities as Named Plaintiff. Incentive awards "are intended to compensate class

19 representatives for work done on behalf of the class, to make up for financial or reputational risk

20 undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th

21 Cir. 2009). Class representatives must provide sufficient evidence to allow the Court to evaluate

22 their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to

23 protect the interests of the class, the degree to which the class has benefitted from those actions,

24 . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'"

25 *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). Under the Settlement

26 Agreement, Named Plaintiff Subbaiah will apply for an incentive award of no more than $15,000,

27 Named Plaintiff Ventrice-Pearson will apply for an incentive award of no more than $10,000, and

28 Named Plaintiff Perez will apply for an incentive award of no more than $5,000. SA ¶ 39. The

1  Court will consider the evidence presented at the final fairness hearing and evaluate the

2  reasonableness of any incentive award request.  Nevertheless, because incentive awards are not

3  per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval.  *See*

4  *Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action

5  cases" and "are discretionary" (emphasis omitted)).

6       **iii.**    **Settlement within Range of Possible Approval**

7       The third factor the Court considers is whether the settlement is within the range of

8  possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily

9  consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Lenovo*,

10  2018 WL 6099948, at *8.  This requires the Court to evaluate the strength of Plaintiffs' case.

11  Plaintiffs have explained the significant risks that they would face in continuing to litigate this

12  case.  *See* Dkt. No. 139, at 14.  According to Plaintiffs, litigation of these claims through trial

13  presents significant challenges to prevailing on the merits since no California court, state or

14  federal, has held that insureds who leased a vehicle are entitled, upon a total-loss determination, to

15  full payment of sales tax.  *Id.*

16       Plaintiffs represent that there are approximately 218,023 Regulatory Fees Class members.

17  *Id.* ¶ 31.[4]  Every Regulatory Fees Class member who submits a timely and valid claim will be paid

18  $6.88, approximately half of what Plaintiffs estimate could have been recovered at trial.  *Id.*; Dkt.

19  No. 150 ¶ 19. [5]  Based on the class size and claim payment amount, Plaintiffs estimate the total

20

21  [4] According to Plaintiffs, "following a total loss, GEICO normally takes the totaled vehicle (after
paying the actual cash value) and sells the vehicle at a salvage auction.  However, [GEICO] gives

22  the insured the option to keep the salvage vehicle instead . . . .  In such cases, GEICO would
deduct the estimated salvage value from its ACV payment."  Dkt. No. 150 ¶ 25.  The settlement

23  does not include those insureds who chose to retain their salvage vehicle because their claims
could be subject to unique defense arguments.  *Id.* ¶ 28.  Plaintiffs represent that, after working

24  with Defendant, they have identified approximately 22,000 insureds who "during the Class Period
chose to retain their salvage vehicle and are thus not included in the Settlement Agreement

25  Classes."  *Id.* ¶ 24.  These individuals, absent retention of the salvage vehicle, would have been a
part of the Regulatory Fees Class.  *Id.*  Those who retained their salvage vehicles are explicitly

26  excluded from the Settlement Agreement, and are not barred from separately asserting claims for
any underpaid regulatory fees.  *Id.* ¶¶ 24, 31–32.

27  [5] Plaintiffs acknowledge that "GEICO calculated the registration fees it included in total-loss
settlements based on the remaining term of a total-loss vehicle's registration at the time of the loss

28  and paid a prorated amount in fees."  Dkt. No. 150 ¶ 9.  However, the parties dispute whether Cal.
Ins. Code § 2695.8(b)(1) requires proration of the monthly amount from the first or last day of the

United States District Court
Northern District of California

1    available damages for the Regulatory Fees Class to be $1,500,000.  Phillips Decl. ¶ 31.

2              As for the Sales Tax Class, Plaintiffs represent that there are approximately 8,772

3    members.  Phillips Decl. ¶ 30.[6]  Every Sales Tax Class member who submits a timely and valid

4    claim will be paid "100% of the sales tax at the applicable CA state and local sales tax rates based

5    on the adjusted vehicle value, plus $6.88 in regulatory fees."  SA ¶ 28.  Plaintiffs predict that the

6    average Sales Tax Class claim will be $2,051.98, which is based on an average vehicle value of

7    $23,318.00 and an 8.8% average sales tax rate.  Phillips Decl. ¶ 30.  With approximately 8,772

8    Sales Tax Class members and an average claim of $2,051.98, Plaintiffs estimate that "the total

9    available compensatory damages in sales tax is $18,000,000.00," and allege that the settlement

10   represents "100% of the damages for sales tax recoverable at trial."  Id. ¶¶ 29–30.

11             Class counsel estimates that the total damages recoverable at trial would have been $21

12   million.  Class counsel therefore asserts that the total available compensatory damages of $19.5

13   million—$1,500,000 for the Regulatory Fees Class and $18 million for the Sales Tax Class—

14   represents approximately 92.8% of total damages.  Id. ¶¶ 29–31.  It is important to note, however,

15   that Plaintiffs' numbers assume a 100% claim rate by the Settlement Class members.  The actual

16   value paid will likely be much lower because of the claims-made structure of the settlement.

17   Based on the experience of Plaintiffs' counsel and claim rates in comparable settlements, Plaintiffs

18   estimate that 25 to 30% of Sales Tax Class members and 20 to 25% of Regulatory Fees Class

19   members will claim their settlements.  See Phillips Supplemental Decl. ¶¶ 34–39.

20             Plaintiffs argue that the settlement also provides valuable injunctive relief because

21   Defendant promises to "include the full applicable sales tax necessary to purchase a replacement

22   vehicle for leased-vehicle insures, and to calculate the 'remaining term' of registration fees on a

23

24   _____

month in which a collision occurs.  Id. ¶¶ 6–13.  Contrary to Defendant's practice of not paying
25   any prorated amount for the month in which the collision occurs, Plaintiffs argue that registration
fees should be paid for the entirety of the month in which the collision occurs.  Id. ¶¶ 10–12.
26   Therefore, Plaintiffs' theory of maximum recovery for the Regulatory Fees Class is one month's
worth of regulatory fees, on average $13.76.  Id. ¶ 12.  Plaintiffs arrived at $13.76 by computing
27   the average regulatory fees owed in a full year, $165.12, and dividing by 12 months.  Id. ¶¶ 14–15.
[6] Plaintiffs represent that neither they nor Defendant have identified any salvage-retained insureds
28   who leased their vehicle.  Id. ¶ 24.  Therefore, Plaintiffs do not believe there is anyone who would
qualify for the Sales Tax Class but for retaining a salvage vehicle.  Id.

United States District Court
Northern District of California

daily basis, rather than the monthly basis GEICO . . . used . . . ."  Dkt. No. 139 at 3-4.    All told, Plaintiffs calculate that one year's worth of prospective relief is worth approximately $4.8 million. Phillips Decl. ¶ 83.[7]

Plaintiffs believe their claims are meritorious, but acknowledge the significant risk of the Court ruling against Plaintiffs' claims.  *See* Dkt. No. 139, at 4.  The Court finds that, given these risks and the expected claim rate, the settlement amount weighs in favor of granting preliminary approval.

### iv.    Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the settlement agreement.  The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*          *          *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV.    PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:
    (i)     the nature of the action;
    (ii)    the definition of the class certified;
    (iii)   the class claims, issues, or defenses;

---

[7] Plaintiffs estimation is based on 43,600 total loss-owned vehicles per year multiplied by an average regulatory fee payment of $6.88 and 2,199.96 total-loss leased vehicles per year multiplied by an average sales tax payment of $2,051.98.  Phillips Decl. ¶¶ 82-83.

United States District Court
Northern District of California

> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator, KCC, will mail class notice to those members of the class that may be identified through reasonable efforts. SA ¶¶ 8–10. "For each Settlement Class Member, Defendant shall provide the insured's (1) name, (2) mailing address, (3) email address, (4) policy number, and (5) claim number." *Id.* ¶ 5. KCC will mail Notice and Claim Forms to each Settlement Class member, with a second Mail Notice to follow approximately thirty days after the Mail Notice Date. *Id.* ¶ 8. For any notices returned as undeliverable, KCC will log the Notice as undeliverable and provide copies of the log to Defendant and class counsel upon request. *Id.* ¶ 17. KCC will use reasonable efforts, including an Experian search or skip tracing, to obtain a new address and re-mail each undeliverable Notice. *Id.* KCC will also send an E-mail Notice to each Settlement Class Member for whom Defendant provides an associated e-mail address. *Id.* ¶ 11.

The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed Mail Notice, Email Notice, and Claim Form. Dkt. No. 159, Exs. A and B; Phillips Decl., Exs. 3–5. The notice includes information on the definition of the class, the settlement benefits, how to submit a Claim for Reimbursement, how to request exclusion from the Settlement, how to support or object to the Settlement, and the final fairness hearing. *See id.* The notice also informs Settlement Class Members that class counsel will file a motion for attorneys' fees and costs, not to exceed a total sum of $3,900,000, and service awards for the three Class Representatives, ranging from $5,000 to $15,000. *Id.* The Mail Notice includes expected average recoveries for each class. Dkt. No. 159, Exs. A and B.

The Court finds that the proposed notice provides sufficient information about the case and

17

thus conforms with due process requirements.  *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V.  CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval.  The parties are **DIRECTED** to meet and confer and file a stipulation and proposed order stipulating to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:   7/28/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California