Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
(510) 254-6808
apersinger@tzlegal.com

Edmund A. Normand*
Jacob L. Phillips*
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

Scott Edelsberg (CA Bar No. 330990)
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

Michael Louis Kelly (CA Bar No. 82063)
Joshua A. Fields (CA Bar No. 242938)
**KIRTLAND & PACKARD LLP**
1638 South Pacific Coast Highway
Redondo Beach, CA 90277
Tel: (310) 536-1000 / Fax: (310) 536-1001
mlk@kirtlandpackard.com
jf@kirtlandpackard.com

Andrew John Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Ste 1205
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

*Appearing Pro Hac Vice*
*Counsel for Plaintiffs and the Settlement Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

*In Re GEICO General Insurance Company*

CASE NO. 4:19-cv-03768-HSG

Hon. Haywood S. Gilliam, Jr.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM IN SUPPORT**

**Date:** December 15, 2022
**Time:** 2:00 p.m.
**Courtroom:** 2

**TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 15, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 2, before the Honorable Haywood S. Gilliam, Jr., Plaintiffs Cindy Ventrice-Pearson, Poonam Subbaiah, and Kristen Perez (collectively "Plaintiffs") will and hereby do respectfully move this court pursuant to Federal Rules of Civil Procedure, Rule 23, for an order granting final approval of the proposed Settlement Agreement and exhibits thereto ("Settlement Agreement") reached in this case on October 8, 2021.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support, the declarations submitted by Jacob Phillips on October 8, 2021, February 17, 2022, and September 12, 2022, the November 16, 2022 Declaration of Joshua A. Fields, and the Declaration of Janeth Antonio Re: Notice Procedures, on behalf of the Settlement Administrator, the pleadings and papers on file in this Action, and any other such information, evidence, and argument as the Court may consider. Defendants GEICO General Insurance Company and GEICO Indemnity Company do not oppose this motion.

Plaintiffs further note the following per Procedural Guidance for Class Action Settlements, Final Approval Rule 1, Class Members' Response, for each of the two settlement classes certified in the Court's July 28, 2022 Order Granting Preliminary Approval of Class Action Settlement, namely the Regulatory Fees Class and the Sales Tax Class (collectively referred to as the Settlement Class):

**Settlement Class**

The total number of members of the Settlement Class for whom Mail Notice was provided per the terms of ¶¶ 6-21 of the Settlement Agreement is 201,240. The total number of members of the Settlement Class for whom E-Mail Notice was provided per the terms of ¶¶ 6-21 of the Settlement Agreement is 182,116.

a. The number of undeliverable Mail Notices for the Settlement Class was 19,487. The number of undeliverable E-Mail Notices for the Settlement Class was 5,267.

(*See* Administrator Declaration)

b. The number of members of the Settlement Class who submitted claims by the November 11, 2022 deadline was 73,097 out of 201,240 total members of the Settlement Class, for an estimated claim

rate of 36.32% for the Settlement Class. Out of the 73,097 Claim Forms submitted, approximately 9,894 are still being processed.

c. The number of members of the Settlement Class who opted out by the October 27, 2022 deadline was 4 out of 201,240 total class members, for an opt-out rate of .0019% for the Settlement Class.

d. As of the date of this motion, neither Class Counsel nor the Settlement Administrator are aware of any members of the Settlement Class who objected to or commented on the Settlement in writing, pursuant to the process for such objections as set forth in ¶¶ 49-51 of the Settlement Agreement or otherwise.

(*See* Administrator Declaration; Declaration of Joshua A. Fields in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Fields Decl."), ¶ 3.

### **Sales Tax Class**

The total number of members of the Sales Tax Class for whom Mail Notice was provided per the terms of the Settlement Agreement is 9,637. The total number of members of the Sales Tax Class for whom E-Mail Notice was provided per the terms of ¶¶ 6-21 of the Settlement Agreement is 8,802.

a. The number of undeliverable Mail Notices for the Sales Tax Class was 1,283. The number of undeliverable E-Mail Notices for the Sales Tax Class was 249.

(*See* Administrator Declaration)

b. The number of members of the Sales Tax Class who submitted claims by the November 11, 2022 deadline to do so was 5,656 out of 9,637 total class members, for an estimated claim rate to date of 59% for the Sales Tax Class.

(*See* Administrator Declaration)

c. The number of members of the Sales Tax Class who opted out by the October 27, 2022 deadline to do so was 1 out of 9,637 total class members, for an estimated opt-out rate of .01% for the Sales Tax Class.

(*See* Administrator Declaration)

d. As of the date of this motion, neither Class Counsel nor the Settlement Administrator are aware of any members of the Sales Tax Class who objected to or commented on the Settlement in writing,

pursuant to the process for such objections as set forth in ¶¶ 49-51 of the Settlement Agreement or otherwise.

(*See* Administrator Declaration; Fields Decl., 3 ¶)

**Regulatory Fees Class**

The total number of members of the Regulatory Fees Class for whom Mail Notice was provided per the terms of the Settlement Agreement is 191,603. The total number of members of the Regulatory Fees Class for whom E-Mail Notice was provided per the terms of ¶¶ 6-21 of the Settlement Agreement is 173,314.

a. The number of undeliverable Mail Notices for the Regulatory Fees Class was 18,204. The number of undeliverable E-Mail Notices for the Regulatory Fees Class was 5,018.

(*See* Administrator Declaration)

b. The number of members of the Regulatory Fees Class who submitted claims by the November 11, 2022 deadline was 57,547 out of 191,603 total class members, for an estimated claim rate to date of 25 % for the Regulatory Fees Class.

(*See* Administrator Declaration)

c. The number of members of the Regulatory Fees Class who opted out by the October 27, 2022 deadline to do so was 3 out of 191,603 total class members, for an estimated opt-out rate of .0015 % for the Regulatory Fees Class.

(*See* Administrator Declaration)

d. As of the date of this motion, neither Class Counsel nor the Settlement Administrator are aware of any members of the Regulatory Fees Class who objected to or commented on the Settlement in writing, pursuant to the process for such objections as set forth in ¶¶ 49-51 of the Settlement Agreement or otherwise.

(*See* Administrator Declaration; Fields Decl., ¶ 3)

DATED: November 16, 2022

Respectfully submitted,

*/s/ Annick M. Persinger*
Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
(510) 254-6808
apersinger@tzlegal.com

Edmund A. Normand*
Jacob L. Phillips*
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

Michael Louis Kelly (CA Bar No. 82063)
Joshua A. Fields (CA Bar No. 242938)
**KIRTLAND & PACKARD LLP**
1638 South Pacific Coast Highway
Redondo Beach, CA 90277
Tel: (310) 536-1000 / Fax: (310) 536-1001
mlk@kirtlandpackard.com
jf@kirtlandpackard.com

Andrew John Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Ste 1205
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

Scott Edelsberg (CA Bar No. 330990)
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  HISTORY OF THE LITIGATION ................................................................... 4

    A.  Background ................................................................................................ 4

    B.  Litigation and Discovery History. ........................................................... 4

    C.  Terms of The Proposed Settlement ........................................................ 5

        1.  Class Member Benefit ................................................................. 5

        2.  Settlement Class Definitions ....................................................... 5

        3.  The Notice Reach and Claim Submissions Rates ...................... 6

    A.  The Strengths of Plaintiffs' Case and the Risks of Further Litigation ...................... 9

    B.  The Amount Offered in Settlement ......................................................... 9

    C.  The Extent of Discovery and the Status of the Proceedings ................. 10

    D.  The Experience and Views of Counsel ................................................ 11

    E.  The Presence of a Government Participant ........................................... 12

    F.  The Reaction of the Class ....................................................................... 12

III.  THE TEXTUAL RULE 23(e) FACTORS FAVOR APPROVAL ...................... 13

IV.  ISSUES RAISED BY THE COURT ............................................................... 15

    A.  The Claims-Made Structure of the Settlement Reflects a Necessary Compromise Made in Order to Settle the Litigation at this Relatively Early Stage .......................................................................... 16

    B.  Clear Sailing Provisions Are Not Inherently Problematic Because Courts Carefully Evaluate Fee Awards .................................................. 22

V.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .............. 23

VI.  CONCLUSION ................................................................................................ 25

**Cases**

*Abante Rooter & Plumbing v. Pivotal Payments*,
  2018 U.S. Dist. LEXIS 232054 (N.D. Cal. Oct. 15, 2018) ................................................ 14

*Alcantar v. Hobart Serv.*,
  Case No. 5:11-CV-01600 (C.D. Cal. Aug. 13, 2018) ..................................................... 22

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ..................................................................................... 16

*Amin v. Mercedes-Benz USA, LLC*,
  No. 1:17-cv-01701, 2020 U.S. Dist. LEXIS 167395 (N.D. Ga. Sep. 11, 2020) .................. 14

*Bodnar v. Bank of America*,
  No. 5:14-cv-03224-EGS (E.D. Pa.) ............................................................................... 20

*Braynen v. Nationstar Mortg., LLC*,
  2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) ...................................................................... 7

*Brna v. Isle of Capri Casinos Inc.*,
  2018 U.S. Dist. LEXIS 26662 (S.D. Fla. Feb. 20, 2018) ................................................. 13

*Carlotti v. Asus Comput. Int'l*,
  2020 WL 3414653 (N.D. Cal. June 22, 2020) ................................................................. 20

*Casey v. Citibank, N.A.*,
  2014 WL 4120599 (N.D. N.Y. Aug. 21, 2014) ................................................................ 18

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) .................................................................................... 8, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 8

*Cook v. Gov't Emples. Ins. Co.*,
  No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) ...... 13

*Cortez v. Viera Custom Chopping, Inc.*,
  No. 1:17-cv-01647-DAD-SKO, 2019 U.S. Dist. LEXIS 162454 (E.D. Cal. Sept. 20, 2019) ....... 23

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................................................... 12

*Doxey v. Cmty. Bank, N.A.*,
  No. 8:19-CV-919 (MAD/CFH) (N.D.N.Y.) ....................................................................... 20

*Evans v. Linden Research, Inc.*,
  No. C-11-1078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ...................................... 7

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2017 WL 4685536 (C.D. Cal. May 8, 2017) ..................................................................... 21

*Franco v. E-3 Sys.*,
  2021 WL 2333851 (N.D. Cal. June 8, 2021) .................................................................... 19

*Grace v. Apple, Inc.*,
   No. 17-CV-00551-LHK, 2021 U.S. Dist. LEXIS 66294, 2021 WL 1222193
   (N.D. Cal. Mar. 31, 2021) ...................................................................................................20

*Greco v. Ginn Dev. Co., LLC*,
   635 Fed. Appx. 628 (11th Cir. 2015) ...............................................................................12

*Hamilton v. SunTrust Mortg. Inc.*,
   No. 13-60749-CIV, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ...................................17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................4, 8, 12, 22

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................................................24

*Hawkins et al v. First Tenn. Bank, N.A.*,
   No. CT-004085-11 (Cir. Ct. Tenn.) ..................................................................................20

*Hendricks v. Starkist Co.*,
   2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .................................................................20

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..........................................................................................................19

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................................20

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ......................................................................................passim

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..............................................................................................18

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................................................10

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...............................................................................................7

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................................................20

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. October 25, 2016) ...............15

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   2021 WL 926706 (N.D. Cal. Mar. 4, 2021) ......................................................................19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   Case No. C-07-5944-JST, 2016 U.S. Dist. LEXIS 88665 (N.D. Cal. July 7, 2016) .........23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 4:19-cv-03768-HSG

*Jacobs v. Huntington Bancshares Inc.*,
　No. 11-cv-000090 (Ohio Ct. Common Pleas) ..............................................................20

*Joh v. Am. Income Life Ins. Co.*,
　No. 18-cv-06364-TSH, 2020 U.S. Dist. LEXIS 3808 (N.D. Cal. Jan. 9, 2020)..............14

*Johnson v. Community Bank, N.A.*,
　No. 12-cv-01405-RDM (M.D. Pa.) ............................................................................20

*Keil v. Lopez*,
　862 F.3d 685 (8th Cir. 2017) .........................................................................................7

*Kim v. Allison*,
　8 F.4th 1170 (9th Cir. 2021) .......................................................................................16

*Klier v. Elf Atochem N. Am., Inc.*,
　658 F.3d 468 (5th Cir. 2011) .......................................................................................17

*Kumar v. Salov N. Am. Corp.*,
　2017 WL 2902898 (N.D. Cal. July 7, 2017) ................................................................19

*Lagarde v. Support.com, Inc.*,
　Case No. C12-0609 JSC, 2013 U.S. Dist. LEXIS (N.D. Cal. March 26, 2013)............23

*Lealao v. Beneficial California, Inc.*,
　82 Cal. App. 4th 19 (2000). .......................................................................................19

*Lee v. Ocwen Loan Servicing, LLC*,
　2015 WL 5449813 (S.D. Fla. Sep. 14, 2015) ...............................................................18

*Linney v. Cellular Alaska P'ship*,
　C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997).....................................12

*Lopez v. JPMorgan Chase Bank, N.A.*,
　No. 1:09-MD-02036-JLK (S.D. Fla.).........................................................................20

*Lopez v. Youngblood*,
　No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sep. 1, 2011) ......21

*Love v. Rivendell II, Ltd., et al.*,
　Case No. 18-cv-03907-JST (EDL) (N.D. Cal. Mar. 11, 2019)....................................19

*McKnight v. Uber Techs., Inc.*,
　No. 14-cv-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) .............................8

*Mendoza v. Hyundai Motor Co.*,
　No. 15-cv-01685-BLF (N.D. Cal. Jan. 23, 2017) .........................................................22

*Molina v. Intrust Bank, N.A.*,
　No. 10-CV-3686 (Dist. Kan.) .....................................................................................20

*Montoya v. PNC Bank, N.A.*,
　2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) ...............................................................18

*Moody v. Charming Shoppes of Del., Inc.*,
　2009 WL 10699672, (N.D. Cal. Dec. 18, 2009) ...........................................................10

*Moore v. Verizon Commc'ns Inc.*,
No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)........................7

*Mulkey v. CSAA Ins. Exch.*,
Case No. 20-cv-08120-RS (N.D. Cal. Mar. 10, 2021) ....................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .............................................11, 12, 13

*Nelson v. Rabobank, N.A.*,
No. RIC 1101391 (Cal. Super. Ct.) .........................................................20

*Nitsch v. DreamWorks Animation SKG Inc.*,
2017 WL 2423161 (N.D. Cal. June 5, 2017).............................................19

*Richards v. Chime Fin.*,
Case No. 19-cv-06864, 2020 U.S. Dist. LEXIS (N.D. Cal. October 28, 2020) ......................22

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)..........................................10, 11, 12, 13

*Roth v. GEICO Gen. Ins. Co.*,
2018 WL 3412852 (S.D. Fla. June 14, 2018) .......................................9, 19

*Schuchardt v. Law Office of Rory W. Clark*,
314 F.R.D. 673 (N.D. Cal. 2016) ...........................................................23

*Schulte v. Fifth Third Bank*,
No. 09-cv-6655 (N.D. Ill.) ...................................................................20

*Sigler v. GEICO Cas. Co.*,
967 F.3d 658 (7th Cir. 2020) .................................................................9

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990)..............................................................17

*Swift v Bancorp South*,
No. 1:10-cv-00090-GRJ (N.D. Fla.) .......................................................20

*Sylvester v. Cigna Corp.*,
369 F.Supp.2d 34 (D. Me. 2005) ...........................................................7

*Tadepalli v. Uber Techs., Inc.*,
No. 15-cv-04348-MEJ, 2016 WL 1622881 (N.D. Cal., Apr. 25, 2016) ....................8

*Touhey v. United States*,
No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036 (C.D. Cal. July 25, 2011) ........7

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
309 F.3d 978 (7th Cir. 2002) ...............................................................18

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ...........................................................20

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..............................................................19

*West v. Circle K Stores, Inc.*,
   No. Civ-S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, (E.D. Cal. Oct. 20, 2006) ......................12

*Williams v. MGM-Pathe Communs. Co.*,
   129 F.3d 1026 (9th Cir. 1997)..........................................................................................................................20

*Wilson v. EverBank*,
   No. 14-CIV-22264-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3, 2016)..............14

*Wilson v. Tesla, Inc,*
   No. 17-cv-03763-JSC, 2019 U.S. Dist. LEXIS 112866 (N.D. Cal. July 8, 2019) ........................................15

**Other Authorities**

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, Federal Trade Commission,
   September 2019 ...................................................................................................................................................8

McLaughlin on Class Actions § 6:7 (12th ed.) ...........................................................................................................3

**Rules**

*Ewert v. eBay, Inc.*,
   No. 07-cv-02198 RMW, 2010 WL 426259 (N.D. Cal. Oct. 25, 2010) ...........................................................24

FED. R. CIV. P. 23(a) .................................................................................................................................................24

FED. R. CIV. P. 23(b) .................................................................................................................................................24

FED. R. CIV. P. 23(e) .............................................................................................................................................passim

**Regulations**

Cal. Code of Regs. § 2695.8(b)(1) ..............................................................................................................................4

## I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure, Rule 23(e), Plaintiffs Cindy Ventrice-Pearson, Poonam Subbaiah, and Kristen Perez (collectively, "Plaintiffs") respectfully request that this Court grant final approval of the proposed class action Settlement Agreement and exhibits thereto ("Settlement Agreement"[1]), attached as Exhibit 1 to the October 8, 2021 Declaration of Jacob Phillips in support of Motion for Preliminary Approval of Class Action Settlement ("Phillips Decl.") (Docket Entry (Dkt.) 139-4), and incorporated herein by reference, and enter an order granting final approval of the settlement and a final judgment.

The proposed Settlement Agreement is a class action settlement agreement between Defendants GEICO General Insurance Company, GEICO Indemnity Company, and their related entities (together "Defendants" or "GEICO") and Plaintiffs and the Settlement Classes.[2] On July 28, 2022, this Court issued its Order Granting Preliminary Approval of Class Action Settlement, finding that the Settlement Agreement is "fair, reasonable, and adequate." Dkt. 161 at 16.

Since that time, Notice has been disseminated per the Agreement and a significant percentage of the Class Members have submitted claims—reflecting an overwhelmingly positive reaction from the Class. *See* Declaration of Janeth Antonio Re: Notice Procedures ("Administrator Decl.") The Mail Notice to the Regulatory Fees Class Members had a 90% success rate while the Mail Notice to the Sales Tax Class Members had a 86% success rate, thus satisfying due process, even without the highly successful E-Mail Notice campaign. *Id.*, at ¶¶ 6-13. Only four out of the total 201,240 Settlement Class Members opted out of the Settlement Class, and as of the filing of this motion, neither Class Counsel nor the Settlement Administrator are aware of a single objection or comment on the Settlement Agreement in writing, pursuant to the process for such objections as set forth in ¶¶ 49-51 of the Settlement Agreement. *See* Administrator Decl., ¶¶ 18-19;

---

[1] All capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement. (Dkt. 139-4)

[2] On September 29, 2021, the parties in *Kristen Perez v. GEICO Indemnity Company*, Case No. 4:20-cv-07436-HSG ("*Perez* Action"), jointly moved to consolidate the *Perez* Action with the instant case, and the joint consolidation motion was granted and the cases consolidated for purposes of approval and implementation of the global settlement on October 26, 2021. (Dkt. 142)

Declaration of Joshua A. Fields in Support of Final Approval of Class Action Settlement ("Fields Decl."), ¶ 3.

Accordingly, because the reaction of the Class Members has been overwhelmingly positive and because the proposed Settlement Agreement provides substantial recovery for Settlement Class Members, in the face of significant risks of litigation, the Settlement is fair, reasonable, adequate, and meets all relevant approval criteria for final approval.

In that regard, under the Settlement Agreement, members of the Sales Tax Class who made a valid claim will receive the full amount of sales tax alleged to be owed to total-loss insureds in the operative Complaints. On the issue of Sales Tax, the Sales Tax Class Members who submit a valid claim could have done no better had Plaintiffs obtained class certification, defeated summary judgment, and prevailed at trial. The amount of the recovery for Sales Tax Class Members is also sizeable— as Sales Tax Class members who submitted valid claims will be paid an average $2,051.98. Indeed, evidencing a compelling positive reaction from the Sales Tax Class, while an incredible estimated **59%** (at least) have submitted claims, none have objected and only one has opted out.  Administrator Decl., ¶¶ 17-19.

In addition, all members of the Regulatory Fees Class (which includes some Class Members who are also in the Sales Tax Class and some Class Members who are only in the Regulatory Fees Class) who made a valid claim will receive a $6.88 payment. With respect to the Regulatory Fees claim, GEICO paid a prorated fee amount for most of the applicable time period in accordance with California Insurance Code Regulations but did not include the month during which the accident occurred. Thus, for example, if the accident occurred during the sixth month of a yearly registration period, GEICO only paid 5/12ths of the registration fees amount. Under Plaintiffs' theory, however, GEICO should have included the full month during which the accident occurred. As such, using the foregoing example, GEICO should have included the full month during which the accident occurred and paid 6/12ths of the registration fees amount, instead of 5/12ths. The average monthly registration fee amount is $13.76; thus, the $6.88 amount represents 50% of the maximum potential damages that could have been awarded to the Regulatory Fees Class at trial for the last month during which the accident occurred. The reaction of the Regulatory Fees Class has also been

exceedingly positive, with an estimated **30**% (at least) submitting claims, none objecting and three opting out. Administrator Decl., ¶¶ 17-19.

Indeed, given the vigorous combined claims rate to date of an estimated **36%** (at least) for the Settlement Class, which is also in part due to Class Counsel's successful negotiation of a user-friendly claims submission process and multiple direct reminder notices, the actual estimated monetary benefit obtained of $12,041,118 to date for the Settlement Class is substantial.[3] This positive reaction from the Class Members weighs heavily in favor of finally approving the Settlement achieved in this case.

Importantly, the Settlement Agreement also provides substantial prospective relief requiring GEICO, going forward, to include the full applicable sales tax necessary to purchase a replacement vehicle for leased-vehicle insureds (based on the benefit for Sales Tax Class members, this payment will benefit such insureds on average in the estimated amount of $2,058.91), and to calculate the remaining term of registration fees on a daily basis, rather than the monthly basis GEICO previously used (which will benefit GEICO insureds by an estimated average of $6.88 per claim).[4]

Moreover, experienced Class Counsel vigorously litigated the claims for nearly two years before settlement, and investigated the issues in this case through discovery. Mediation sessions and protracted mediation discussions were overseen by the Mediator Rodney Max ("Mediator"), a well-respected and experienced mediator *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."). Class Counsel was thus situated to act intelligently in the arm's length settlement negotiations, reaching the best possible relief for the Settlement Class.

For these reasons, and the reasons below, the Settlement Agreement, along with the robust and comprehensive Notice and significant available benefit to the Settlement Class, is substantively fair, adequate,

---

[3] The actual amount will be far higher, as the Settlement Administrator has yet to process approximately 9,894 claims, although it is possible some may be duplicates. Administrator Decl., ¶17.

[4] Class Counsel have estimated the total settlement value, assuming one year of prospective relief, is $28.73 million, if three years of prospective relief is utilized, the total settlement value would be $38.33 million, or $47.93 million if five years is utilized. Declaration of Jacob Phillips in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Phillips Decl."), Dkt. 139-3 at ¶ 85.

and reasonable and easily satisfies due process requirements, as articulated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) and FED. R. CIV. P. 23(e)(2). At this stage, the substantial reach of the Court-approved Notice and Settlement Class response make clear the Settlement Agreement should be finally approved, and final judgment entered.[5]

## II. HISTORY OF THE LITIGATION

### A. Background.

This case involves allegations that GEICO breached private passenger auto insurance policies issued to Plaintiffs and similarly-situated insureds by failing to properly pay the full amount of sales tax (as to leased vehicles) and regulatory fees (as to all vehicles) owed to insureds whose vehicles were determined to be total losses. Plaintiffs allege that GEICO's insurance policies define actual cash value ("ACV") as the "replacement cost" of the auto, less depreciation, and therefore require payment of the full amount of sales tax and regulatory fees applicable to the purchase of a replacement vehicle as part of ACV upon the total loss of a covered auto. Plaintiffs allege that GEICO's practices of failing to include sales tax for leased-vehicle insureds and paying an improper amount of regulatory fees for all vehicles in ACV payments constitute a breach of contract.[6] Phillips Decl., Dkt. 139-3 at ¶¶6-13. This class action seeks underpaid sales tax and regulatory fees on behalf of GEICO insureds in California.

### B. Litigation and Discovery History.

This consolidated class action has been hotly contested at every stage. The Parties litigated multiple motions to dismiss, multiple motions to compel appraisal, and multiple motions related to consolidation and

---

[5] Pursuant to the Court's order granting preliminary approval, the Parties conferred and concurrently file a joint proposed order and joint proposed judgment, for consideration at the hearing. *See* Dkt. 161 at 16. Additionally, Plaintiffs filed their Motion for Award of Attorneys' Fees, Costs, and Service Award on September 12, 2022, which respectfully requests service awards for the class representatives in the following amounts: $15,000 to Plaintiff Subbaiah, $10,000 to Plaintiff Ventrice-Pearson, and $5,000 to Plaintiff Perez, and to award Settlement Class Counsel's attorney's fees and costs in the total amount of $3,900,000.00, also to be heard on December 15, 2022. Dkt. 164.

[6] More specifically, Plaintiffs allege that, assuming Cal. Code of Regs. § 2695.8(b)(1) permits GEICO to calculate registration fees based on the "remaining term of the loss vehicle's current registration," such proration should apply to a given month at its conclusion (rather than, as GEICO contends, its outset) or that, at minimum, the "remaining term" should be calculated on a daily (not monthly) basis. Phillips Decl., Dkt. 139-3 at ¶¶11-13.

transfer of what was originally three different cases, prepared extensive briefing on class certification, and prepared and submitted multiple expert reports. Phillips Decl., Dkt. 139-3 at ¶¶ 18-19. Plaintiffs deposed multiple corporate-representative and adjusters of GEICO, as well as GEICO's expert witnesses, and GEICO deposed the class representatives and Plaintiffs' expert witnesses. *Id.*, at ¶¶ 14-15. Class Counsel reviewed thousands of pages of documents GEICO produced, as well as third-party subpoena documents and numerous interrogatory responses. Most of all, this case is extremely data intensive, requiring Class Counsel to meticulously review spreadsheets with, collectively, millions of lines of data involving over 220,000 total-loss claims. *Id.*, at ¶¶ 15-17, 38.

## C. Terms of The Proposed Settlement.

### 1. Class Member Benefit

In the Settlement Agreement, GEICO agreed to, upon submission of a valid claim: (1) make payment of 100% of the sales tax at the applicable state and county rate at the time of loss to members of the Sales Tax Class, i.e. all insureds who leased their vehicles (and thus were not paid sales tax as part of their ACV total-loss payment); (2) make payment of $6.88, representing approximately one-half of a monthly regulatory fees payment, to all Settlement Class Members; and (3) moving forward, absent a clarifying change in statutory law or a contrary opinion by the Ninth Circuit or California appellate court, include sales tax at the applicable rate to leased-vehicle insureds, and calculate regulatory fees as a daily proration for all qualifying insureds, rather than subtracting the monthly amount at the beginning of each month. Phillips Decl., Dkt. 139-3 at ¶¶ 27-28, 32. This is an impressive result for Settlement Class Members. Indeed, on average, Sales Tax Class members who submitted valid claims will be paid $2,051.98. *Id.* at ¶ 30.

### 2. Settlement Class Definitions

In its preliminary approval order, the Court provisionally certified two Settlement Classes (collectively referred to as the "Settlement Class"), based on the Settlement Agreement's definitions, as follows:

**Regulatory Fees Class**:

> All individual insureds under a GEICO California policy covering a vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a comprehensive or collision first-party claim, with GEICO General from June 27, 2015 with GEICO Indemnity from October 23, 2016, and with

GEICO Casualty and Government Employees from June 30, 2017, through the date of a preliminary approval Order, that was determined by GEICO to be a covered claim and where GEICO determined that the vehicle was a total loss, where the insured did not retain the salvage vehicle.

**Sales Tax Class**:

All individual insureds under a GEICO California policy covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party comprehensive or collision claim, with GEICO General from June 27, 2015, GEICO Indemnity from October 23, 2016 and GEICO Casualty and Government Employees from June 30, 2017, through August 27, 2020, that was determined by GEICO to be a covered claim and where GEICO determined that the vehicle was a total loss, where the insured did not retain the total-loss vehicle and where GEICO did not include full ACV Sales Tax in the total-loss claim payment(s).

Dkt. 161, 3-4. Excluded from the provisional Class are (1) GEICO, all present or former officers and/or directors and/or employees of GEICO, the Neutral Evaluator, Class Counsel, and any Judge of this Court, and (2) claims for which GEICO received a valid and executed release; and (3) individual claims for first-party property damage for which the process of appraisal or arbitration or litigation has been completed or initiated at the time this Settlement Agreement is filed. Dkt. 161, 4.

### 3. The Notice Reach and Claim Submissions Rates.

After the Court issued its preliminary approval order on July 28, 2022, the Parties complied with the order and worked with the Settlement Administrator to implement the Court-approved Notice plan.[7] *See* Administrator Decl., ¶¶ 6-13, Exs. C-F. Multiple Mail Notices, which included simple, easy to understand, detachable, and postage-prepaid claim forms for submission, were sent to 201,240 Settlement Class Members, with a 90% success rate to the Regulatory Fees Class Members and a 86% success rate to Sales Tax Class Members. *Id*, ¶¶ 6-9. Multiple E-Mail Notices, each of which enabled class members to "click through" to submit a claim on a prefilled claim form on the settlement website, were also sent to 182,116

---

[7] The Court-approved Notice plan provided for individual, direct mailed Notice, two email Notices, and a long-form Notice accessible via a website, along with a 24/7 toll-free telephone line available to answer questions from Settlement Class Members, which the Administrator implemented. Dkt. 139-4, ¶¶8-21; Administrator Decl. ¶¶ 6-13; Dkt. 161 at 5. The Notices also inform Settlement Class Members of all relevant facts: the nature of the claims, the benefits available, the released claims, and the processes for objecting, requesting exclusion, and submitting claims. Dkt. 139-4, ¶¶8-21; Administrator Decl. Exs. C-K.

Settlement Class Members, with a 97% success rate for the Email Notice to both Regulatory Fees Class Members and Sales Tax Class Members, and a 99% success rate to both for the Reminder Email Notice. *Id.*, ¶¶ 10-13; Phillips Decl., Dkt. 139-3 at ¶33. The Notice provided specific information to Settlement Class Members about how to request exclusion from the Settlement Class or object to the Settlement, if they wished to do so. Administrator Decl., Exs. C-K. Phillips Decl., Dkt. 139-3 at ¶ 34; *see Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence terms of settlement are fair and reasonable).

The Class Members' response to the Notice was highly favorable, as there were only four opt-outs out of 201,240 Settlement Class Members and not a single objection or comment received. Administrator Decl. ¶¶ 18-19; Fields Decl. at ¶ 3. The claims rate of the Settlement Class is also substantial. Pursuant to guidance from the Court, Plaintiffs estimated in the preliminary approval motion an expected claims rate of 25-35%, consistent with projections by the Settlement Administrator, as well as the rate in similar total-loss litigation in Florida. Supplemental Declaration of Jacob Phillips in Support of Motion for Preliminary Approval of Class Action Settlement ("Supp. Phillips Decl."), Dkt 150, at ¶¶ 33-39.

The total estimated claims rate of 36% to date has already exceeded the upper level of Plaintiffs' estimate, and for the Sales Tax Class is currently estimated at an astounding 59%. Administrator Decl., ¶ 17. This is the highest claims rate in a consumer class action of which the undersigned are aware—and is far higher than occurred in class settlements courts found to be fair and reasonable. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where 1,183,444 of 35 million class members—less than 3.4%—filed claims); *Evans v. Linden Research, Inc.*, No. C-11-1078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014) (4.3% claims rate); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (3% claims rate); *Touhey v. United States*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (2% claims rate); *see also Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("[A] claim rate as low as 3 percent is hardly unusual in consumer class actions"); *Sylvester v. Cigna Corp.*, 369 F.Supp.2d 34, 52 (D. Me. 2005) ("Claims-made settlements regularly yield response rates of 10 percent or less."); *Consumers and Class Actions: A*

*Retrospective and Analysis of Settlement Campaigns*, Federal Trade Commission, September 2019, at 11 (median claims rate is 9% and weighted mean (cases weighted by the number of notice recipients) is 4%). This extraordinary result strongly favors approval of the proposed Settlement.

### III.   THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions. *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). The terms of a proposed class action settlement must be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *Hanlon*, 150 F.3d at 1026. "The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement." *Tadepalli v. Uber Techs., Inc.,* No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal., Apr. 25, 2016). The court also independently examines the settlement's fairness under Rule 23(e) and the Ninth Circuit factors articulated in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanlon.*, 150 F. 3d at 1026. However, the Court does not review whether the settlement is ideal or even the best outcome, but instead analyzes whether it is fair, lacks collusion, and is consistent with the plaintiff's fiduciary obligations to the Settlement Class. *Id.*, 150 F.3d at 1027.

The Ninth Circuit. identified the following factors for determining whether a proposed class action settlement is fair, reasonable, and adequate: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the litigation and trial; (4) the amount offered in settlement; (5) the extent of discovery completed and stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members. *Hanlon*, 150 F.3d at 1027; *see also Churchill Village, L.L.C.*, 361 F.3d at 575; *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).

These factors all support final approval of the Settlement, as addressed herein. Plaintiffs' and the Settlement Classes' chances of success are uncertain, continuing litigation would entail significant risk and expense, the benefits conferred through the Settlement are significant, which occurred only after extended

discovery, production (and analysis) of thousands of documents and millions of lines of data, such that Class Counsel's and Plaintiffs' opinions of the Settlement are based on complete and comprehensive knowledge of the claims and the relevant documents and data. Phillips Decl., Dkt. 139-3 at ¶¶ 15-24, 70-74, 92-93.

### A. The Strengths of Plaintiffs' Case and the Risks of Further Litigation

This settlement provides final resolution and significant relief—making available nearly 100% of potential damages to the Sales Tax Class, 50% to the Regulatory Fees Class for claims that have uncertain prospects for success. Phillips Decl., Dkt. 139-3 at ¶ 29. As discussed above, no California court—state or federal—has held that insureds who lease a vehicle are entitled, upon an insurer's total loss determination, to full payment of sales tax notwithstanding that the sales tax necessary to lease a vehicle is different—and less—than sales tax necessary to purchase a vehicle. One federal court granted a motion to dismiss similar claims. *See* Order Granting Motion to Dismiss, *Mulkey v. CSAA Ins. Exch.*, Case No. 20-cv-08120-RS (N.D. Cal. Mar. 10, 2021) (Dkt. 28). There is a split in non-California courts on the issue: The Seventh Circuit, analyzing identical GEICO policy language, affirmed dismissal of claims for sales tax and regulatory fees, *Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020), while a Southern District of Florida court ruled that sales tax and regulatory fees are mandatory parts of the replacement cost and must be included in ACV under the same GEICO policy language, *Roth v. GEICO Gen. Ins. Co.*, 2018 WL 3412852 (S.D. Fla. June 14, 2018). Plaintiffs believe they have meritorious claims and would ultimately prevail, but there is clearly significant risk this Court and/or the Ninth Circuit would rule against them. Such risk strongly supports the proposed Settlement, which provides immediate certainty of valuable benefit to the Settlement Class. Phillips Decl., Dkt. 139-3 at ¶ 23.

### B. The Amount Offered in Settlement

As part of the Settlement, GEICO agreed to (1) make payment of 100% of the sales tax at the applicable state and county rate at the time of loss to Sales Tax Class members, i.e., all insureds who leased their vehicles (and thus were not paid sales tax as part of their ACV total-loss payment), who submit a valid claim; (2) make payment of $6.88, representing approximately one-half of a monthly regulatory fees payment, to all Regulatory Fees Class Members who submit a valid claim; and (3) moving forward, absent a clarifying

change in statutory law or a contrary opinion by the Ninth Circuit or California appellate court, include sales tax at the applicable rate to leased-vehicle insureds, and calculate regulatory fees as a daily proration for all qualifying insureds, rather than subtracting the monthly amount at the beginning of each month.[8] Phillips Decl., Dkt. 139-3 at ¶¶ 27-28, 32. This is an impressive result for Settlement Class Members. Indeed, on average, Sales Tax Class members who submitted valid claims will be paid $2,051.98, which is based on an average vehicle value of $23,318.00 and an 8.8% average sales tax rate. *Id.*at ¶ 30; Dkt. 161 at 15. Due to the amount GEICO offered in settlement and the vigorous Settlement Class response, the actual estimated cash benefit obtained to date of $12,041,118 is substantial—and will only increase after the Settlement Administrator processes the pending 9,894 claims. (Administrator Decl. ¶ 17)

## C. The Extent of Discovery and the Status of the Proceedings

In evaluating this factor, the Court determines whether the Parties had "a clear view of the strengths and weaknesses of their cases," and whether "the Plaintiffs [thus] had sufficient information to make an informed decision about the Settlement" prior to agreeing to it. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Before the Parties entered into the Settlement Agreement, significant discovery was completed, including written discovery, voluminous document productions, and depositions of numerous key witnesses. Plaintiffs deposed multiple corporate-representative and adjusters of GEICO, as well as GEICO's expert witnesses, and GEICO deposed the class representatives and Plaintiffs' expert witnesses. Phillips Decl., Dkt. 139-3 at ¶¶ 15-17, 43. Class Counsel reviewed thousands of pages of documents GEICO produced, as well as third-party subpoena documents and numerous interrogatory responses. *Id.*, ¶¶ 15-16. Most of all, this case is extremely data intensive, requiring Class Counsel to meticulously review spreadsheets with, collectively, millions of lines of data involving over 220,000 total-loss claims. *Id.*, ¶ 16, 38. Finally, the Parties fully briefed class certification and the Court heard oral argument on the matter, which was pending an Order

---

[8] The release in the Settlement Agreement is also narrowly tailored to provide this relief to Settlement Class members without precluding other potential claims, and it is thus fair for all Settlement Class Members. *See Moody v. Charming Shoppes of Del., Inc.*, 2009 WL 10699672, at *17 (N.D. Cal. Dec. 18, 2009) (a release that is "narrowly tailored" is indicative of the fairness of a proposed settlement).

from this Court at the time settlement was reached. The Parties' legal and factual positions had been extensively briefed during the motions to dismiss and fully-briefed class certification motion. The Parties also exchanged relevant information prior to and during the mediation sessions and continuing settlement discussions thereafter. Phillips Decl., Dkt. 139-3 at ¶¶ 17-19. Given the briefing to date, the discovery conducted, and the exchange of information and views during mediation, Class Counsel and Plaintiffs "certainly [had] a clear view of the strengths and weaknesses of their cases." *Rodriguez*, 563 F.at 967. Thus, this factor supports final approval of the Settlement Agreement.

### D. The Experience and Views of Counsel

In assessing the adequacy of a settlement's terms, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). When evaluating the proposed settlement, the trial court, absent fraud or collusion, should be hesitant to substitute its own judgment for counsel's. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

Class Counsel's experience suggests the result is a strong result for the proposed Settlement Class and warrants the Court's approval. Class Counsel have extensive experience prosecuting consumer class actions and cases involving total vehicle loss claims and believe the settlement in this case is fair, reasonable, and adequate. [9] *See* Phillips Decl., Dkt. 139-3, ¶¶ 70-85; 9/12/22 Phillips Decl., Dkt. 164-3, ¶¶ 41-54; 9/12/22 Persinger Decl., Dkt. 164-1, ¶¶ 25-41; 9/12/22 Fields Decl., Dkt. 164-4, ¶¶ 19-25; 9/12/22 Edelsberg Decl., Dkt. 164-5, ¶¶ 3-10; 9/12/22 Shamis Decl., Dkt. 164-2, ¶¶ 5-15. Class Counsel also possess

---

[9] Class Counsel believe the Settlement is an excellent result and in the best interests of Settlement Class Members given all pertinent factors, including: (1) the complexity, expense, and likely duration of continuing litigation; (2) the benefits conferred upon the Class; (3) complicated class certification and merits-based issues—both legal and factual—that remained either at the trial level or, ultimately, on appeal; (4) the likelihood of success is uncertain, for reasons stated above. Phillips Decl., Dkt. 139-3 at ¶¶ 70-74, 92. Class Counsel's opinion is based on extensive review of the complete production of all documents and spreadsheets and perhaps the most knowledge of issues and relative strengths and weaknesses of total-loss claims of any attorneys in the country. *Id.* at ¶¶ 92-93

significant institutional knowledge of GEICO's practices and processes, as well as the relative risks of litigation versus settlement benefits. Phillips Decl., Dkt. 139-3 at ¶¶ 15-17, 92. Class Counsel's support for the proposed settlement confers a presumption of correctness. *See Linney v. Cellular Alaska P'ship*, C-96-3008 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd* , 151 F.3d 1234 (9th Cir. 1998) ("involvement of experienced class action counsel and the fact [] the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption [] the agreement is fair."); *West v. Circle K Stores, Inc.*, No. Civ-S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at * 17-18 (E.D. Cal. Oct. 20, 2006) ("[w]ith regard to class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases such as these."); *see also Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 632 (11th Cir. 2015) ("[A]bsent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel'") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, this factor supports final approval of the Settlement Agreement.

### E. The Presence of a Government Participant

The Ninth Circuit has acknowledged that where a class "does not have the benefit […] of previous litigation between the defendant[] and the government" and a number of "serious hurdles" remain that may prolong the litigation, this factor favors approval of the settlement. *Rodriguez*, 563 F.3d at 965, (quoting *Hanlon*, 150 F.3d at 1020). Here, no governmental agency had previous litigation against GEICO that may have benefitted the Settlement Class. This lawsuit was brought solely based on Class Counsel's and Plaintiffs' investigations. *See, e.g.,* Phillips Decl., Dkt. 139-3 at ¶¶ 92-93; 9/12/22 Persinger Decl., Dkt. 164-1, ¶ 3; 9/12/22 Fields Decl., Dkt. 164-4 at ¶ 3; Subbaiah Decl., Dkt. 164-6 at ¶¶ 3-14.

### F. The Reaction of the Class

The final factor examines class members' response to the proposed Settlement Agreement. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-529. Here, Settlement Class Members were clearly advised of the right to object to or opt out of the Settlement. Administrator Decl., Exs. C-K. As set forth above, only four out of the total 201,240 Settlement Class Members opted out of the Settlement Class by the October 27,

2022 deadline for opt-outs and objections, and not a single written objection or comment on the Settlement Agreement has been submitted. *See* Administrator Decl., ¶¶ 18-19; Fields Decl., ¶ 3. It is well-settled that "[t]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-529; *see, e.g., In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *Churchill Vill., L.L.C. v. GE*, 361 F.3d at 577 (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez*, 2007 WL 2827379 at *10 (favorable class reaction found where 54 of 376,301 class members objected). Here, the exceptionally robust claim rates, the extremely low number of opt-outs and the complete absence of any objections shows an overwhelmingly favorable reaction from the Settlement Class which strongly supports a finding it is fair, adequate, and reasonable.[10]

## III.   THE TEXTUAL RULE 23(e) FACTORS FAVOR APPROVAL

In 2018, Fed. R. Civ. P. 23(e)(2) was amended to "add the textual factors addressing the adequacy of the terms of a Settlement Agreement[,]" which were meant to highlight the "central concerns" of Rule 23 but not to "displace the various circuits' governing law on approval of class action settlements." *Cook v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *16 (M.D. Fla. Jun. 22, 2020). The Rule 23(e)(2) factors also weight in favor of approval here.[11]

First, "whether the agreement was negotiated at arm's length" favors settlement. *See* Fed. R. Civ. P. 23(e)(2)(B). As noted above, the settlement occurred under the oversight of Rod Max, a well-respected mediator. *See Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."); *Wilson v. EverBank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 15751, at

---

[10] The vigorous estimated claims rates to date for both the Sales Tax Class (59%) and Regulatory Fees Class (30%) also demonstrate the positive response and support for the Settlement from the Settlement Class. Administrator Decl., ¶ 17.

[11] Several of the factors overlap with *Hanlon*. As such, Plaintiffs only address the Rule 23 factors that do not overlap with *Hanlon*.

*22-23 (S.D. Fla. Feb. 3, 2016) (characterizing Rodney Max as a "nationally renowned mediator" whose involvement demonstrated arm's length nature of the settlement and weighed in favor of approval). Mr. Max's involvement is strong evidence that the Settlement Agreement was achieved only through arm's length negotiations. *See Joh v. Am. Income Life Ins. Co.*, No. 18-cv-06364-TSH, 2020 U.S. Dist. LEXIS 3808, at *22 (N.D. Cal. Jan. 9, 2020).

Second, the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" weighs in favor of approval. See FED. R. CIV. P. 23(e)(2)(C)(ii). The Advisory Committee explained that courts should take note of whether the claims submission process is "unduly demanding." FED. R. CIV. P. 23(e)(2)(C), Committee Notes on Rules - 2018 Amendment. This factor also favors approval because the claims' process, far from being "unduly demanding," was in fact extremely simple, streamlined, and straightforward. GEICO extracted information from its claim records to pre-fill the claim forms, and, to submit a valid claim, Class Members were required merely to sign an attestation confirming the prefilled information was correct or to update their contact information, and then to drop the postage-prepaid claim form in the mail. This is even simpler than claiming process in other cases that courts found to be reasonable and not overly burdensome. *See Abante Rooter & Plumbing v. Pivotal Payments*, 2018 U.S. Dist. LEXIS 232054, at *24 (N.D. Cal. Oct. 15, 2018) (approving claiming process where claims were not pre-filled and thus class members were required to provide their "name, physical address, email address, contact telephone number, the telephone number that received the call, and provide a signature").

Third, the proposed Settlement Agreement treats Class Members equitably, which also favors approval. See FED. R. CIV. P. 23(e)(2)(D). Here, every Regulatory Fees and Sales Tax Class Member is treated equitably because they received the same notice and the same claim forms; moreover, every Regulatory Fees Class Member received payment of $6.88 and every Sales Tax Class Member received the applicable percentage of their vehicle's underlying value. *See Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701, 2020 U.S. Dist. LEXIS 167395, at *6 (N.D. Ga. Sep. 11, 2020) (class members treated equitably under Rule 23(e)(2)(D) because Settlement provided "same sliding scale of reimbursement" to all class members). Moreover, the scope of the release is extremely narrow and is tailored to the precise claims for which GEICO

is providing relief and it is identical as to all Class Members. *See* Rule 23(e)(2)(D), Committee Notes on Rules - 2018 Amendment (instructing courts to consider the extent to which "the scope of the release may affect class members in different ways").[12]

## IV. ISSUES RAISED BY THE COURT

While in its preliminary approval order, the Court recognized that the Settlement was a "significant result[]," Dkt. 161 at 12, the Court also raised three potential issues: (1) the reasonableness of Class Counsel's requested attorneys' fees award, which the Court indicated would be "evaluated in light of the actual benefit to the class and class counsel's lodestar"; (2) GECO's agreement not to oppose the request for attorneys' fees, costs, and incentive awards, and (3) "the functional equivalent of a reversion" due to the claims-made nature of the proposed Settlement. Dkt. 161 at 12.

Numerous courts have granted final approval of class action settlements despite initially seeing possible signs of collusion or potential conflicts of interest, i.e., the *Bluetooth* factors, which are not dispositive. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 6248426 at *43 (N.D. Cal. October 25, 2016) ("Even if all three signs are present, courts may still find that a settlement is reasonable… the district court may find the settlement reasonable notwithstanding the presence of all three *Bluetooth* factors."; *Wilson v. Tesla, Inc,* No. 17-cv-03763-JSC, 2019 U.S. Dist. LEXIS 112866 at * 28 (N.D. Cal. July 8, 2019) (granting final approval despite presence of "warning signs" under *Bluetooth*, where court found "settlement did not result from, nor was influenced by, collusion.") This is especially true where all other relevant factors support final approval.

Here, even with the three potential issues present, the Settlement Class's terrific response to the Settlement Agreement supports a finding that it is fair, reasonable, and adequate, and that the attorneys' fees request is reasonable in light of the actual recovery by the Class, whether the Defendant agreed to oppose it or not. "The presence of these three signs is not a death knell-but when they exist, 'they require[] the district court to examine them …. develop the record to support its final approval decision,' and thereby

---

[12] FED. R. CIV. P. 23(e)(3) requires the Parties to inform the Court of "any agreement made in connection with the proposal." There are no such agreements other than those set forth in the Settlement Agreement.

'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Kim v. Allison*, 8 F.4th 1170, 11 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)).

### A. The Claims-Made Structure of the Settlement Reflects a Necessary Compromise Made in Order to Settle the Litigation at this Relatively Early Stage

The claims-made structure here does not undermine the Settlement's fairness. Class Members have responded with overwhelming approval to this structure, which provides them with significant benefits—an average of $2,051.98 in full compensation for the Sales Tax Class, and $6.88 in compensation to the Regulatory Fees Class. These significant benefits, which would be eliminated if this Settlement is not approved, easily distinguish this case from *Bluetooth* where class members received mere pennies.

In addition, as Plaintiffs have noted, the estimated claims rate in this case to date is vigorous as 36% of Settlement Class Members have submitted claims, with the Sales Tax class submitting claims at an impressive estimated rate of 59%. That means, that differently than Bluetooth where the fees request dwarfed the meager amount being awarded to those class members, the total monetary benefit claimed to date that will be dispensed to the Class Members is **$12,041,118** —and that's without including any of the monetary benefit achieved with the injunctive relief provided for under the Settlement. Administrator Decl., ¶ 17. Since this monetary benefit will only be awarded if the Settlement is approved, this significant amount weighs heavily in favor of granting final approval.

Plaintiffs acknowledge that when considering the total amount made available to Class Members in a claims-made deal, the claims-made structure of the Settlement could be viewed, as "the functional equivalent of a reversion because Defendant will only pay for those class members who submit valid claims." Dkt. 161 at 12.

It is worth noting, however, that here, the amount currently estimated that will be awarded to Class Members is $12,041,118 —a significant amount on its own without any consideration of the total amount made available under the claims-made structure of the settlement. Further, this settlement made available 100% of sales tax owed for members of the Sales Tax Class and an estimated 50% of the monthly registration fees for members of the Regulatory Fees Class if Plaintiffs' daily pro-ration theory had been accepted at trial.

Additionally, the requested attorneys' fees, costs, and service awards are above and beyond the recoverable monetary benefits made available to Class Members, and in no way reduce the recovery.

Moreover, given GEICO's position it would not settle absent a claims-made structure, as discussed below, the settlement structure was a necessary compromise and Class Counsel entered into based on their expectation that there would a high claims rate that would result in a sizeable total benefit to the Class. 2/17/22 Supp. Phillips Decl., Dkt. 150 at ¶¶ 33-39 *cf.* Administrator Decl., ¶ 17. As Class Counsel predicted, a sizeable actual monetary benefit estimated to be claimed to date of $12,041,118 has been obtained by Settlement Class Members who had uncertain prospects at class certification, summary judgment, and trial.[13] Administrator Decl., ¶ 17; Phillips Decl., Dkt. 139-3 at ¶ 30. This is not a case where a plaintiff and class counsel settled claims for pennies on the dollar, where redistribution would simply mean that some class members receive something closer to their potential damages. Rather, redistribution would inevitably result in insureds who have already been fully indemnified receiving more than the amount to which they are entitled under the contract.

Additionally, the question of proper distribution of unclaimed funds depends significantly on the underlying purpose giving rise to the cause of action. Even following a litigated judgment, "reversion to the defendant may be appropriate when deterrence is not a goal of the statute or is not required by the circumstances." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). Here, there is no statute at all, but rather a breach of contract—and in such circumstances, one jurisprudential view is that defendants have due process and property rights to any unclaimed funds. *E.g.*, *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 481 (5th Cir. 2011) (Jones, J., concurring).

For all these reasons, the claims-made structure of the Settlement does not impact its "fairness, reasonableness, or adequacy." *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014). GEICO asserted and confirmed they would not settle the action absent the claims-

---

[13]Additionally, according to research from Professor Brian Fitzpatrick, checks in non-claims made settlements are cashed at a rate 37%-70%, while checks in claims made settlement are cashed at a rate of 90%. Fitzpatrick, Brian T. and Gilbert, Robert, An Empirical Look at Compensation in Consumer Class Actions, at 770 (March 6, 2015). Available at SSRN: https://ssrn.com/abstract=2577775 or http://dx.doi.org/10.2139/ssrn.2577775.

made structure. Dkt. 139-4, ¶ 54. Courts find a defendant's refusal to settle absent a claims-made structure to be critical in determining whether a claims-made settlement is fair and reasonable. *See, e.g., Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *14 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure).[14] The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 WL 4120599, at *3 ("[The] Court does not have the authority to impose a preferred payment structure upon the settling parties"). Here, the elimination of significant risk in favor of payment of almost full damages to those willing to follow a simple claims process to submit claims is fair, reasonable, and provides the Class with more than adequate relief, all things considered.

---

[14] Moreover, even if Defendants had been willing to settle on a direct-pay model (they were not), this would surely have meant significantly less payment amount per class member than under a claims-made model. Plaintiffs and Class Counsel believe such a diminished settlement would not have been fairer to Class Members. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims-made class settlement). As one judge cogently explained, "[n]egotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. Sep. 14, 2015). Plaintiffs and Class Counsel insisted on a Settlement Agreement requiring all Settlement Class Members receive **multiple** notices and full and repeated opportunities to submit a claim using a pre-populated tear off form or a simple online click through process. Accordingly, it makes no sense to send a significantly smaller amount to all class members, including those who are insufficiently incentivized even by the availability of nearly full damages, at the expense of those willing to take a few minutes (at most) to check a box and submit a simple claim. Phillips Decl., Dkt. 139-3 at ¶¶ 71-74.

**B. The Attorneys' Fees are Reasonable Given the Significant Benefit to Class Members in this Case.**

In Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Service Award ("Fees' Motion"), Class Counsel seeks a total of $3,900,000.00 in attorneys' fees and costs, which is comprised of $3,852,553.39 in attorneys' fees and $47,446.61 in reimbursable costs. Dkt. 164.

Class Counsel's lodestar on the date of the filing of the Fees Motion, September 12, 2022, was approximately $2,061,770.95. Fees Motion, Dkt. 164 at 5. This amount is based on the reasonable hours expended multiplied by the hourly market rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").[15] The requested fees represent the lodestar with a modest 1.91 multiplier. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (surveying class action fee awards, and noting that 83% applied multiplier of 1.0-4.0, and 54% applied multiplier of 1.5-3.0). As detailed in the Fees Motion, the novelty of the claims, the contingent risk, the significant benefit to the Class of nearly complete relief makes this modest multiplier eminently reasonable under the lodestar method. "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 at 26 (2000).

---

[15] The hourly rates sought—ranging from $195.00 to $1,000.00—are based on the prevailing market rate in this locality for attorneys of similar skill and ability performing similar work. *E.g.*, Report and Recommendation Regarding Plaintiff's Motion for Default Judgment at 9-10, *Love v. Rivendell II, Ltd., et al.*, Case No. 18-cv-03907-JST (EDL) (N.D. Cal. Mar. 11, 2019) (D.E. 25) (awarding rates of $650.00 in class action); *Franco v. E-3 Sys.*, 2021 WL 2333851, at *7 (N.D. Cal. June 8, 2021) ($550.00 and $700.00); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (awarding rates of up to $870.00 to $1,200.00); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2021 WL 926706, at *7 (N.D. Cal. Mar. 4, 2021) (rates of $899.00, $661.00 for "junior attorneys," $1,025.00 for partners, and $660.00 for associates are consistent with prevailing market rates). The rates utilized by Class Counsel also account for rates awarded to them by other courts. *E.g.*, Report and Recommendation at 24, *Roth v. GEICO Gen. Ins. Co.*, Case No. 0:16-cv-62942-WPD (S.D. Fla. Nov. 13, 2019) (D.E. 328) (rates of up to $750.00 for Normand PLLC in contested fee petition); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *1 (N.D. Cal. July 7, 2017) (approving rates of up to $826.00 for Tycko & Zavareei LLP attorneys).

The requested attorneys' fees are approximately 32% of the estimated actual monetary value claimed to date ($12,041,118). This excludes the substantial injunctive relief going forward, discussed *supra* at Note 4, and does not include the 9,894 claims that have yet to be processed.[16] The same factors that support award of a modest multiplier, detailed in the fee petition, would likewise support this slight upward adjustment from the Ninth Circuit's 25% benchmark.[17] Furthermore, importantly, the Settlement provides for substantial prospective relief. If one year of prospective relief is added to the total amount claimed ($12,041,118.00 + $4,800,000), then the attorney's fee request is only 23% of the monetary benefit afforded to the Class. And,

---

[16] The current benefit—with 9,894 claims yet to be processed—when considering only the actual claimed amount is approximately $15,893,671.40 ($12,041,118.00 in claimed benefits plus attorneys' fees of $3,852,553.39), not including administrative costs–this 25% amount is presumptively reasonable even if only the claimed benefits are considered. *E.g.*, *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2021 U.S. Dist. LEXIS 66294, 2021 WL 1222193, at *1 (N.D. Cal. Mar. 31, 2021) ("[I]t is well-established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees."). But of course, as Plaintiffs previously pointed out, the total available benefits—not merely the claimed benefits—are considered when assessing attorneys' fees. Dkt. 164 at pg. 14 (citing *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) (reversing award of attorney's fees because trial court failed to base fee award on the entire settlement, rather than the amount claimed); *Carlotti v. Asus Comput. Int'l*, 2020 WL 3414653, at *6 (N.D. Cal. June 22, 2020) ("It is not appropriate to base attorneys' fees based only on the amount paid to class members who submitted claims.")).

[17] Similar percentages are routinely awarded in cases like this one where a significant benefit is achieved for the Class Members. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (awarding 33% of recovery); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) (same); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam) (same); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (same); *Hendricks v. Starkist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) (finding that an upward adjustment to 30% was appropriate based on the *Vizcaino* factors, i.e. the risks of litigation, the skill required and the quality of work, the financial burden carried by Plaintiff, Awards made in similar cases); *see also Lopez v. JPMorgan Chase Bank, N.A.* No. 1:09-MD-02036-JLK (S.D. Fla.) (44% of value of settlement awarded, which includes 30% of $110 million cash fund and 30% of value of practice changes); *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Ohio Ct. Common Pleas) (40% of value of settlement awarded, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness); *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Super. Ct.) (35.2% ($750k fee includes % of practice changes); *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Kan.) (awarded 33% of $2.7 million); *Hawkins et al v. First Tenn. Bank, N.A.*, No. CT-004085-11 (Cir. Ct. Tenn.) (awarded 35% of $16.75 million); *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) (35% awarded in fees of $24 million); *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) (33% of $9.5 million); *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) (33% of $2.5 million); *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) (33% of $27 million); *Doxey v. Cmty. Bank, N.A.*, No. 8:19-CV-919 (MAD/CFH) (N.D.N.Y.) (33% of value of settlement, consisting of $2.85 million cash and $610,833.02 in debt relief).

if three years of prospective relief are added to the total amount claimed ($12,041,118.00 + $26,441,118), then the attorney's fee request is only 14.5% of the monetary benefit afforded to the Class.

Since GEICO is paying the attorneys' fees in addition to the benefits paid to the class, "Defendants would receive an unjustified windfall if the requested fees were not granted in full." *See Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *41 (E.D. Cal. Sep. 1, 2011). As detailed in Plaintiffs' Fees Motion, the fees requested in the attorneys' fees motion are reasonable under both the lodestar methods for calculating fees, and the percentage-of-the-settlement and further support the fairness of the Settlement Agreement. Dkt. 164.

### C. The Settlement Provides Reasonable Service Awards.

As detailed in Plaintiffs' Fees Motion, service awards of no more than $15,000.00 to Plaintiff Subbaiah, $10,000.00 to Plaintiff Ventrice-Pearson, and $5,000 to Plaintiff Perez are appropriate awards for Plaintiffs who risked their reputations, who spent time and effort assisting in the litigation of actions that were at various stages of litigation at the time of settlement, and who came forward to advocate for Class Members. Dkt. 139-4, at ¶ 39.[18] GEICO will pay any fees, costs, and incentive awards awarded by the Court separately and such payment will not reduce the amount recoverable by Settlement Class members, nor impact their recovery in any way. Phillips Decl., Dkt. 139-3 at ¶ 36; *see also, e.g., Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *11 (C.D. Cal. May 8, 2017) (approving $25,000 incentive award). Even taken collectively, a total of $30,000.00 equates to approximately 0.15% of the total settlement and 0.25% of the actual claims-made recovery of the class. (Administrator Decl., ¶ 17; *see also* Order Granting Plaintiff's Motion for Final Approval of Class Settlement at 15, *Alcantar v. Hobart Serv.*, Case No. 5:11-CV-01600 (C.D.

---

[18] Plaintiffs sought different amounts in an attempt to fairly reflect differences in the amount of time devoted to and involvement in prosecuting the claims. While all three plaintiffs were meaningfully and actively involved, Plaintiff Subbaiah in particular devoted a significant amount of time and energy in actively reviewing briefing, reviewing discovery, and staying abreast of broader total-loss litigation so as to assess the strengths and weaknesses of the theory of liability and thus to analyze potential compromise of the claims—indeed, Class Counsel have rarely encountered a named plaintiff as actively and meaningfully involved in litigating class action claims. Phillips Decl., Dkt. 139-3, at ¶¶ 42-44.

Cal. Aug. 13, 2018) (D.E. 317) (approving award of $25,000.00 because it equated to approximately 0.6% of the settlement value).

In sum, the proposed Settlement Agreement meets all the factors established by the Ninth Circuit for fairness, adequacy, and reasonableness of a class action settlement. *Hanlon*, 150 F.3d at 1027; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.

**B. Clear Sailing Provisions Are Not Inherently Problematic Because Courts Carefully Evaluate Fee Awards**

In its July 28, 2022 Order Granting Preliminary Approval, this Court noted the presence of one possible subtle sign of collusion, which was that GEICO "agreed not to oppose class counsel's requests for attorney's fees and costs and incentive awards." Dkt. 161, at 12. Such "[c]lear sailing provisions are not prohibited," but they may be "warning signs of collusion," because "[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *In re Bluetooth*, 654 F.3d at 948. Here, the presence of a "clear sailing provision" in the Settlement Agreement does not demonstrate actual collusion that could negatively affect the analysis that this settlement is fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1027. First, even if the Court were to award the requested fees in Plaintiffs' Fees Motion in their entirety, the fee award "does not diminish the recovery to the class members under the settlement." *Richards v. Chime Fin.*, Case No. 19-cv-06864, 2020 U.S. Dist. LEXIS, at * 22 (N.D. Cal. October 28, 2020).

Second, as this Court has already noted, Class Counsel "obtained significant results for prospective class members," comprised of, *inter alia*, a 100% recovery for Sales Tax Class members and approximately 50% of the monthly regulatory fee payment for Class Members. Dkt. 161 at 12-13. That observation was before the Settlement Class responded to the potential settlement with a vigorous estimated 59% claim rate to date for Sales Tax Class members and 30% for members of the Regulatory Fees Class, making the estimated actual monetary benefit claimed to date for the Settlement Class $12,041,118.00. Administrator Decl., ¶ 17. Thus, the fee provision is a legitimate compromise as part of a larger agreement that pays the Settlement Class a substantial percentage of the potential total damages recovery.[19] "Had

---

[19] *See, e.g., Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, at *19 (N.D. Cal. Jan. 23, 2017) ("The parties' fee agreement thus represents a legitimate compromise and not a collusive agreement to pay Class Counsel

Plaintiffs colluded with Defendants to reduce class relief in exchange for higher fees, the settlement would not provide such a substantial value—in recovery of damages, injunctive relief…" *Lagarde v. Support.com, Inc.*, Case No. C12-0609 JSC, 2013 U.S. Dist. LEXIS, at * 29 (N.D. Cal. March 26, 2013).

Indeed, under this Settlement, "Defendants have already provided fair and adequate monetary and non-monetary relief to class members that almost fully remedies their damages." *Id.*, at * 29-30. Thus, the concerns of "collusion or conflicts of interest" attributable to the mere existence of the Settlement Agreement's clear sailing provision are not actually realized, and "the settlement is not the product of collusion." *Cortez v. Viera Custom Chopping, Inc.*, No. 1:17-cv-01647-DAD-SKO, 2019 U.S. Dist. LEXIS 162454, at *16-18 (E.D. Cal. Sept. 20, 2019) (granting final approval of class action settlement despite presence of clear-sailing provision in agreement). Finally, the fee agreement involving this provision was negotiated after the Parties had already agreed to the substantive elements of the Agreement, such as class compensation and notice terms, and occurred under the guidance and oversight of a neutral mediator. *See In re Bluetooth*, 654 F.3d at 948 (holding that although it is not dispositive, the presence of a neutral mediator during the negotiation of a clear sailing attorneys' fees provision weighs "in favor of a finding of non-collusiveness").

In sum, this is one of many cases where the clear sailing provision turns out at final approval to be "no cause for concern." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-5944-JST, 2016 U.S. Dist. LEXIS 88665, at * 195 (N.D. Cal. July 7, 2016).

## V. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In the Settlement Agreement, the Parties agreed to certification of the Settlement Class for settlement purposes only, the Court conditionally certified it in its preliminary approval order, and it should now be certified for final approval. Dkt. 161 at 8-10. Satisfaction of the elements of Rule 23 is demonstrated by Plaintiffs' contested motion for class certification, which remains pending. *See* Dkt. No. 92. The few differences are that the proposed Settlement Class also includes additional GEICO entities, and no longer

---

more in exchange for paying the class less. (*See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016) (clear-sailing provision does not signal collusion when the agreed-upon fees are reasonable and the relief negotiated for the class is favorable.")

includes insureds who did not retain the salvage vehicle, but these are irrelevant to the analysis, given that GEICO's practices, policy language, procedures, and data is identical across all entities. Phillips Decl., Dkt. 139-3 at ¶ 91. The numerosity element of Rule 23(a)(1) is satisfied because there are 201, 240 Settlement Class members. Administrator Decl., ¶ 5; Phillips Decl., Dkt. 139-3 at ¶ 38. The commonality element of Rule 23(a)(2) and predominance of Rule 23(b)(3) are satisfied because the analysis involves the determination of whether GEICO's uniform policy language is reasonably interpreted to include sales tax and/or regulatory fees, and applies to every class members claim, which predominates over any individual issues. Philips Decl., Dkt. 139-3 at ¶ 39; Dkt. No. 92 at 10-12; *See Ewert v. eBay, Inc.*, No. 07-cv-02198 RMW, 2010 WL 426259, at *7 (N.D. Cal. Oct. 25, 2010) (cases involving "form contract" interpretation "present the classic case" for class treatment precisely because such interpretation is inevitably a common question). The typicality element of Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class and class members "have been injured by the same course of conduct". *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, the typicality requirement is satisfied because Plaintiffs were insured under the same form insurance policies as all class members and their claims are based on precisely the same legal theory and "practice and procedure" as every Settlement Class Member. Phillips Decl., Dkt. 139-3 at ¶ 40; Dkt. No. 92 at 12-13.

The adequacy element of Rule 23(a)(4), which requires that "the representative parties...fairly and adequately protect the interests of the class" is also readily established. Class Counsel's declaration demonstrates that Plaintiffs more than adequately performed their duties as class representatives and do not possess any conflict of interest with the Class Members. Phillips Decl., Dkt. 139-3 at ¶¶ 42-45; *see also,* Subbaiah Decl., Dkt. 164-6. Class Counsel zealously prosecuted the putative class's claims, have adequately represented the Settlement Class to date, and are qualified to represent the Settlement Class, as also demonstrated in their Fees Motion, also set to be heard at the fairness hearing. Phillips Decl., Dkt. 139-3 at at ¶¶ 46-69; Dkt. 164. Indeed, this Court's preliminary approval order "recognize[d] that class counsel obtained significant results for the prospective class members." Dkt. No. 161 at 12. Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," because the

Parties agreed to Settlement Class Certification (Dkt. 139-4 at Section III(1.)), this Court conditionally certified the Settlement Class, and the Court should now certify it to grant final approval of the Parties' fair, reasonable, and adequate class action Settlement Agreement.

## VI.  CONCLUSION

Plaintiffs respectfully request that the Court grant Final Approval of the proposed settlement and enter an Order in the form of the joint proposed order concurrently filed. In addition, Plaintiffs respectfully request that the Court enter Final Judgment in the form of the joint proposed judgment concurrently filed.

DATED: November 16, 2022

*/s/ Annick M. Persinger*
Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway Suite 1070
Oakland, CA 94612
(510) 254-6808
apersinger@tzlegal.com

Edmund A. Normand*
Jacob L. Phillips*
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Telephone: (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob@normandpllc.com

Michael Louis Kelly (CA Bar No. 82063)
Joshua A. Fields (CA Bar No. 242938)
**KIRTLAND & PACKARD LLP**
1638 South Pacific Coast Highway
Redondo Beach, CA 90277
Tel: (310) 536-1000 / Fax: (310) 536-1001
mlk@kirtlandpackard.com
jf@kirtlandpackard.com

Andrew John Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Ste 1205
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

Scott Edelsberg (CA Bar No. 330990)
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Appearing Pro Hac Vice*
*Counsel for Plaintiffs and the Settlement Classes*