UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re GEICO General Insurance Company | Case No. 19-cv-03768-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 164, 165 |

Before the Court are the motions for final approval of class action settlement and for attorneys' fees, costs, and service award. *See* Dkt. No. 164, 165. The Court held a final fairness hearing on December 15, 2022. The Court **GRANTS** final approval and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorneys' fees, costs, and service award.

**I.   BACKGROUND**

    **A.   Factual Background**

Plaintiffs bring this consolidated class action against Defendant GEICO General Insurance Company, alleging that Defendant breached the terms of private passenger auto insurance policies issued to Plaintiffs and similarly situated insureds by failing to properly include or calculate sales tax (as to leased vehicles) and regulatory fees (as to all vehicles). *See* Dkt. No. 165 at 15.[1] Plaintiffs allege that Defendant's insurance policies require payment of actual cash value ("ACV") upon the total loss of a covered auto and define ACV as the "replacement cost" of the auto, less depreciation. *Id.* Plaintiffs argue that (1) the insurance policies require Defendant to include sales tax on the cost to purchase a replacement vehicle when paying leased-vehicle claims; and (2)

---

[1] For ease of reference, the Court refers to the PDF pagination unless otherwise noted.

under Cal. Ins. Code § 2695.8(b)(1), registration fees for the "remaining term of the loss vehicle's current registration" should be calculated on an end-of-month (rather than, as Defendant contends, a beginning-of-month) basis or, alternatively, on a daily (not monthly) basis. *See* Dkt. No. 164-3 ("Phillips Decl.") ¶¶ 12–13.

Named Plaintiff Cindy Ventrice-Pearson owned/financed and insured a 2010 Mini Cooper that, as the result of an accident, was determined to be a total loss. Dkt. No. 75 ¶¶ 24–27. Defendant paid Plaintiff Ventrice-Pearson $8,508.76, including a base value of $7,408.00, sales tax of $703.76, state and local regulatory fees of $97.00, and a post-tax adjustment of $300.00. *Id.* ¶¶ 27, 29. However, Plaintiffs allege that Defendant underpaid the true state and local regulatory fees owed. *Id.* ¶ 30.

Named Plaintiff Poonam Subbaiah leased and insured a 2017 Porsche 911 Carrera which, as a result of theft, was determined to be a total loss. *Id.* ¶¶ 16–17. Defendant agreed to an ACV payment of $87,345, composed of the payoff amount to the lienholder, a $500 policy deductible, and $17,211.26 paid to Plaintiff Subbaiah. *Id.* ¶ 18. Plaintiffs allege that Defendant breached its policy terms by determining that because the vehicle was leased and not owned by Plaintiff Subbaiah, no ACV Sales Tax was owed under the policy. *Id.* ¶ 19. Plaintiffs also allege Defendant's payment for state and regulatory fees constituted only a portion of the state and regulatory fees owed under the Policy. *Id.* ¶ 21.

Named Plaintiff Kristin Perez leased and insured a 2018 Honda Clarity Plug-In Touring, which, as the result of an accident, was determined to be a total loss. *Perez v. Geico Indemnity Company*, No. 20-cv-07436-HSG, Dkt. No. 1 ¶¶ 37–38. Defendant agreed to an ACV payment of $35,924.00, composed of the payoff amount to the lienholder, added state and regulatory fees of $385.00, and a $1,000.00 deductible. *Id.* ¶¶ 39–41. Plaintiffs allege that Defendant paid none of the estimated $2,769.30 in sales tax Plaintiffs allege was owed under the insurance policy. *Id.* ¶ 42.

### B. Procedural History

Named Plaintiff Ventrice-Pearson filed a claim on behalf of herself and all others similarly situated in June 2019. *See* Dkt. No. 1.[2] Named Plaintiff Subbaiah filed her claim in July 2019, and Named Plaintiff Perez filed her claim in October 2020. Phillips Decl. ¶¶ 4–5. The Perez and Subbaiah cases have since been transferred to this Court and consolidated with the Ventrice-Pearson case for purposes of settlement. Dkt. Nos. 72, 142.

Over the course of two years, the parties engaged in motion practice, *see, e.g.*, Dkt. Nos. 30, 120; extensive production and review of documents and class-wide data, *see* Phillips Decl. ¶¶ 15–17; and multiple depositions, including the depositions of corporate representatives, class representatives, and expert witnesses, *see id.* ¶¶ 17, 58. After multiple mediation sessions, *see id.* ¶ 25, the parties reached a settlement, *see* Dkt. No. 135. The Court granted preliminary approval of the settlement on July 28, 2022. *See* Dkt. No. 161.

### C. Settlement Agreement

The key terms of the parties' Settlement Agreement, Dkt. No. 139-4, Ex. 1 ("Settlement Agreement" or "SA"), are as follows:

Class Definition: The Settlement Class is defined as

> **Regulatory Fees Class:**
> All individual insureds under an Automobile Insurance Policy covering a vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, whose claim was adjusted under Section III of the GEICO's Automobile Insurance Policy (i.e. comprehensive or collision coverage) during the Class Period, that was determined by GEICO to be a covered claim and where GEICO determined that the vehicle was a total loss and did not pay to repair the damage to the vehicle and where the insured did not retain the salvage vehicle.
>
> **Sales Tax Class:**
> All individual insureds under an Automobile Insurance Policy covering a leased vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who's claim was adjusted under Section III of the GEICO's Automobile Insurance Policy (i.e. comprehensive or collision coverage), during the Class Period, that was determined by GEICO to be a covered

---

[2] Ms. Martisha Ann Munoz joined Ms. Ventrice-Pearson in bringing the original complaint in June 2019, *see* Dkt. No. 1, but was not included as a named plaintiff in the Consolidated Amended Complaint, *see* Dkt. No. 75.

        claim and where GEICO determined that the vehicle was a total loss and did not pay to repair the damage to the vehicle, where the insured did not retain the total-loss vehicle and where GEICO did not include ACV Sales Tax in the Total Loss Claim Payment(s).

SA ¶ ll.

        The "Regulatory Fees Class" and the "Sales Tax Class" are referred to collectively as the "Settlement Class." *Id.* Excluded from the Settlement Class are (1) Defendant, all present or former officers and/or directors and/or employees of Defendant, the Neutral Evaluator, class counsel, and any Judge of this Court; (2) claims for which Defendant received a valid and executed release; and (3) individual claims for first-party property damage for which the process of appraisal or arbitration or litigation has been completed or initiated at the time this Settlement Agreement is filed. *Id.*

        <u>Settlement Benefits</u>:

        Defendant has agreed to: (1) upon submission of a valid claim by a Regulatory Fees Class member, pay $6.88, representing one-half of an average monthly payment in regulatory fees, and (2) upon submission of a valid claim by a Sales Tax Class member, pay $6.88 in regulatory fees plus the sales tax at the applicable state and county rate at the time of loss to all insureds. SA ¶¶ 27–28. Claims will be paid on a claims-made basis. *Id.* ¶ 26. Additionally, absent a clarifying change in statutory law or a contrary opinion by the Ninth Circuit or California appellate court, in the future Defendant will, for total loss covered vehicles, (a) pay sales tax at the applicable rate to leased-vehicle insureds and (b) calculate and pay regulatory fees as a daily proration, rather than subtracting the monthly amount at the beginning of each month. *Id.* ¶ 60.

        <u>Release</u>: Under the settlement agreement, all class members will release:

        any and all known and unknown claims, rights, actions, suits or causes of action of whatever kind or nature, whether *ex contractu* or *ex delicto*, statutory, common law or equitable, including but not limited to breach of contract, bad faith or extracontractual claims, and claims for punitive or exemplary damages, or prejudgment or postjudgment interest, arising from or relating in any way to GEICO's failure to pay sufficient sales tax and/or regulatory fees to Plaintiffs and all Settlement Class Members with respect to any Covered Total Loss Claim during the Class Period under an Automobile Insurance Policy. Released Claims do not include any claims, actions, or causes of action alleging that GEICO failed to properly calculate the base or adjusted value of total loss vehicles except to the extent that such

> claims, actions, or causes of action relate to failure to pay sufficient sales tax and/or regulatory fees.

SA ¶ gg; *see also id.* ¶ 48.

Class Notice: KCC, a third-party settlement administrator, mailed notice to all reasonably identifiable class members on two occasions, with pre-filled, detachable, and postage-prepaid claim forms. SA ¶ 8; *see* Dkt. No. 165-2 ("Antonio Decl.") ¶¶ 6–9, Exs. C–F. For any physical addresses that were incomplete or missing, the Settlement Administrator searched the National Change of Address Database. SA ¶ 10; Antonio Decl. ¶ 5. Notice was also provided twice by email to Settlement Class Members for whom Defendant possessed an email address. Antonio Decl. ¶¶ 10–13. Each of the email notices allowed class members to "click through" to the settlement website, which includes an electronic claim form. *Id.* ¶ 14; *see* SA ¶¶ 11–12.

The notice included a summary of the claims and the settlement terms, the average claim size, the released claims, and instructions on how to object to or opt out of the settlement, including relevant deadlines. Antonio Decl., Exs. C–F ("Mail Notices"), G–J ("Email Notices"). The Mail Notices also included the average individual claim payment for each class. *See* Mail Notices. Defendant extracted available information from its claim records to pre-fill information on the claim forms. SA ¶¶ 9, 11. To receive a Claim Payment, the Settlement Class member needed to submit a claim form, declaring that the pre-filled Claim information is correct and that they were a GEICO insured who suffered a total-loss during the Settlement Class period who did not receive ACV Sales Tax and/or full Regulatory Fees. *See* Antonio Decl., Exs. L–M.

Service Award: Plaintiffs seek service awards of $15,000 for Plaintiff Subbaiah, $10,000 for Plaintiff Ventrice-Pearson, and $5,000 for Plaintiff Perez, as allowed by the Settlement Agreement. *See* Dkt. No. 164 at 10; SA ¶ 39. Any service award payments are separate from and in addition to the payments available to Settlement Class Members and will not impact the amount owed to Settlement Class Members. SA ¶ 40.

Attorneys' Fees and Costs: Plaintiff's counsel requests $3,852,553.39 in attorneys' fees and $47,446.61 in costs, for a total of $3.9 million, as allowed by the Settlement Agreement. *See* Dkt. No. 164 at 10; SA ¶¶ 38–42.

## II. DISCUSSION

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on July 28, 2022, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 161 at 6–10.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider to determine whether "class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Roes*, 944 F.3d at 1043.  These include: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns

unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (quotation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See id.* at 609. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See generally* Antonio Decl.; Phillips Decl. ¶ 33; SA ¶¶ 8–11. Mail notice was sent to 201,240 class members, with successful delivery rates of 90% for the Regulatory Fees Class and 86% for the Sales Tax Class after efforts to locate addresses for undeliverable notices and remail notice. Antonio Decl. ¶¶ 6–9; Dkt. No. 165 at

17–18. Email notice was sent to 182,116 class members, with a successful delivery rate of 97% for both classes and 99% for the reminder email notice. Antonio Decl. ¶¶ 10–13; Dkt. No. 165 at 17–18. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In deciding the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 161 at 12–13; *see also McKinney-Drobnis*, 16 F.4th at 607–08. The Court noted that although the requested fee did not appear disproportionate to the class recovery, the agreement included a clear sailing provision and the "functional equivalent" of a reverter. *See* Dkt. No. 161 at 12–13. Again, the Court notes that Class Counsel obtained significant results for the Class Members, and the Court still carefully scrutinizes the requests for attorneys' fees and incentive awards to ensure Class Members' interests are protected under the settlement. *See* Section II.B. After reviewing the settlement and requested attorneys' fees in light of the actual benefit to the class, including the claim rate and anticipated cash benefit, the Court finds that the settlement is fair and reasonable notwithstanding the presence of these factors. *See Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (noting "[t]he presence of these three signs is not a death knell," but the district court must examine them and develop the record to support its final approval decision). The Court finds that other factors indicate that the proposed settlement is fair, adequate, and reasonable.

### 1. Strength of Plaintiff's Case & Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and
8

expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the substantial risk that Plaintiffs would face in litigating the case. According to Plaintiffs, litigation of these claims through trial presents significant challenges to prevailing on the merits since no California court, state or federal, has held that insureds who leased a vehicle are entitled, upon a total-loss determination, to full payment of sales tax. *See* Dkt. No. 165 at 20. They cite to unfavorable decisions regarding Defendant's policy language, including three federal courts of appeal that have considered similar claims and ruled in favor of the insurers. Phillips Decl. ¶ 23. In reaching a settlement, Plaintiffs have ensured a substantial recovery for the class without further delay and uncertainty. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 165 at 20–21; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. March 18, 2016) (citing cases).

Although the Court expressed concerns at the preliminary approval stage regarding the claims-made structure of this settlement, the actual monetary benefit to the class has turned out to be substantial, even if less than anticipated. Defendant has conducted a preliminary audit of submitted claims, and the actual estimated cash benefit for the class is $6,200,000.[3] *See* Dkt. No.

---

[3] This is Plaintiffs' most recent estimate. At the final fairness hearing, the Court directed Defendant to conduct a sample audit of submitted claims. *See* Dkt. No. 176. Because Defendant's subsequent report stated there were more than 1,500 "pending" claims that had not been validated, the Court directed Plaintiffs to submit another status report with updated estimates of the monetary distribution to the Class. *See* Dkt. No. 177. The parties represent that the $6.2 million estimate is "conservative" because it does not include pending deficient claims, although the parties "do not expect that a majority of these claims will be cured." *See* Dkt. No. 178 at 3. The anticipated payment to the class has dropped significantly from Plaintiffs' estimate in the final approval

178 at 2. The settlement recovery is particularly compelling for the Sales Tax Class, where each class member will receive 100% of the sales tax (and thus 100% of the potential recovery). On average, class members with valid claims will receive more than $2,000. *See* Dkt. No. 161 at 15. Plaintiffs estimate a total payout to the Sales Tax Class of approximately $5,800,000. *See* Dkt. No. 178 at 2. For the Regulatory Fees class, each class member will receive $6.88, which represents 50% of the potential recovery.[4] Phillips Decl. ¶¶ 27–29; *see also* Dkt. No. 150 ¶¶ 5–13. Plaintiffs estimate a total payout to the Regulatory Fees Class of approximately $402,824. *See* Dkt. No. 178 at 3.

Out of 201,240 class members, 61,265 submitted valid claims, for an estimated overall claim rate of about 30.4%. *See* Dkt. No. 178 at 4. By class, 2,715 out of 9,637 Sales Tax Class members submitted a valid claim, for a claim rate of 28.1%. *See id.* at 4–5. Meanwhile, 58,550 out of 191,603 Regulatory Fees Class members submitted a valid claim, for an estimated claim rate of 30.5%. *See id.* at 5. This is on the high end of what Plaintiffs anticipated. *See* Dkt. No. 150 ¶¶ 33–39.

The settlement also provides injunctive relief because Defendant will include sales tax at the applicable rate to leased-vehicle insureds and calculate regulatory fees as a daily proration for all qualifying insureds. Phillips Decl. ¶¶ 32, 37–38. Plaintiffs calculate that one year's worth of prospective relief is worth approximately $4.8 million. *Id.* ¶ 38.[5]

---

motion. Dkt. No. 165 at 14 (estimating $12,041,118); Dkt. No. 169 at 3 ($10,300,957.70); Dkt No. 178 at 2 ($6,200,000).

[4] Plaintiffs acknowledge that "GEICO calculated the registration fees it included in total-loss settlements based on the remaining term of a total-loss vehicle's registration at the time of the loss and paid a prorated amount in fees." Dkt. No. 150 ¶ 9. However, the parties dispute whether Cal. Ins. Code § 2695.8(b)(1) requires proration of the monthly amount from the first or last day of the month in which a collision occurs. *Id.* ¶¶ 6–13. Contrary to Defendant's practice of not paying any prorated amount for the month in which the collision occurs, Plaintiffs argue that registration fees should be paid for the entirety of the month in which the collision occurs. *Id.* ¶¶ 10–12. Therefore, Plaintiffs' theory of maximum recovery for the Regulatory Fees Class is one month's worth of regulatory fees, on average $13.76. *Id.* ¶ 12. Plaintiffs arrived at $13.76 by computing the average regulatory fees owed in a full year, $165.12, and dividing by 12 months. *Id.* ¶¶ 14–15.

[5] Plaintiffs' estimation is based on 43,600 total loss-owned vehicles per year. Phillips Decl. ¶ 38.

The Court finds that this recovery is significant, especially when weighed against the litigation risks in this case. In any event, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982). The Court finds under the circumstances that this factor weighs in favor of approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Plaintiffs' counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Discovery was "essentially complete" when the parties reached their settlement, including expert and key witness depositions. *See* Phillips Decl. ¶ 17. The parties had fully briefed class certification and engaged in multiple mediation sessions. *Id.* ¶¶ 14–19, 25. The Court finds that the parties received, examined, and analyzed information, documents, and materials sufficient to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

The reaction of the Class Members has been favorable. Class Members were notified of their right to object to or opt out of the settlement. Antonio Decl., Exs. C–K. Only five out of 201,240 Class Members opted out by the deadline (four in the fees class and one in the sales tax class), and no objections or comments have been submitted. *See* Dkt. No. 178 at 5; Antonio Decl. ¶¶ 18–19. The Court finds that the minimal number of opt-outs and objections in comparison to the size of the class, as well as the claim rates described above, indicates overwhelming support

11

among the Class Members and weighs in favor of approval of the settlement. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

**B.   Attorneys' Fees, Costs and Expenses, and Incentive Award**

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel asks the Court to approve an award $3,852,553.39 in attorneys' fees and $47,446.61 in costs. *See* Dkt. No. 164 at 10. Class Counsel also seeks service awards for the named plaintiffs: $15,000 for Plaintiff Subbaiah, $10,000 for Plaintiff Ventrice-Pearson, and $5,000 for Plaintiff Perez. *See id.*

**i.   Attorneys' Fees & Costs**

**a.   Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). For a state law claim—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures."). The two primary methods for determining reasonable fees in the class action settlement context are the "lodestar/multiplier" method and the "percentage of recovery" method. *Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 254 (2001).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citation omitted). And typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases … are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Under the percentage-of-the-fund method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*, 654 F.3d at 942. To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations under one method against those under another method. *Vizcaino*, 290 F.3d at 1050–51. Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

13

### b. Discussion

Class Counsel seeks $3,852,553.39 in attorneys' fees and $47,446.61 in costs for $3.9 million total. *See* Dkt. No. 164 at 10. The records submitted to the Court reflect that Class Counsel incurred $2,266,047.20 in attorneys' fees.[6] Thus, the requested fee represents a lodestar multiplier of about 1.7. Class Counsel urges that its requested fees are reasonable under either the lodestar or percentage method. *See id.* at 13; Dkt. No. 178 at 5–7. Because this is a claims-made settlement, the Court will apply the lodestar method. *See Lowery v. Rhapsody Int'l, Inc.*, No. 16-cv-01135-JSW, 2021 WL 7448610, at *3 (N.D. Cal. Sept. 20, 2021) ("In a claims-made settlement, the lodestar method is typical.").

Class Counsel's billing records reflect that they worked 3,378.8 hours totaling $2,266,047.20 in fees. Timekeepers' hourly rates range from $746 to $1,000 for partners, $381 to $676 for associates, and $180 to $225 for staff and paralegals. *See* Dkt. No. 164 at 14; *see also* Dkt. No. 164-1 ¶ 42; Dkt. No. 164-2 ¶ 16; Dkt. No. 164-3 ¶ 55; Dkt. No. 164-4 ¶ 26; Dkt. No. 164-5 ¶ 11. These billing rates are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, *5 (N.D. Cal. June 22, 2020) (finding hourly rates of $950 to $1025 for partners, $450 to $900 for other attorneys, and $225 to $275 for legal assistants reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. March 17, 2017) (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable).

However, having reviewed the billing records, the Court finds that the base lodestar calculation contains some inefficient and unreasonable time. *See Jankey v. Poop Deck*, 537 F.3d

---

[6] This is an updated lodestar based on billing records submitted to the Court after the fee motion. In a status report, Class Counsel stated that the records reflect a total lodestar of $2,275,113.95. *See* Dkt. No. 178 at 5. This appears to be inaccurate, and there were numerous discrepancies in the attorney declarations submitted in connection with the billing records. Accounting for all discrepancies and excluding costs, the Court calculates that the base lodestar reflected in the records is $2,266,047.20.

1122, 1132 (9th Cir. 2008) (directing courts to exclude from a fee request any hours that are "excessive, redundant, or otherwise unnecessary"). First, the Court notes that five firms and thirty-two timekeepers worked on this case on Plaintiffs' behalf. The records indicate that attorneys spent significant time discussing the case via intraoffice meetings, emails, and phone calls with co-counsel. The Ninth Circuit has indicated that the Court has discretion to discount such time. *See Terry v. City of San Diego*, 583 Fed. App'x 786, 790–91 (9th Cir. 2014) (permitting reductions for time counsel spent conferring among themselves and co-counsel editing each other's briefs because this time could be considered duplicative).

The Court also has reservations about awarding fees for motions that amount to inter-firm rivalry that arose before separate cases were consolidated.[7] Although undoubtedly valuable to the firms involved, it is hard to see how battles between the attorneys now collectively asking for fees benefited the Class. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063, 1121 (D. Ariz. 1990) (noting that work on a motion for appointment of lead counsel was "undoubtedly of value to the [] firm" but "provided no measurable benefit to Class members"). Because of the described inefficiencies, the Court will apply a 5% reduction to the base lodestar.

Class Counsel requests a lodestar multiplier of 1.7. To decide whether to adjust a lodestar, the "foremost" consideration "is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942. Despite the inefficiencies described, the Court recognizes that Class Counsel obtained an excellent outcome for the class. The Sales Tax class will receive 100% of potential damages, while the Regulatory Fees class will receive 50% of potential damages under Plaintiff's theory of liability. *See* Dkt. No. 164 at 17. On average, sales tax class members will receive more than $2,000. *Id.* at 12. The expected distribution to the class is more than $6 million. *See* Dkt. No. 178 at 2. Further, Defendant will change its practices to address the allegations in this case, albeit

---

[7] For example, counsel for Plaintiffs Munoz and Ventrice-Pearson sought to dismiss *Subbaiah v. Geico*, No. 3:19-cv-08164-CRB (C.D. Cal.), deeming it a "copycat" action; they filed a motion to intervene in *Subbaiah* and a motion to appoint interim class counsel in this case. *See* Dkt. No. 38 at 4. Counsel for Plaintiff Subbaiah then moved to intervene in this case and opposed the motion to appoint interim class counsel, arguing that the *Munoz* counsel had a conflict of interest. *See* Dkt. No. 56 at 3. Eventually, the cases were related and consolidated, and counsel agreed to file a consolidated complaint, withdraw the motion to appoint, and deem the motion to intervene moot. *See* Dkt. Nos. 60, 66.

subject to several reservations, including one contingent on future legal developments. *See* SA § 60; Dkt. No. 164 at 12. Plaintiffs' counsel litigated skillfully and professionally on a fully contingent basis with no guarantee of recovery. Based purely on the excellent outcome for the class and the high average recovery, the Court will apply a more modest multiplier than requested of 1.2, which brings the fee award to $2,583,293.81.

Cross-checking the requested fees against the monetary benefit being paid to the Class further supports awarding a lower fee than requested. The requested fee comprises about 36% of the estimated total cash available to the class ($10.63 million) *if* attorneys' fees and costs are included in the denominator. *See* Dkt. No. 178 at 7. But if attorneys' fees and costs are excluded, the requested fee comprises about 57% of the benefit. The Ninth Circuit has not set a bright-line rule on this question for claims-made settlements, but it is clear to the Court that at minimum, the actual claims should not be ignored in assessing the requested fees. *See, e.g.*, *Lowery v. Rhapsody Int'l, Inc.*, No. 16CV01135JSWJSC, 2021 WL 7448610, at *8 (N.D. Cal. Sept. 20, 2021); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 860–61 (N.D. Cal. 2017). The reduced fee of $2,583,293.81 is about 38% of the actual estimated monetary benefit of $6,200,000 plus $530,000 in estimated administration costs. Although higher than the benchmark, the Court finds the adjusted amount reasonable, again given the outcome for the class and the high average recovery. Overall, the cross check supports a lower fee than requested.

For the above reasons, the Court **GRANTS** attorneys' fees in the amount of $2,583,293.81.

Regarding Plaintiffs' counsel's costs, counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *See Harris*, F.3d 16 at 19. Plaintiffs' counsel has provided breakdowns of expenses in this case and states that counsel incurred $47,446.61 in costs. *See* Dkt. No. 164 at 23. The Court finds that the requested expenses are reasonable and **GRANTS** the request for costs in the amount of $47,446.61.

\*   \*   \*

The Court accordingly awards $2,583,293.81 in attorneys' fees and $47,446.61 in costs, for a total of $2,630,740.42.

16

### ii. Incentive Awards

Plaintiffs' counsel requests an incentive award of $15,000 for Plaintiff Subbaiah, $10,000 for Plaintiff Ventrice-Pearson, and $5,000 for Plaintiff Perez. *See* Dkt. No. 164 at 10.

District courts have discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021). However, the Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice"). The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

The Court must "'evaluate the propriety of requested incentive payments' by considering, among other factors, 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation,' and any financial or reputational risks the plaintiff faced." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022) (quoting *Roes*, 944 F.3d at 1057).

Class Counsel states the amount sought per named Plaintiff is proportional to the time each Plaintiff spent. *See* Dkt. No. 164 at 24. Plaintiff Subbaiah submitted a detailed declaration, records of her correspondence with GEICO, and a timesheet of her activities in this case amounting to 174 hours. *See* Dkt. No. 164-6 ("Subbaiah Decl."), Exs. A–G. Plaintiff Subbaiah's

records show she devoted a significant amount of time and energy to this case. *See generally* Subbaiah Decl., Exs. F, G; Dkt. No. 164 at 25 n.4 (noting Class Counsel have "rarely encountered a named plaintiff as actively and meaningfully involved in litigating class action claims"). After receiving an offer letter from GEICO for her total loss vehicle, Plaintiff Subbaiah conducted research and reached out to law firms. *See* Subbaiah Decl. ¶¶ 3–16, Ex. F. Throughout the litigation, Plaintiff Subbaiah was actively involved: She communicated with counsel extensively, gathered and reviewed documents, and attended mediation and hearings. *See id.*, Ex. G; Dkt. No. 164 at 24–25. The level of detail and effort in her communications with GEICO, which were used in this case and subject to a motion to seal, are one example of how Plaintiff Subbaiah's actions have benefited the class. *See* Subbaiah Decl. ¶ 10, Exs. A, C, E.

At the Court's request, Plaintiffs Ventrice-Pearson and Perez filed supplemental declarations describing their involvement in this case. *See* Dkt. Nos. 175-1, 175-2. Plaintiff Ventrice-Pearson states that she spent an estimated 65 hours on this case, also reviewing documents, responding to discovery, and participating in negotiations. *See* Dkt. No. 175-1 ¶ 13. As Class Counsel points out, Perez's case settled at an earlier stage compared to Plaintiff Subbaiah's and Ventrice-Pearson; Plaintiff Perez estimates that she spent 40 hours on this case. *See* Dkt. No. 175-2 ¶ 10; Dkt. No. 164 at 25.

While the Court is persuaded that the named Plaintiffs, particularly Plaintiff Subbaiah, contributed meaningfully to this case, $15,000 is "quite high" for a service award. *See Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."). A lower service award would be more proportionate to the amount going to class members and in line with other awards in this district. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (rejecting $11,000 incentive award where class members were estimated to receive between $600 and $4,000); *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (awarding $5,000 incentive award for 50–100 hours in contributions over two-year litigation).

Thus, the Court finds that awards of $10,000 to Plaintiff Subbaiah, $7,500 to Plaintiff Ventrice-Pearson, and $5,000 to Plaintiff Perez are adequate and appropriate to compensate them for their efforts.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 165, and **GRANTS IN PART AND DENIES IN PART** the motion for attorneys' fees, costs, and incentive award, Dkt. No. 164. The Court awards $2,583,293.81 in attorneys' fees, $47,446.61 in costs, and a $22,500 service award to the named Plaintiffs.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 7 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 3/15/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge